## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM MARK SCOTT, *individually and on behalf of all others similarly situated*, 2406 44th St NW Washington, D.C. 20007-1103 | Civil Action No. 17-cv-249 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| | **CLASS ACTION COMPLAINT** |
| JPMORGAN CHASE & CO., 270 Park Avenue New York, NY 10017 | |
| Defendant. | |

Plaintiff William Mark Scott ("Plaintiff"), individually and on behalf of all others similarly situated, through his undersigned counsel, brings this action against Defendant JPMorgan Chase & Co. ("Chase," or the "Bank"), alleging the following based on personal knowledge as to allegations regarding Plaintiff and on information and belief as to all other allegations.

## INTRODUCTION

1.      In contravention of state and Federal law, Chase has devised a deceptive and unlawful scheme to deprive jurors of their full payments for jury service—payments to which they are statutorily entitled. Defendant accomplishes this scheme by automatically placing juror fees on Chase debit cards (the "Debit Cards") and then draining jurors' funds by charging excessive and unreasonable fees that make it impossible to fully consume all of the funds placed on the Debit Cards. This is done without an iota of consent from jurors, who are, in fact, further misled by the deceptive materials Chase provides with its Debit Cards, which falsely advertise that jurors can receive their funds for "FREE."

2.     This proposed class action seeks to rectify Defendant's unfair and unconscionable practices by putting a stop to them and returning the ill-gotten funds Chase siphoned off to those who duly fulfilled their civic duty to serve as jurors and are entitled to their full statutory compensation accordingly.

3.     Jury duty is integral to American democracy. As former President Thomas Jefferson stated, "[T]rial by jury [is] the only anchor ever yet imagined by man, by which a government can be held to the principle of its constitution." The right to a criminal trial by jury is so important to our American values that it is in fact the only right protected both in the Constitution (in Article III) and in the Bill of Rights (in the Sixth Amendment).

4.     Yet, jury duty can be a burden on residents, who have to manage jury service interfering with their employment, family, and childcare obligations. The cost of jury service can be significant. In addition to the cost of transportation, the opportunity cost of jury service is high. This is especially true for small business owners or employees, self-employed individuals, part-time workers, and independent contractors. For these jurors, the cost of jury service directly translates into lost wages.

5.     In recognition of these realities, every state in the United States provides for compensation to jurors under various circumstances. *See* http://www.ncsc.org/topics/jury/jury-management/state-links.aspx?cat=Juror%20Pay. For example, the Code of the District of Columbia entitles all Superior Court jurors[1] to a daily travel subsidy of $4, and, if selected for

---

[1] For purposes of this Complaint and ease of reference, the term "juror" refers to any individual who reports for jury duty and is entitled to payment for jury duty, whether or not that individual actually served on a jury.

trial, an additional attendance fee of $30 for each trial day if they are not paid by their employer while serving. D.C. Code Ann. § 15-718.[2]

6.      Instead of paying jurors these statutory fees by check or cash—as many other jurisdictions do—Chase convinced D.C. to participate in a deceptive and unlawful arrangement with Chase whereby all juror fees are placed on Debit Cards with high inactivity and other fees that are designed by Chase to line its own pockets to the detriment of jurors. This is done without jurors' consent and in complete disregard of the important civic function jurors fulfill, as well as the opportunity costs, inconvenience, and travel expenses jurors incur in doing so.

7.      In D.C., jurors automatically receive their fees via Chase Debit Cards. The fees are determined by statute. In D.C., if a juror serves on a jury, he or she receives $30 each day, in addition to a daily travel allowance of $4. If a juror is not selected to serve on a jury, he or she receives only the $4 travel allowance.

8.      Despite being statutorily entitled to these payments, jurors have no choice whatsoever as to how to receive their funds. Jurors are not allowed to opt out of receiving their payments on Chase Debit Cards. If a juror does not take the Debit Card, the juror will have no access whatsoever to the money he or she is entitled to by law.

9.      Jurors do not enter into a contractual relationship for receipt of the Debit Card. Indeed, they do not willingly agree to enter into any relationship whatsoever with Chase.

10.     Chase uses its monopolistic control over juror funds to steal captive jurors' money by assessing unconscionable and deceptive fees for use (or non-use) of the Debit Card.

---

[2] Although the statute entitles jurors to a $2 daily travel fund, that amount has since been raised to $4. *See District of Columbia Courts*, "Getting Paid," available at http://www.dccourts.gov/internet/jurors/gettingpaid/main.jsf.

11.     For example, the fees on the Chase Debit Cards include $1.50 monthly charges for non-use of the card; approximately $5 in fees for use of out-of-network ATMs; a $7 charge simply for entering a Chase branch to ask for Debit Card funds to be converted to cash; a $0.45 cent fee just to check the balance on the card; and, remarkably, a $0.25 cent fee for not having enough money in the account to pay for a "declined" debit card purchase.

12.     By making it prohibitively expensive to receive an over-the-counter cash withdrawal from, or to receive a check drawn upon the Debit Card, Chase ensures a "rump" balance will be left on each Debit Card—and forfeited to Chase.

13.     Notwithstanding that Chase has designed its entire Debit Card system to force jurors to forfeit these rump balances, Chase falsely advertises that jurors can receive their funds for "FREE" via an ATM withdrawal or point of sale transaction. To the contrary, based on Plaintiff's experience, he is not aware of any way to withdraw the full amount of his balance for free and if there is, Chase has effectively concealed it.

14.     That is because Plaintiff is not aware of any ATMs in the District that dispense amounts in dollar increments (i.e., instead of in $20 increments), meaning that any jurors with balances in odd dollar increments—including all jurors receiving the statutory $4 travel allowance only—are unable to obtain their full balance for "free," as Chase claims. Similarly, based on Plaintiff's experience, store purchases are only free if they cost less than the Debit Card balance, meaning any remaining balances cannot be accessed for free, as Chase claims.

15.     For jurors who are selected to serve on a jury and receive a $30 daily attendance fee in addition to the $4 daily travel subsidy, Chase thus ensures that jurors receive only a portion of their money—if they receive anything at all.

16.     And for the jurors who are not selected to serve on a jury, and are thus entitled only to the $4 daily travel subsidy, Chase makes it practically impossible for these jurors to retrieve their money off of the Debit Cards.

17.     Indeed, Plaintiff is not aware of any ATMs that will disburse only $4 in the District. In addition, there are no Chase branches located within 90 miles of the District. And even if there were, an in-person withdrawal from a Chase branch costs $7, meaning a $4 withdrawal is both monetarily and geographically impossible. The same is true for a check withdrawal, which costs $15.

18.     In other words, Chase has intentionally designed the Debit Card system such that the fees it charges prevent jurors from actually being able to access the funds to which they are entitled by statute. If there is, in fact, any way for jurors to use or withdraw their rump balances, Chase conceals this in order to milk more fees from them. Indeed, Chase expects and relies on individuals forfeiting these funds to the Bank.

19.     That is precisely what happened to Plaintiff, who served on a jury in the Superior Court for the District of Columbia in July 2016. As payment for his service, but without his consent, he was provided with a Chase Debit Card. Yet, Plaintiff was unable to fully use the funds on the Debit Card—funds he is entitled to by statute.

20.     Since receiving the Debit Card, Plaintiff incurred two $0.25 cent charges for (unknowingly) not having enough money in the account to pay for a "declined" Debit Card purchase. He also incurred a $1.50 inactivity fee in January 2017 and again in February 2017. And because he has been unable to use his Debit Card since September 2016, every month hereafter he will incur $1.50 in Chase inactivity fees.

21.     To date, Plaintiff has a remaining and inaccessible balance of approximately $13. Plaintiff has been unable to use his Debit Card because of the unconscionable and unreasonable fees assessed by Chase. He cannot withdraw the balance from an ATM, for example, because he does not know of any ATM that dispenses less than $20 in the District. And if he chose to receive a check, he would sacrifice the entire balance of the card to fees. Similarly, if he tried to withdraw his money from a Chase bank teller (which does not even exist in D.C.), he would lose nearly half of his remaining balance.

22.     As Plaintiff's experience demonstrates, Chase has designed a system that makes it extremely difficult, if not impossible, for Plaintiff and other jurors to access the fees to which they are entitled by statute. In short, Chase expects and intends that jurors will incur needless fees and forfeit remaining balances to the Bank by design.

23.     Plaintiff, individually and on behalf of all others similarly situated, seeks to put a halt to Defendant's unfair, unconscionable, and deceptive acts and practices and seeks to recover from Chase all monies it unlawfully obtained.

**THE PARTIES**

24.     Plaintiff William Mark Scott is a resident of the District of Columbia who was called to jury duty and served on a jury in July 2016.

25.     Defendant JPMorgan Chase & Co. is a national banking association with headquarters in New York, New York, and assets of $2.6 trillion. Chase does business in various states throughout the United States, including in the District of Columbia.

**JURISDICTION AND VENUE**

26.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. In addition, this Court has jurisdiction over this class action pursuant

to 28 U.S.C. § 1332(d).  Plaintiff and members of the class have suffered aggregate damages

exceeding $5,000,000, exclusive of interest and costs, and members of the classes of plaintiffs

are citizens of a state different from any defendant.

27.     Venue is appropriate in this district according to 28 U.S.C. § 1391(b)(2) and

(b)(3).

28.     This Court has personal jurisdiction over Defendant Chase. Chase conducts

substantial business in the District of Columbia and a substantial part of the actions which gave

rise to Plaintiff's causes of action occurred in this jurisdiction.

## CLASS ALLEGATIONS

29.     Pursuant to Rule 23, Plaintiff brings this action on behalf of himself and Classes

of similarly situated persons defined as follows:

**The Nationwide Class:**

> All individuals in the United States who, upon completion
> of their jury service, and within the applicable statute of
> limitations, received their juror fees on a JPMorgan Chase
> Debit Card and incurred bank fees on their JPMorgan
> Chase Debit Card.

**The Multistate Subclass:**

> All individuals in the United States, except for the state of
> Iowa, who, upon completion of their jury service, and
> within the applicable statute of limitations, received their
> juror fees on a JPMorgan Chase Debit Card and incurred
> bank fees on their JPMorgan Chase Debit Card.

**The D.C. Subclass:**

> All individuals who, upon completion of their jury service
> in the Superior Court of the District of Columbia, and
> within the applicable statute of limitations, received their
> juror fees on a JPMorgan Chase Debit Card and incurred
> bank fees on their JPMorgan Chase Debit Card.

30.     Plaintiff reserves the right to modify or amend these Class definitions.

31.     Excluded from the Classes are Defendant, its parents, subsidiaries, and affiliates, any entity in which Defendant has a controlling interest, individuals who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

32.     <u>Numerosity</u>. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of Defendant and can be ascertained from Defendant's records.

33.     <u>Typicality</u>. The representative Plaintiff's claims are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was defaulted into receiving a Chase Debit Card and then prevented from accessing the full amount of his funds without interference, obstacles, and unfair and unconscionable bank fees. The representative Plaintiff, like all Class members, has been damaged by Defendant's misconduct in that he was forced to receive funds he is entitled to by law in the form of a Chase Debit Card, has been assessed and will continue to be assessed unfair and unconscionable bank fees, and has been prevented from fully accessing all of his funds. Furthermore, the factual basis of Defendant's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

34.     <u>Commonality and Predominance</u>. There are numerous questions of law and fact common to the Classes, and those common questions predominate over any questions affecting only individual Class members. Among the questions of law and fact common to the Classes are:

      a.     whether Chase automatically opens Debit Card accounts for jurors without their consent;

     b.      whether the Debit Card fees are unreasonable and/or unconscionable;

     c.      whether Chase deceives jurors about, and does not adequately disclose, the Debit Card fees;

     d.      whether Chase misrepresents its authority to create Debit Card accounts for jurors;

     e.      whether Chase has the authority to charge the Debit Card fees it charges;

     f.      whether Chase forces jurors to forfeit unused balances on its Debit Cards;

     g.      whether and to what extent, if any, jurors are able to access any of their juror funds;

     h.      whether Chase converts money belonging to Plaintiff and the other members of the Classes through its policies and practices;

     i.      whether Chase is unjustly enriched through its policies and practices;

     j.      whether Chase violates D.C. and other state consumer protection acts through its policies and practices; and

     k.      whether Chase violates the Electronic Transfer Funds Transfer Act through its policies and practices.

27.     Additional questions of law and fact common to the Class include:

     a.      the proper method or methods by which to measure damages; and

     b.      the declaratory and injunctive relief to which the Classes are entitled.

28.     <u>Adequacy of representation</u>. Plaintiff's claims are typical of the claims of the other Class members, in that they arise out of Defendant's same wrongful policies and practices. Plaintiff has suffered the harm alleged herein and has no interests antagonistic to the interests of the other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular,

class actions on behalf of consumers and against financial institutions. For these reasons, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

29.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Consequently, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy.

30.     Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of economies of scale and of adjudication and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

## I.     BACKGROUND

31.     Jury service is a vital part of our democratic system. The right to a trial by jury is guaranteed both in Article III and in the Sixth Amendment of the United States Constitution. The right to a civil jury is also guaranteed by the Seventh Amendment.

32.     The Supreme Court has stated that the right to a trial by jury "is fundamental to the American scheme of justice." *Duncan v. State of La.,* 391 U.S. 145, 149 (1968).

33.     Undoubtedly, serving on a jury is an important civic duty—but it comes with costs. Jurors must take time out of their busy schedules in order to serve their peers. Often times, jurors give up their salaries or incur lost opportunity costs in order to serve, either because they are self-employed (like Plaintiff), work part-time, are independent contractors, business owners, or employed by a small business exempt from D.C.'s laws requiring employers to compensate employees for time spent serving on a jury.

34.     The law of the District of Columbia—like many other jurisdictions—recognizes the financial realities of jury duty and requires that individuals be compensated for jury service. Specifically, District of Columbia residents are entitled to a $30 daily attendance fee for each day he or she serves on a jury in the Superior Court of the District of Columbia. D.C. Code Ann. § 15-718. Additionally, individuals are entitled to a $4 daily travel allowance even if they are not chosen to serve on a jury.

## II.     THE CHASE MONEYMAKING SCHEME

### a.     Chase Debit Cards are Foisted Upon Jurors Without Their Choice or Consent

35.     When an individual completes jury duty in D.C., he or she receives a Debit Card and a few sheets of information about the card.

36.     Payments are uploaded to the Debit Card daily after 5pm (in the case of petit jurors) or weekly (in the case of grand jurors). The amount of the payment is determined by statute.

37.     The juror is given no choice whatsoever in how to receive his or her funds.

38.     D.C. does not provide any other options for jurors to access their funds.

11

39.     Jurors are not given any opportunity to read or decline any of the materials. Jurors do not sign any acknowledgment that they have understood or read the materials. As a result, jurors do not form valid contracts with Chase with respect to the Debit Cards.

40.     If a juror refuses the Chase Debit Card, the juror will have no access to his or her money—money to which he or she is entitled by statute.

41.     Chase thus has complete control over a captive population of American jurors, which Chase exploits through a scheme that is intentionally designed to rob these jurors of the money owed to them by statute in order to line Chase's own pockets—pockets that are already extremely wealthy to the tune of $2.6 trillion.

**b. Chase Creates Unnecessary Barriers to Access**

42.     Chase's unconscionable and deceptive scheme starts with creating intentional barriers to access. The first such barrier arises when jurors receive their Debit Cards. Rather than provide the preloaded card with a personal identification number ("PIN") ready for immediate use, Chase requires individuals to log-on to the Chase website or call the Chase phone number to activate the card.

43.     The sheet of paper containing the Debit Card commands jurors to "**Activate your card right now! Log on to www.ucard.chase.com** or call . . ."

44.     Jurors who do not activate their Debit Cards will have no access to their money.

45.     Jurors who find their way to www.ucard.chase.com ("UCard Website") are presented with the following screens of red tape, in order, which require jurors to spend more of their time just to access their money:



46.     Jurors are then provided with a screen that shows "UCard Terms and Conditions,"

as the following illustrates:



47.     The Terms and Conditions say nothing about the Debit Card itself or about any fees associated with the Debit Cards. Rather, the Terms and Conditions govern use of the Chase website.

48.     If a juror does not accept the UCard Terms and Conditions, he or she cannot proceed—the registration process will be canceled. Chase is thus imposing an extra-statutory obligation on jurors that is designed to deprive them of money they are legally owed for serving their community.

49.     Jurors must then validate their identities, select a PIN, and enter and confirm other user information, as the following illustrates:



50.     The Chase Ucard Website, moreover, is not user friendly.

**c.  Chase Does Not Have the Statutory Authority to Charge Consumers Any
Fees on the Money They are Entitled to By Statute**

51.     Chase imposes additional barriers to access by charging jurors a litany of fees for
accessing their own money, *or for failing to access their money quickly enough*, or even for
simply using an ATM to figure out their account balances.

52.     Chase does not have a legal right to assess *any* fees on D.C. jurors. Because jurors
and Chase never formed valid contracts for the assessment of bank fees and because jurors are
guaranteed their jury service payments by statute, Chase has no lawful authority to charge *any*
fees to jurors to access their own money. Nor does the Bank have any lawful authority to retain
unused balances on Debit Cards.

53.     To the extent the District of Columbia has purported to authorize Chase to charge jurors these fees, such an authorization is in contravention of D.C. Code Ann. § 15-718 and thus invalid *ab initio*.

54.     Yet Chase assesses a myriad of fees, as discussed herein, and holds unused funds on Debit Cards without affirmatively providing the funds to users.

55.     Even small penalties are unreasonable in the context of juror fees, which are determined by statute. Individuals are statutorily entitled to the *entirety* of their juror fees—not their juror fee less a percentage paid to Chase.

56.     No statute authorizes Chase to charge these fees.

57.     Moreover, the fees Chase charges do not provide jurors any benefit, and no reasonable consumer would choose to receive their money in this way if given the choice.

### d.  The Fees are Excessive and Unconscionable

58.     Putting aside the fact that Chase has no right to assess <u>any</u> Debit Card fees, the fees the Bank does assess are excessive and unconscionable. Chase does everything in its power to make getting money off the Debit Cards as prohibitively difficult and expensive as possible.

59.     For example, after the first withdrawal, unless a juror can locate an in-network ATM, Chase charges *two separate ATM withdrawal fees for each ATM withdrawal*: a $2.00 fee for itself and whatever fee is charged by the out-of-network ATM, which in 2016 averaged close to $3, but could be as high as approximately $4.50. In other words, a juror is charged a total of approximately $5.50 to $6.50 to make a single ATM withdrawal if he or she cannot locate an in-network ATM. That is more than the total jurors receive who do not serve on a jury and are thus eligible only for the travel allowance.

60.     And Chase itself does not have *any* ATMs in D.C, further making it difficult for jurors to access their funds. If a juror wants to avoid the out-of-network fees, a juror must find a partner ATM in the Chase network. And the Chase website does not identify any partner ATMs in the District.

61.     The Chase website also does not identify whether any of its ATMs (or partner ATMs) dispense amounts in single dollar increments or increments less than $20. That is because there are none in the District.

62.     Indeed, Chase does not make any real effort to assist jurors with accessing their full payments—that would be contrary to the obvious intended goal of Chase's system, to funnel as much of these jurors' funds as possible to Chase's own coffers.

63.     Similarly, if a juror simply walks into a Chase branch and asks for the branch to provide the funds on his Debit Card to him in cash, Chase will charge an astounding $7.00 fee for that "privilege" (referred to herein as the "cash conversion fee"). This is made even more difficult by the fact that Chase does not even have any Chase branches within 90 miles of D.C.

64.     And if a juror simply wants to receive the money on the Debit Card by check, Chase charges a shocking $15 check issuance fee (referred to herein as the "check fee").

65.     The $7 cash conversion fee and the $15 check fee exist solely to disincentivize jurors from receiving their funds in cash and to force jurors to use the Chase Debit Card issued to them without their consent.

66.     Chase has an obvious incentive to set high withdrawal and conversion fees in order to force jurors to use their Debit Cards for purchases. That is because via card network rules, Chase earns money every time a juror uses the Debit Card to make a purchase.  Moreover, Chase designs the Debit Card so that purchases result in rump balances that are ultimately

transferred into Chase's own pockets. Chase thus has its hand out at every step of the process, benefiting in every way imaginable to the detriment of jurors serving their duty to their communities.

67.     Indeed, the fees don't stop at withdrawals. There are fees tacked on to the Debit Cards for just about every conceivable situation or transaction. For instance, Chase charges $0.45 cents merely to check a balance at an ATM.

68.     Chase also charges $0.25 cents for a declined point-of-sale ("POS") transaction. Meaning, if a juror does not pay the $0.45 cent balance inquiry fee (or otherwise know exactly how much money is left on the Debit Card) and attempts to purchase something higher in value than their balance, the transaction will be declined and the juror will be hit with a $0.25 cent fee.

69.     Chase does not explain in plain English what a "[d]eclined POS transaction" is that results in a $0.25 cent charge or how to avoid it, instead identifying "[u]nlimited FREE transactions when you use your card at merchants across the U.S." as one way jurors can use their Debit Cards "to access and manage your money while minimizing fees." Thus jurors, like Plaintiff, may be charged multiple declined transaction fees without understanding how they can be avoided, if at all.

70.     In other words, through the imposition of fees and deceptive marketing, Chase makes every effort to prevent consumers from zeroing out their balances. That is what happened to Plaintiff, who was charged two declined transaction fees.

71.     Chase also penalizes jurors for not using their own money fast enough. Chase charges a $1.50 inactivity fee *every month* once an account is inactive for 90 days. All of these fees are designed so that *Chase* ends up with the funds that *D.C. jurors* are entitled to.

72.     In other words, Chase rewards itself handsomely for providing no practical benefit at the expense of hardworking jurors who serve their community and are entitled by statute to compensation Chase unilaterally siphons away.

73.     The complete fee schedule for the Debit Cards D.C. jurors receive is as follows:



74.     These fees are excessive even in the debit card industry and are designed purely to prevent jurors from accessing all of their funds.

75.     For example, *another Chase debit card product* offered on the open market, Chase Liquid, provides the over the counter cash withdrawal service for *free*.

76.     The same is true for Chase's $15 check fee. Chase's "Liquid" debit card charges just $8 for this service—and Western Union charges $5.95.

77.     Had other options been available, jurors would have chosen to receive their juror fees in a way that would not have come with the unconscionable and unusual fees Chase charges. Chase has exploited its unfettered power in the market at the expense of jurors who diligently serve their duty to the District, and Chase has caused balances to be forfeited as a result of that power. The fees that Plaintiff and the Class members incurred, and/or the monies they effectively forfeited to Chase could not, and would not, have been charged if they had not been automatically defaulted into a Chase Debit Card.

78.     All in all, the fee schedule that appears on Chase's marketing documents, and many of the fees listed therein, is designed to dissuade jurors from accessing funds in a manner other than the limited options Chase prefers—and to ensure that users will forfeit portions of their balance—either through fees or remaining balances—to the Bank because of the difficulty or impossibility of retrieving account balances.

**e.  The Fee Structure Ensures Rump Balances Will Be Left on Each Card and Forfeited to Chase**

79.     Indeed, the harshness of Chase's Debit Card fee structure is specifically designed to ensure that jurors will forfeit any small, remaining balances to the Bank because of the difficulty or impossibility of retrieving them. This feature acts as another hidden fee of the Chase Debit Cards.

80.     Chase counts on the fact that there will almost always be a remaining, unusable balance on a juror's Debit Card. In fact, Chase designs the Debit Card and fee structure so that

this will be the case. Because jurors are prohibited from adding additional money to the Debit

Cards, Chase knows it will normally be able to keep rump balances for itself, in the form of

inactivity fees.

81.     Indeed, Chase disincentivizes jurors from attempting to use *all* of the funds on

their Debit Cards by assessing a $0.25 cent declined point of sale transaction fee. Plaintiff

himself incurred two of these fees, and thereafter stopped using his card. He now has

approximately $13 trapped on his account. And in January, 2017, he incurred his first $1.50

inactivity fee.

82.     By assessing inactivity fees, Chase ensures unused balances not already eaten up

by other excessive fees revert back to the Bank. Ninety days after a juror's account balance

becomes too low to use, Chase begins assessing an inactivity fee of $1.50 per month until the

account is fully depleted.

83.     The under-use of balances is a well-known phenomenon in the similar gift-card

industry. As much as $41 billion in gift-card value has gone unused since 2005, according to

research firm TowerGroup, often due to the inability to "use up" remaining balances.

84.     Upon information and belief, the same phenomenon of unused balances impacts

the Debit Cards foisted upon jurors—to Chase's great benefit. Inactivity fees, however, cannot

be charged on gift cards or prepaid cards marketed to the general public unless they haven't been

used for more than *1 year*. By contrast, Chase charges monthly inactivity fees after *just ninety*

*days*.

85.     Chase's fee schedule prevents jurors from fully "using up" the funds placed on

their Debit Cards. Jurors are forced to forfeit remaining balances on Debit Cards that they cannot

use. Indeed, there will almost always be an excess balance that cannot be withdrawn from an

ATM or that cannot be used at a point of sale and will revert to Chase in the form of inactivity fees.

**f.   The $4 Travel Subsidy is Especially Impossible to Access**

86.     The impossibility of accessing small funds remaining on Chase's Debit Card is well illustrated in the context of those who are ultimately not selected to serve on a D.C. jury and receive only $4 as a daily travel subsidy.

87.     When a juror receives only the $4 travel subsidy on a Chase Debit Card, it is nearly impossible to access the funds. A $4 balance is not retrievable at any ATM in the D.C. metro area, meaning a $4 ATM withdrawal is not an option.

88.     An in-person withdrawal of $4 is similarly impossible because an in-person withdrawal from a Chase branch costs $7. There are also no Chase branches located within 90 miles of D.C.

89.     A check is likewise not an option. The check fee is a stunning $15, making a check for a balance of $4 impossible.

90.     Even if a juror manages to use a portion of the $4 at a point-of-sale, there will be a rump balance left on the card, which will eventually revert back to Chase through inactivity fees. And, as was Plaintiff's experience, jurors will often first be charged declined transaction fees in attempts to zero out their balances, a scheme designed by Chase to discourage jurors from continuing to use their Debit Cards.

91.     Chase has therefore designed a system that makes it virtually impossible for a juror to receive the full $4 travel fee *to which they are entitled by statute*. Yet, Chase claims that its Debit Cards are easy to use.

**g.   Chase's Debit Card Fees are Deceptive**

92.     Furthermore, to make matters worse, Chase purposefully obscures how jurors can access their full balances, if at all, concealing the multitude of fees in deceptive paperwork designed to make the card look free and easy to use.

93.     The handouts distributed with the card are chock-filled with deception. For example, jurors receive a sheet entitled "Frequently Asked Questions." In answer to the question, "Can I go to a bank teller and withdraw money from my U.S. Debit Card?" the sheet deceptively states the following:

> You may withdraw money from a teller at a Chase location, or any bank that displays the Visa/MasterCard logo. If you have questions, call Chase Customer Service.

*The same sheet does **not** inform jurors that such a "service" will cost $7.00.* Nor does it inform jurors that there is no Chase location within 90 miles of Washington, D.C.

94.     In answer to the question, "How can I find out the balance on my card?" the sheet states:

> The easiest way to find out the balance on your card is to visit the cardholder web site at www.ucard.chase.com. You can also find out your balance by doing a Balance Inquiry transaction at an ATM or by calling Chase Customer Service.

*The same sheet does **not** inform jurors that a "Balance Inquiry transaction" at an ATM will cost $0.25 cents.*

95.     The sheet also states:

> You will not have to pay an ATM surcharge if you use a Chase ATM or if your card is part of a partner ATM network (check the letter to which your card was attached for any applicable partner networks). **Please note that at partner ATMs you must press "YES" to accept the surcharge and proceed with the withdrawal. You will not be charged for the surcharge, nor will the surcharge be deducted from your account.** You can verify this by checking your ATM transaction receipt. Many other ATM

owners do charge a fee to use their machines. If you use an ATM
with a surcharge, the fee will be charged to your account.

The same sheet never informs users that the ATM owners' "fee" is *in addition to* a $2.00 ATM

fee that Chase charges after the first withdrawal.

96.     Moreover, the sheet never informs users that they will not be able to use an ATM

if they received only the daily travel stipend of $4. In fact, the sheet has no useful information for

accessing funds in odd dollar amounts or amounts less than $5. To the contrary, the FAQ sheet

advises jurors to "simply try another ATM" if one "doesn't accept your card." In addition, the

FAQ sheet directs jurors to the Chase website to "look for an ATM with partner network logos"

to "find a surcharge-free ATM." But Chase's website does not inform jurors where partner

ATMs are located and there are no Chase ATMs within approximately 90 miles of the District.

97.     On the back of the FAQ sheet, there is a "Welcome to the U.S. Debit Card

Program" sheet. That sheet states that "you can also use your card to withdraw cash at over one

million ATMs anywhere, with surcharge-free access at Chase and partner ATMs (where

applicable). The sheet does ***not*** explain that non-network ATM withdrawals come with $4.50 or

more in fees after the first withdrawal.

98.     Even the fee schedule itself is deceptive. For example, the fee schedule states that

an in-network ATM withdrawal is "FREE." But Plaintiff is not aware of any ATMs in the

District that dispense amounts in dollar increments or even in increments of less than $20,

meaning that any jurors with balances in odd dollar increments—including all jurors receiving

the statutory $4 travel allowance only—are unable to obtain their full balance for free, as Chase

claims.

99.     Likewise, the fee schedule indicates that a point of sale transaction is FREE. This

too is deceptive. A point of sale transaction is only "free" if it costs less than the Debit Card

balance—meaning any remaining balances cannot be accessed for free, as Chase claims. And any purchase that costs more than the balance will not zero out for free, but will instead be declined, with Chase slapping on an additional $0.25 cent declined transaction fee, as was Plaintiff's experience.

100.    And although the sheet indicates a $0.25 cent fee for a declined point of sale transaction, the sheet does not explain what this fee *is*. The sheet does not explain, in layman's terms, that the Debit Card is not like a gift card or prepaid card: it will not charge the remaining balance on the card towards the purchase if the purchase price is greater than the amount of the card. Rather, the entire transaction will be declined and will instead ding the user with a $0.25 cent fee. On a card that is not reloadable by the user, this fee is counterintuitive. Thus, a reasonable person would not understand even after reading the sheet that they may be charged $0.25 cents simply for trying to spend their own money.

**h.  Chase's unconscionable policies and provisions**

101.    Chase's policies and practices are, or were, unconscionable as described above and in the following respects, among others:

  a.    Chase automatically opens Debit Card accounts on behalf of jurors and deposits juror fees into such accounts without their consent;

  b.    Chase unilaterally attempts to impose contractual terms and fees upon jurors without providing the meaningful ability to review or approve the terms or fees;

  c.    Chase deceptively describes and fails to adequately disclose the excessive and unconscionable fees it charges jurors;

    d.       Chase charges fees that reduce the payments jurors are entitled to

                by law without lawful authority to do so;

    e.       Chase structures the requirements and fees of its juror Debit Cards

                to create barriers to access and impose as many fees as possible in

                a deliberate effort to deny jurors the payments they are entitled to

                under law for their service;

    f.       Chase's fee structure makes it virtually impossible to access the

                D.C. $4 daily travel allowance or any rump balances left on the

                Debit Cards.

## III.    DEFENDANT'S PRACTICES HARMED PLAINTIFF

102.    Chase's wrongful policies and practices described above harmed Plaintiff and the

members of the Classes. The following allegations concerning Plaintiff illustrate the harm and

damage that Plaintiff and Class members sustained as a result of Chase's wrongful policies and

practices.

103.    Plaintiff served on a jury in the Superior Court of the District of Columbia in July

2016.

104.    After spending four days serving his community and giving up time at his solo

law practice in order to do so, Plaintiff was provided with a Chase Debit Card containing the

juror fees he was statutorily entitled to.

105.    In the month after receiving the card, Plaintiff used it for several small purchases,

leaving a balance of approximately $17 on his Debit Card.

106.    When Plaintiff attempted to use the card again, on September 20, 2016, he was

assessed a $0.25 cent fee for insufficient funds. Later that day, Plaintiff went to use the card

again, and the card was again declined for insufficient funds. He was again assessed a $0.25 cent fee.

107.    After having two transactions declined for insufficient funds, Plaintiff did not use his card after September 20, 2016.

108.    On January 1, 2017, Chase assessed a $1.50 inactivity fee. Chase assessed another $1.50 inactivity fee on February 1, 2017.

109.    Plaintiff now has approximately $13 trapped on his Debit Card.

110.    Other than a point of sale transaction (which Plaintiff has now twice been charged a fee for and denied the ability to take advantage of), the only purportedly "free" Debit Card service Chase offers is an in-network ATM withdrawal, but Plaintiff is not aware of any ATM that dispenses less than $20 in the District, so that option is not available to him either. Nor can Plaintiff receive a check withdrawal, for example, because it costs $15 and would thus eat up all of his remaining balance. And an in-person withdrawal from a Chase branch costs $7, meaning Plaintiff would forfeit almost half of his remaining balance. Moreover, there are no Chase branches located within 90 miles of the District.

111.    As of December 2016, Chase has provided no refund of the remaining balance and has not indicated anywhere, at any time, that a refund is possible. Consequently, Plaintiff has effectively forfeited his remaining balance to the Bank.

112.    Plaintiff is entitled to the jury fees guaranteed to him by statute. Chase is not authorized to continue to hold Plaintiff's money indefinitely.

## IV.    THE DAMAGES THAT PLAINTIFF AND THE CLASS MEMBERS SUSTAINED

113.    As a consequence of Chase's policies and practices, Plaintiff and the Class members have been wrongfully forced to use Chase Debit Cards and to pay unconscionable,

unusual, and deceptive bank fees and/or to effectively forfeit unused funds to Chase. Defendant

has improperly deprived Plaintiff and the Class members of funds, causing ascertainable

monetary losses and damages.

114.    As a consequence of Chase's improper fees and unused balance policies, Chase

has wrongfully deprived Plaintiff and the Class members of funds to which it has no legitimate

claim.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### *On behalf of the Classes*

115.    Plaintiff repeats and re-alleges the preceding and subsequent paragraphs as though

fully set forth herein.

116.    By means of Chase's wrongful conduct alleged herein, Chase knowingly and

wrongfully received and retained benefits and funds from Plaintiff and the members of the

Classes. In so doing, Defendant Chase acted with conscious disregard for the rights of Plaintiff

and the members of the Classes.

117.    As a result of Chase's wrongful conduct as alleged herein, Chase has been

unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class members.

118.    Chase's unjust enrichment is traceable to, and resulted directly and proximately

from, the conduct alleged herein.

119.    Under the common law doctrine of unjust enrichment, it is inequitable for Chase

to retain the benefits it received, and is still receiving, without justification, from the imposition

of bank fees on Debit Cards in an unfair, unconscionable, and oppressive manner. Chase's

retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

120.     The financial benefits Chase derived rightfully belong to Plaintiff and the Class members. Chase should be compelled to disgorge in a common fund, for the benefit of Plaintiff and the Class members, all wrongful or inequitable proceeds Chase received. A constructive trust should be imposed upon all wrongful or inequitable sums Chase received traceable to Plaintiff and the Class members.

121.     Plaintiff and the members of the Classes have no adequate remedy at law.

122.     Therefore, Plaintiff prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF
### Conversion
### *On behalf of the Classes*

123.     Plaintiff repeats and re-alleges the preceding and subsequent paragraphs as though fully set forth herein.

124.     Chase had, and continues to have, a duty to maintain and preserve Debit Cardholders' funds and to prevent their diminishment through its own wrongful acts.

125.     Chase has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the Class members, without legal justification.

126.     Chase continues to retain the funds unlawfully and without the consent of Plaintiff or the Class members.

127.     Chase intends to permanently deprive Plaintiff and the Class members of the funds.

128.    Plaintiff and the Class members properly own the funds, not Chase, who now claims it is entitled to their ownership, contrary to the rights of Plaintiff and the Class members.

129.    Plaintiff and the Class members are entitled to the immediate possession of the funds.

130.    Chase has wrongfully converted the specific and readily identifiable funds.

131.    Chase's wrongful conduct is continuing.

132.    As a direct and proximate result of Chase's wrongful conversion of their funds, Plaintiff and the members of the Classes have suffered and continue to suffer damages.

133.    By reason of the foregoing, Plaintiff and members of the Classes seek to recover from Defendant all damages and costs permitted by law, including all amounts that Chase has wrongfully converted.

134.    Therefore, Plaintiff prays for relief as set forth below.

**THIRD CLAIM FOR RELIEF**
**Violation of D.C. Code § 28-3904 et seq.**
**Consumer Protection Procedures Act (CPPA)**
***On behalf of the D.C. Class***

135.    Plaintiff repeats and re-alleges the preceding and subsequent paragraphs as though fully set forth herein.

136.    This Count is brought on behalf of Plaintiff and the general public pursuant to the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901 *et seq.*

137.    As described herein, Chase engaged, and continues to engage, in deceptive, unfair, and unconscionable acts and practices in violation of the CPPA.

138.    Chase is a "person" within the meaning of D.C. Official Code § 28-3901(a)(1), and provides "goods and services" within the meaning of § 28-3901(a)(7).

139.   Plaintiff is a "consumer" within the meaning of D.C. Official Code § 28-3901(a)(2).

140.   D.C. Code § 28-3904 makes it an "unlawful trade practice … whether or not any consumer is in fact misled, deceived or damaged thereby," to, among other things:

(a) Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;

(e) Misrepresent as to a material fact which has a tendency to mislead;

(e-1) Represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f) Fail to state a material fact if such failure tends to mislead;

(f-1) Use innuendo or ambiguity as to a material fact, which has a tendency to mislead;

(r) make or enforce unconscionable terms or provisions of sales or leases; and

(u) Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

141.   Defendant Chase violated the CPPA by, *inter alia*, automatically creating Debit Cards for Plaintiff and Class members, placing Plaintiff's and Class members' statutory jury fees on the Debit Cards, and then making it impossible for Plaintiff and Class members to fully consume all of the funds on the cards—all without Plaintiff's or Class members' consent.

142.     The terms of the transaction between Defendant and Plaintiff were both procedurally and substantively unconscionable. Plaintiff and Class members had no reasonable choice other than to go along with Defendant's conduct of forcing them to accept their jury fees on Chase Debit Cards, and once the jury fees were on the Debit Cards, Plaintiff and Class members had no reasonable option other than to pay the deceptive, unfair, and unconscionable fees Defendant charged, which prevented Plaintiff and Class members from receiving all of the money to which they are entitled by statute.

143.     Chase misrepresented its authority to charge these unconscionable and unreasonable fees. No statute authorizes these fees. In fact, both D.C. and Federal law independently *prohibits* Defendant's conduct alleged herein.

144.     D.C. law prohibits Defendant's conduct because D.C. law entitles jurors to $30 per day for jury service, and $4 in daily transportation allowance, *not* the same *less* fees to Chase.

145.     Federal law prohibits Defendant's conduct because Federal law requires individuals to *consent* before receiving payments on prepaid cards. Plaintiff and the Classes did not consent to receiving their jury payments on Chase's prepaid Debit Cards.

146.     When a juror is given a Chase Debit Card with $4 on it, the transaction is inherently deceptive. There is no way for a juror to obtain that $4 in cash, and it is virtually impossible for a juror to use that $4.

147.     Furthermore, as discussed above, Chase's paperwork describing the Debit Card and related fees is also deceptive and misleading.

148.     Plaintiff and Class members were injured in fact and lost money as a result of Defendant's deceptive, unfair, and unconscionable acts and practices for all of the reasons set

forth above, including but not limited to (i) because Plaintiff and Class members were unable to recover the entirety of their money from Defendant's Debit Cards and, consequently, never had an opportunity to recover their full statutory payment for jury duty and (ii) because Defendant charged Plaintiff and Class members deceptive, unfair, and unconscionable fees for use of its Debit Cards as more fully described above.

149.     In addition to actual damages, Plaintiff and the Classes are entitled to statutory and treble damages as authorized by D.C. Code §28-3901 *et seq.*

150.     Plaintiff and Class members seek to enjoin Chase's unlawful, deceptive acts and practices described above. Plaintiff and Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful, deceptive, unfair, and unconscionable actions. Plaintiff continues to be a resident of the District of Columbia and will, in all likelihood, be called to jury duty again. Because jurors are given no choice but to accept Chase's Debit Card to receive their juror fees, unless Defendant's unlawful practices are stopped, Plaintiff will be given another Debit Card and forced to incur needless and unreasonable fees, yet again, in violation of his statutory right to payment.

151.     Plaintiff and the Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, and injunctive relief prohibiting Defendant Chase from, *inter alia*, continuing to force D.C. jurors to use its Debit Cards to receive their jury fees and continuing to charge deceptive, unfair, and unconscionable fees for use of the Debit Cards.

152.     Therefore, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Consumer Protection Acts of 49 states**
***On behalf of the Multistate Class***

153.    Plaintiff repeats and re-alleges the preceding and subsequent paragraphs as though fully set forth herein.

154.    Plaintiff brings this claim on behalf of the multistate class for violation of the consumer protection acts of each of the States of the United States, except for the state of Iowa.

155.    Plaintiff brings these statutory consumer protection claims pursuant to the substantially similar "Consumer Protection Acts" identified below, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

156.    The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts":

　　　　a. ALA. CODE § 8-19-1 et seq. (Alabama);

　　　　b. ALASKA STAT. ANN. § 45.50.471 et seq. (Alaska);

　　　　c. ARIZ. REV. STAT. ANN. § 44-1521 et seq. (Arizona);

　　　　d. ARK. CODE ANN. § 4-88-101 et seq. (Arkansas);

　　　　e. CAL. BUS. & PROF. CODE § 17200 et seq. and CAL. CIV. CODE §1750 et seq. (California);

　　　　f. COLO. REV. STAT. ANN. § 6-1-101 et seq. (Colorado);

　　　　g. CONN. GEN. STAT. ANN. § 42-110a et seq. (Connecticut);

　　　　h. DEL. CODE ANN. tit. 6, § 2511 et seq. (Delaware);

　　　　i. D.C. CODE ANN. § 28-3901 et seq. (District of Columbia);

　　　　j. FLA. STAT. ANN. § 501.201 et seq. (Florida);

k. GA. CODE ANN. § 10-1-370 et seq. and GA. CODE ANN. § 10-1-390 et seq. (Georgia);

l. HAW. REV. STAT. ANN. § 480-1 et seq. and HAW. REV. STAT. ANN. § 481A-1 et seq. (Hawai'i);

m. IDAHO CODE ANN. § 48-601 et seq. (Idaho);

n. 815 ILCS 505/1 et seq. (Illinois);

o. IND. CODE ANN. § 24-5-0.5-0.1 et seq. (Indiana);

p. KAN. STAT. ANN. § 50-623 et seq. (Kansas);

q. KY. REV. STAT. ANN. § 367.110 et seq. (Kentucky);

r. LA. STAT. ANN. § 51:1401 et seq. (Louisiana);

s. ME. REV. STAT. tit. 5, § 205-A et seq. (Maine);

t. MD. CODE ANN., COM. LAW § 13-101 et seq. (Maryland);

u. MASS. GEN. LAWS ANN. ch. 93A, § 1 et seq. (Massachusetts);

v. MICH. COMP. LAWS ANN. § 445.901 et seq. (Michigan);

w. MINN. STAT. ANN. § 325F.68 et seq., MINN. STAT. ANN. § 325D.09 et seq., MINN. STAT. ANN. § 325D.43 et seq., and MINN. STAT. ANN. § 325F.67 (Minnesota);

x. MISS. CODE ANN. § 75-24-1 et seq. (Mississippi);

y. MO. ANN. STAT. § 407.010 et seq. (Missouri);

z. MONT. CODE ANN. § 30-14-101 et seq. (Montana);

aa. NEB. REV. STAT. ANN. § 59-1601 et seq. (Nebraska);

bb. NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT. ANN. §598.0903 et seq. (Nevada);

cc. N.H. REV. STAT. ANN. § 358-A:1 et seq. (New Hampshire);

dd. N.J. STAT. ANN. § 56:8-1 et seq. (New Jersey);

ee. N.M. STAT. ANN. § 57-12-1 et seq. (New Mexico);

ff. N.Y. GEN. BUS. LAW. § 349 et seq. (New York);

gg. N.C. GEN. STAT. ANN. § 75-1 et seq. (North Carolina);

hh. N.D. CENT. CODE ANN. § 51-15-01 et seq. (North Dakota);

ii. OHIO REV. CODE ANN. § 1345.01 et seq. (Ohio);

jj. OKLA. STAT. ANN. tit. 15, § 751 et seq. (Oklahoma);

kk. OR. REV. STAT. ANN. § 646.605 et seq. (Oregon);

ll. 73 PA. STAT. ANN. § 201-1 et seq. (Pennsylvania);

mm. 6 R.I. GEN. LAWS ANN. § 6-13.1-1 et seq. (Rhode Island);

nn. S.C. CODE ANN. § 39-5-10 et seq. (South Carolina);

oo. S.D. CODIFIED LAWS § 37-24-1 et seq. (South Dakota);

pp. TENN. CODE ANN. § 47-18-101 et seq. (Tennessee);

qq. TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Texas);

rr. UTAH CODE ANN. § 13-11-1 et seq. (Utah);

ss. VT. STAT. ANN. tit. 9, § 2451 et seq. (Vermont);

tt. VA. CODE ANN. § 59.1-196 et seq. (Virginia);

uu. WASH. REV. CODE ANN. § 19.86.010 et seq. (Washington);

vv. W.VA. CODE ANN. § 46A-6-101 et seq. (West Virginia);

ww. WIS. STAT. ANN. § 100.20 (Wisconsin); and

xx. WYO. STAT. ANN. § 40-12-101 et seq. (Wyoming).

157.    Plaintiff and the nationwide Class members have standing to assert claims under

the Consumer Protection Acts because they are consumers within the meaning of the Consumer

Protection Acts and Defendant's practices were addressed to the market generally and otherwise

implicate consumer protection concerns. At all relevant times, Defendant conducted "trade and commerce" within the meaning of the Consumer Protection Acts. *See, e.g.,* 815 ILCS 505/1(f).

158.    Defendant has committed unlawful, fraudulent, and/or unfair business acts and practices by engaging in the acts and practices alleged herein, including but not limited to automatically creating Debit Cards for Plaintiff and the Class members, placing Plaintiff's and Class members' statutory jury fees on the Debit Cards, and then making it impossible to fully consume all of the funds on the cards—all without Plaintiff's or the Class members' consent.

159.    The terms of the transaction between Defendant and the Classes were both procedurally and substantively unconscionable. Plaintiff and Class members had no reasonable choice other than to go along with Defendant's conduct of forcing them to accept their jury fees on Debit Cards, and once the jury fees were on the Debit Cards, Plaintiff and the Class members had no reasonable option other than to pay the deceptive, unfair, and unconscionable fees Defendant charged, which prevented Plaintiff and the Class members from receiving all of the money to which they are entitled by statute.

160.    Chase misrepresented its authority to charge these unconscionable and unreasonable fees. No statute authorizes these fees. In fact, both state and Federal law independently *prohibits* Defendant's conduct alleged herein.

161.    As discussed above, Chase's paperwork describing the Debit Card and the related fees is also deceptive and misleading.

162.    Defendant intended that Plaintiff and the nationwide Class members would rely on the unlawful, fraudulent, and/or unfair business acts and practices alleged herein.

163.    Defendant's actions, which were willful and wanton, constitute intentional violations of the Consumer Protection Acts.

164.     Defendant's unlawful, fraudulent, and/or unfair business acts and practices described herein are continuing in nature. Plaintiff and the nationwide Class members have been damaged as a proximate result of Defendant's course of conduct and its violations of the Consumer Protection Acts for all of the reasons set forth above, including through the imposition of deceptive and unlawful Debit Card fees.

165.     Plaintiff and the nationwide Class members respectfully request damages, equitable monetary relief, injunctive relief, declaratory relief, and attorneys' fees, costs, and expenses to be assessed against Defendant, within the limits set forth by applicable law.

**FIFTH CLAIM FOR RELIEF**
**Violation of 12 C.F.R. § 205.10**
**Electronic Fund Transfer Act (Regulation E)**
*On behalf of Classes*

166.     Plaintiff repeats and re-alleges the preceding and subsequent paragraphs as though fully set forth herein.

167.     The Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693 *et seq*., and accompanying regulations prohibits financial institutions like Defendant Chase from forcing jurors to receive prepaid Debit Cards. Specifically, the EFTA states:

> No financial institution or other person may require a consumer to establish an account for receipt of electronic fund transfers with a particular institution as a condition of employment or receipt of a government benefit. 15 U.S.C. § 1693(k).

168.     The primary purpose of the EFTA "is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

169.     Defendant is a "financial institution" or "other person" within the meaning of 12 CFR § 205.2(i) and 205.2(j).

170.    Plaintiff and members of the Classes are "consumers" within the meaning of 12 CFR § 205.2(e).  A "consumer" is defined in the statute as a "natural person."

171.    Chase requires consumers to establish an "account" with Chase in order to receive payment for their jury service as that term is defined in 12 CFR § 205.2(b).

172.    The payment jurors receive is an "electronic fund transfer" as it is defined in 12 CFR § 205.3(b)(1).

173.    Defendant Chase requires Plaintiff and the Classes to receive electronic fund transfers with a particular institution as a condition of employment or receipt of a government benefit. In order to receive the payment to which they are entitled by statute, Plaintiff and the Classes are required to accept the Chase Debit Card thrust upon them. They are not given the option to opt-out and receive their funds in a different manner. If they want to receive their payment, they must accept the card. If Plaintiff and Class members had the choice, they would not accept Defendant's Debit Cards as payment.

174.    As a result of Defendant Chase's violation of the EFTA, Plaintiff and the Classes were damaged in an amount to be determined at trial. In addition, Plaintiff and the Classes are entitled to statutory damages and attorneys' fees, as authorized under 15 U.S.C. § 1693m(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

A.    certifying the proposed Classes;

B.    declaring that Chase is financially responsible for notifying the Class members of the pendency of this suit;

C.    declaring that Chase has committed the violations of law alleged herein;

D.      providing for any and all injunctive relief the Court deems appropriate;

E.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F.      providing for any and all equitable monetary relief the Court deems appropriate;

G.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

H.      awarding Plaintiff his reasonable costs and expenses of suit, including attorneys' fees;

I.      awarding pre- and post-judgment interest to the extent the law allows; and

J.      for such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: February 7, 2017            Respectfully submitted,

**TYCKO & ZAVAREEI LLP**

By:*/s/ Anna C. Haac*
ANNA C. HAAC (D.C. Bar No. 979449)
SOPHIA J. GOREN (D.C. Bar No. 1044723)
JEFFREY D. KALIEL (D.C. Bar No. 983578)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*ahaac@tzlegal.com*
*sgoren@tzlegal.com*
*jkaliel@tzlegal.com*

*Counsel for Plaintiff and the Proposed Classes*