**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM MARK SCOTT and RONALD
MORIN, individually and
on behalf of all others similarly situated,

*Plaintiffs*,

Civ. Action No. 1:17-CV-00249-APM

JPMORGAN CHASE & CO.,

*Defendant.*

**DEFENDANT JPMORGAN CHASE & CO.'S MOTION**
**TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

Defendant JPMorgan Chase & Co. respectfully moves for an order dismissing Plaintiffs

William Mark Scott's and Richard Morin's Complaint (ECF No. 14-2) pursuant to Federal Rules

of Civil Procedure Rules 12(b)(1), (6), and (7).  For the reasons stated in the accompanying

Memorandum of Points and Authorities, the Complaint should be dismissed in its entirety with

prejudice.  A proposed Order of dismissal accompanies this Motion.

Pursuant to Local Rule 7(f), Defendant respectfully requests an oral hearing on this

Motion.

Dated: May 3, 2017                     Respectfully submitted,

                                       */s/ Noah A. Levine*
                                       Noah A. Levine (admitted *pro hac vice*)
                                       Jamie S. Dycus (admitted *pro hac vice*)
                                       Jenny R. A. Pelaez (admitted *pro hac vice*)
                                       WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
                                       7 World Trade Center
                                       250 Greenwich Street
                                       New York, NY 10007
                                       Telephone: (212) 230-8800
                                       Facsimile: (212) 230-8888
                                       noah.levine@wilmerhale.com
                                       jamie.dycus@wilmerhale.com
                                       jenny.pelaez@wilmerhale.com

                                       Jonathan E. Paikin (D.C. Bar No. 466445)
                                       WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
                                       1875 Pennsylvania Avenue NW
                                       Washington, DC 20006
                                       Telephone: (202) 633-6703
                                       Facsimile: (202) 663-6363
                                       jonathan.paikin@wilmerhale.com

                                       *Attorneys for Defendant JPMorgan Chase & Co.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM MARK SCOTT and RONALD MORIN, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Civ. Action No. 1:17-CV-00249-APM |
| JPMORGAN CHASE & CO., | |
| *Defendant*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT JPMORGAN CHASE & CO.'S MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

Noah A. Levine (admitted *pro hac vice*)
Jamie S. Dycus (admitted *pro hac vice*)
Jenny R. A. Pelaez (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
noah.levine@wilmerhale.com
jamie.dycus@wilmerhale.com
jenny.pelaez@wilmerhale.com

Jonathan E. Paikin (D.C. Bar No. 466445)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 633-6703
Facsimile: (202) 663-6363
jonathan.paikin@wilmerhale.com

*Attorneys for Defendant JPMorgan Chase & Co.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................1

BACKGROUND ...............................................................................................................2

    A.    The U.S. Debit Card Program .............................................................................2

    B.    Plaintiffs' Allegations .........................................................................................4

LEGAL STANDARD ........................................................................................................7

ARGUMENT .....................................................................................................................7

II.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN
      TREASURY AND THE D.C. COURTS AS INDISPENSABLE PARTIES ...................8

III.    THE COMPLAINT FAILS TO STATE A CLAIM ...............................................12

    A.    Plaintiffs Fail to State a Claim for Unjust Enrichment .........................................12

    B.    Plaintiffs Fail to State a Claim for Conversion .....................................................15

    C.    Plaintiffs Fail to State a Claim Under the Consumer Protection Procedures
        Act .......................................................................................................................16

    D.    Plaintiffs Fail to State a Claim Under "Consumer Protection Laws of 49
        States" ..................................................................................................................17

    E.    Plaintiffs Fail to State a Claim Under Regulation E ..............................................18

IV.    PLAINTIFFS CANNOT HOLD JPMCB LIABLE FOR ACTIONS THE
      FEDERAL GOVERNMENT DIRECTED IT TO TAKE ...........................................19

    A.    Derivative Sovereign Immunity Bars Plaintiffs' Claims ......................................20

    B.    The Government Contractor Defense Bars Plaintiffs' Claims ...............................22

CONCLUSION ..................................................................................................................23

# TABLE OF AUTHORITIES

*Denotes authority on which Defendants principally rely.

Page(s)

## CASES

*16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*,
   276 F.R.D. 8 (D.D.C. 2011) .......................................................................................2, 7

*Ackerson v. Bean Dredging LLC*,
   589 F.3d 196 (5th Cir. 2009) ...................................................................................20, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................7

*Athridge v. Aetna Cas. & Sur. Co.*,
   351 F.3d 1166 (D.C. Cir. 2003) ....................................................................................17

*Azose v. Washington Mut. Bank*,
   588 F. Supp. 2d 366 (E.D.N.Y. 2008) ..........................................................................19

*Baptista v. JPMorgan Chase Bank, N.A.*,
   640 F.3d 1194 (11th Cir. 2011) ....................................................................................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................7

*Bentzlin v. Hughes Aircraft Co.*,
   833 F. Supp. 1486 (C.D. Cal. 1993) .............................................................................20

*Boles v. Greeneville Housing Auth.*,
   468 F.2d 476 (6th Cir. 1972) ...............................................................................9, 11, 12

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1998) ..........................................................................................19, 22, 23

*Brady v. Roosevelt S.S. Co.*,
   317 U.S. 575 (1943) ......................................................................................................19

*Bridges v. Blue Cross & Blue Shield Ass'n*,
   889 F. Supp. 502 (D.D.C. 1995) .....................................................................................9

*Brown v. Wells Fargo & Co.*,
   284 F.R.D. 432 (D. Minn. 2012) ...................................................................................13

*Butters v. Vance Int'l Inc.*,
   225 F.3d 462 (4th Cir. 2000) ...................................................................................19, 20

*Cadet v. Draper & Goldberg, PLLC*,
No. 05-cv-2105, 2007 WL 2893418 (D.D.C. Sept. 28, 2007)..........................................16

*Campbell v. National Union Fire Ins. Co.*,
130 F. Supp. 3d 236 (D.D.C. 2015) ...................................................................................15

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ................................................................................................19, 21

*Cannon v. Wells Fargo Bank, N.A.*,
926 F. Supp. 2d 152 (D.D.C. 2013) ...................................................................................16

*Carley v. Wheeled Coach*,
991 F.2d 1117 (3d Cir. 1993)...........................................................................................22

*Chambers v. NASA Fed. Credit Union*,
No. 15-cv-2013, 2016 WL 6155930 (D.D.C. Oct. 21, 2016) ....................................12, 17

*Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Wash.*,
699 F.2d 1274 (D.C. Cir. 1983) ........................................................................................11

*Correctional Servs. Corp. v. Malesko*,
534 U.S. 61 (2001)............................................................................................................19

*Department of the Army v. Blue Fox*,
525 U.S. 255 (1999)..........................................................................................................10

*Fagans v. Unisys Corp.*,
945 F. Supp. 3 (D.D.C. 1996) ...........................................................................................22

*FDIC v. Meyer*,
510 U.S. 471 (1994)..........................................................................................................10

*Haltiwanger v. Unisys Corp.*,
949 F. Supp. 898 (D.D.C. 1996) .......................................................................................22

*Humane Soc'y v. Vilsack*,
797 F.3d 4 (D.C. Cir. 2015) ..............................................................................................7

*In re Easysaver Rewards Litig.*,
737 F. Supp. 2d 1159 (S.D. Cal. 2010)..............................................................................18

*In re Fort Totten Metrorail Cases*,
895 F. Supp. 2d 48 (D.D.C. 2012) ....................................................................................21

*In re G-Fees Antitrust Litig.*,
584 F. Supp. 2d 26 (D.D.C. 2008) ....................................................................................18

iii

*In re KBR, Inc. Burn Pit Litig.*,
    744 F.3d 326 (4th Cir. 2014) ......................................................................20 21

*In re World Trade Ctr. Disaster Site Litig.*,
    521 F.3d 169 (2d Cir. 2008).........................................................................21

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ..............................................................2, 7, 16

*Kickapoo Tribe of Indians v. Babbitt*,
    43 F.3d 1491 (D.C. Cir. 1995)................................................................10, 11

*Mangold v. Analytic Servs., Inc.*,
    77 F.3d 1442 (4th Cir. 1996) ......................................................................19

*McMahon v. Presidential Airways, Inc.*,
    502 F.3d 1331 (11th Cir. 2007) ...................................................................21

*\*Mickelson v. County of Ramsey*,
    No. 13-cv-2911, 2014 WL 4232284 (D. Minn. Aug. 26, 2014), *aff'd*, 823
    F.3d 918 (8th Cir. 2016), *and cert. denied*, 2017 WL 1366808 (Apr. 17,
    2017)......................................................................................................15, 16

*Murray v. Northrop Grumman Info. Tech., Inc.*,
    444 F.3d 169 (2d Cir. 2006).........................................................................22

*Pinkett v. First Citizens Bank*,
    No. 09-cv-2365, 2010 WL 1910520 (N.D. Ill. May 10, 2010).........................18

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008)................................................................................10, 11

*Settles v. United States Parole Comm'n*,
    429 F.3d 1098 (D.C. Cir. 2005) ....................................................................10

*Smith v. International SOS Assistance Inc.*,
    No. 11-cv-3125, 2013 WL 6474150 (E.D. Pa. Dec. 6, 2013)..........................19

*Two Shields v. Wilkinson*,
    790 F.3d 791 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 695 (2015) ........................ 10-11, 12

*United States v. Citizens & S. Nat'l Bank*,
    889 F.2d 1067 (Fed. Cir. 1989)...................................................................2, 20

*\*Yearsley v. W.A. Ross Constr. Co.*,
    309 U.S. 18 (1940)............................................................................19, 20, 21

iv

## STATUTES, RULES, AND REGULATIONS

12 C.F.R. § 7.4002(b)(2) ................................................................................................14

12 C.F.R. pt. 205 ...................................................................................................... 3, 18

National Bank Act, 12 U.S.C. § 90 ...................................................................... 2, 14, 21

31 U.S.C. § 3332(f)(1) .....................................................................................................2

31 U.S.C. § 3336(a)(1) .....................................................................................................3

D.C. Code Ann. § 11-101 ...............................................................................................10

D.C. Code Ann. § 15-718 ...............................................................................................15

D.C. Code Ann. § 28-3904 .............................................................................................16

D.C. Consumer Protection Procedures Act .....................................................................16

Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.* ................................................18

Electronic Fund Transfers, 62 Fed. Reg. 3242-01 (proposed Jan. 22, 1997)
      (codified at 12 C.F.R. pt. 205) .................................................................................3

Fed. R. Civ. P. 12 ........................................................................................................ 7, 8

Fed. R. Civ. P. 19 .......................................................................................... 7, 8, 9, 10, 11, 12

U.S. Const. Art. III .........................................................................................................17

## PRELIMINARY STATEMENT

Plaintiffs improperly seek to recover from Defendant JPMorgan Chase & Co. based on alleged injuries arising from a debit card program directed by the United States government. Under a 2008 agreement with the U.S. Treasury Department ("Treasury"), Defendant's subsidiary JPMorgan Chase Bank, N.A. ("JPMCB") is obligated to act as a "financial agent" for the government by operating debit card programs for federal agencies.  Here, the government directed JPMCB to operate a card program used by the District of Columbia Courts ("D.C. Courts") to provide per diem payments and travel expenses to jurors.  JPMCB complied, observing specific requirements of its contract in relation to, *e.g.*, card features and fees to be charged to cardholders.

Plaintiffs, each of whom claims he served on a D.C. jury and received funds for his jury service on a debit card, attempt to recover from JPMCB on three theories:  (1) they were "forced" to receive funds on debit cards; (2) the fees associated with the cards were too high, blocking access to their funds; and (3) the disclosures provided with the cards were deceptive.  But the Complaint itself undermines each theory.  There is no plausible allegation that JPMCB, rather than the government, compelled Plaintiffs to do anything.  The government, not JPMCB, decided to provide funds to D.C. jurors via debit card.  The government authorized the fees charged—which, in any event, Plaintiffs had the means to avoid.  And Plaintiffs do not claim to have incurred any fee that was not first disclosed on the government-approved fee schedule they admit all jurors received.

Against this backdrop, three grounds exist to dismiss the Complaint.  First, Treasury and the D.C. Courts—whose debit card program, according to Plaintiffs, is an unlawful "scheme"—are required parties and immune from suit.  Second, Plaintiffs fail to state a claim.  Third, Plaintiffs' claims are barred by the rule of derivative sovereign immunity and the government

contractor defense. Put simply, Plaintiffs cannot sue JPMCB for actions that its agreement with the government directed it to take. The Complaint should be dismissed.

## BACKGROUND

### A. The U.S. Debit Card Program

The National Bank Act authorizes the Treasury Department ("Treasury") to enter into agreements under which banks act as "financial agents" of the United States. 12 U.S.C. § 90. This provision reflects Congress's judgment that "it is more efficient for Treasury to act through national banks … than it is for the federal government alone to develop and maintain a banking system." *United States v. Citizens & S. Nat'l Bank*, 889 F.2d 1067, 1069 (Fed. Cir. 1989).

In September 2008, having determined that it was "in the interest of the United States" to designate JPMCB as a financial agent, Treasury entered into a Financial Agency Agreement with JPMCB. Declaration of Noah Levine, May 3, 2017 ("Levine Decl.") Ex. 1 ("FAA").[1] The FAA requires JPMCB to operate the U.S. Debit Card program, under which it "provide[s] debit card services to cardholders within and outside of the United States as necessary to facilitate the use of debit cards by Federal agencies and cardholders anywhere in the world." FAA ¶ 3(C).

The FAA emphasizes that the U.S. Debit Card program is "vital to the Federal government." FAA ¶ 2(B)(i). Its implementation is consistent with the command of Congress that, subject to exceptions not applicable here, "all Federal payments made after January 1, 1999, shall be made by electronic funds transfer." 31 U.S.C. § 3332(f)(1).

---

[1]     The Court may consider the FAA and other documents establishing the allegedly "deceptive and unlawful arrangement" under which Plaintiffs' debit cards were issued, *i.e.*, the U.S. Debit Card program, *see* ECF No. 14-2 ("Compl.") ¶ 6, because those documents are integral to the Complaint, *see Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *16th & K Hotel, LP v. Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12-13 (D.D.C. 2011).

Under the program, federal agencies can avoid the cost of issuing checks while providing cardholders with secure, convenient access to funds.  *See* 31 U.S.C. § 3336(a)(1) (finding that "[e]lectronic benefit transfer … is a safe, reliable, and economical way to provide benefit payments to individuals who do not have an account at a financial institution"); Electronic Fund Transfers, 62 Fed. Reg. 3242-01, 3242 (proposed Jan. 22, 1997) (codified at 12 C.F.R. pt. 205) (electronic transfer provides "faster access to benefits, greater convenience in terms of times and locations for obtaining benefits, improved security because funds may be accessed as needed, lower costs because recipients avoid check-cashing fees, and greater privacy and dignity").

When a federal agency decides to participate in the U.S. Debit Card program, Treasury and the agency execute an interagency memorandum formalizing that determination.  Treasury, in turn, then issues a "Direction to Agent" ("DTA") directing JPMCB, its Financial Agent, to provide the federal agency with debit card services.  *See* FAA Ex. A ¶ 4(b).  Pursuant to this process, in April 2012, Treasury issued a DTA obligating JPMCB to "provide U.S. Debit Card program products and services to the DC Courts."  *See* Levine Decl. Ex. 2 (DTA) ¶ 2.

Together, the FAA and the DTA imposed highly specific requirements concerning nearly every detail of the debit card program operated by JPMCB for the D.C. Courts, including processing services, card stock, and card features and attributes.  *See* FAA Ex. A ¶¶ 5-7; DTA ¶ 4.  The FAA provided a detailed fee schedule, *see* FAA Ex. C, which was the subject of an amendment in August 2011, *see* FAA Amendment 3.  The FAA also described Treasury's "sole discretion [to] modify, add to, or reduce the specific services required under the general scope of this FAA."  FAA ¶ 3(D).

Upon completing jury service in the D.C. Courts, a juror receives a debit card issued under the U.S. Debit Card program.  *See* Compl. ¶ 35 at 12.[2]  The documentation provided with the card includes (1) a "card carrier," *i.e.*, a sheet of paper that attaches the card itself and provides important information about card features and attributes, including a fee schedule; (2) a list of "Frequently Asked Questions" ("FAQs"); and (3) a set of terms and conditions.  *See id.* ¶¶ 73, 95; Levine Decl. Exs. 3 (card carrier), 4 (FAQs), 5 (terms and conditions).  All cardholder materials, including the card carrier with its incorporated fee schedule, are "[s]ubject to the approval of [Treasury.]"  FAA Ex. A ¶ 13(c).

Along with a schedule of all of the fees a cardholder could incur, the documents accompanying the debit card provide guidance concerning its use.  They describe numerous options for avoiding fees, including by making withdrawals at Chase and other free ATMs, paying for purchases at the point of sale, requesting cash back, making "split transactions" in which part of a purchase is paid for with the card and the remainder with another form of payment (such as cash or another card), and using the JPMCB website to obtain account information.  *See* Levine Decl. Exs. 3-5.  These options are summarized in the card carrier under the heading "How to Access, Manage Your Money, and Minimize Fees" and in the terms and conditions under "Using Your Card" / "Purchases."  *See* Levine Decl. Exs. 3, 5.[3]

### B.      Plaintiffs' Allegations

Plaintiff Scott claims he received a U.S. Debit Card in July 2016.  Compl. ¶ 19.  Scott alleges that, after using the debit card "for several small purchases," he incurred a total of $3.50

---

[2]      The Complaint contains two sets of paragraphs 27 through 35.  *See* Compl. at 7-9, 9-12. Citations in this memorandum refer to the numbers as they appear in the Complaint.  Where required for clarity, this memorandum also refers to page numbers.

[3]      Although Plaintiffs' Complaint reproduces the card carrier, it misleadingly cuts off the bottom of the page, omitting the "How To" section.  *See* Compl. ¶ 73.

in fees (two $0.25 charges for declined transactions and two $1.50 inactivity fees).  *Id.* ¶¶ 20,

107.  He contends that funds totaling $13 are now "trapped" on his card.  *Id.* ¶¶ 21, 83, 105-111.

Plaintiff Morin claims that he received a U.S. Debit Card in January 2017 and that the

card now has an unspecified "small balance that [he] is unable to withdraw from an ATM or

over-the-counter without incurring cost prohibitive fees."  *Id.* ¶ 25.  Morin does not claim to have

incurred any fees in connection with his card.

Neither Plaintiff alleges that he is unable to access his card balance online or by

telephone, that he is unable to use his card at innumerable points of sale, or that he is unable to

use his card in a cash-back or split transaction, as the cardholder documents advise.  Having

failed to allege anything about any alleged inability to access their funds by one of these methods

specifically provided for and identified in the disclosure materials they received, Plaintiffs also

include no explanation for why or how any funds are in any way "trapped" on their cards.

Against this factual backdrop, the Complaint advances three basic theories of liability:

(1) Plaintiffs were unlawfully compelled to accept their per diem payments and travel expenses

on a prepaid debit card; (2) the fees associated with the debit card are "excessive and

unconscionable," creating "barriers to access" and denying Plaintiffs full use of the funds; and

(3) the fees were "deceptively describe[d]" and not "adequately disclose[d]."  Compl. ¶ 103.  All

three theories are fatally flawed.

Compulsion/Lack of Consent.  Plaintiffs contend that jurors "have no choice whatsoever

as to how to receive their funds."  Compl. ¶ 8.  Plaintiffs do not, however, allege other than in

conclusory fashion that JPMCB (as opposed to the federal government) compelled them to

receive their money on debit cards, rather than by check or cash.  Nor do Plaintiffs allege that the

D.C. Courts lacked authority to determine how to disburse funds to jurors.  Instead, the

5

Complaint asserts vaguely that JPMCB "convinced" the D.C. Courts to participate in the U.S. Debit Card program, while acknowledging that it is the government (not JPMCB) that allegedly fails to "provide any other options for jurors to access their funds."  *Id.* ¶¶ 6, 38, 41.

Fees/Barriers to Access.  Plaintiffs contend that JPMCB has impeded access to their funds by charging excessive fees.  More specifically, they assert that "Chase has intentionally designed the Debit Card system such that the fees it charges prevent jurors from actually being able to access the funds."  Compl. ¶¶ 18, 58, 81.[4]  Neither Plaintiff actually claims to have paid most of the fees complained of as excessive (ATM fees and surcharges, over-the-counter fees withdrawal fees, check issuance fees, balance inquiry fees), and Morin does not claim to have paid any fees at all.  Plaintiffs suggest that it is difficult to find a "partner ATM in the Chase network" in the District of Columbia, *id.* ¶ 60, but neither Plaintiff claims he tried and/or was unable to do so.  And although Plaintiffs contend they will "forfeit" small balances due to fees and the inherent limitations of ATM machines, *id.* ¶ 81, neither Plaintiff contends he tried and was unable to use all of his funds at the point of sale by making a purchase in the amount of the balance, by making a purchase and requesting cash back, or by executing a split transaction.

Deception/Inadequate Disclosure.  Finally, Plaintiffs contend that "to make matters worse," the disclosures provided to cardholders are deceptive, in particular by failing to provide accurate information concerning fees.  Compl. ¶ 94.  However, neither Plaintiff claims to have paid a fee that was inconsistent in any respect with the fee schedule Plaintiffs admit was provided to jurors.  *Id.* ¶ 73.  Instead, Plaintiffs allege principally that one of the disclosures they

---

[4]    Plaintiffs also contend that JPMCB bars access to cardholder funds by requiring activation of cards via a toll-free call or visit to a website that is not "user friendly."  Compl. ¶¶ 42-50.  However, Plaintiffs do not contend that they experienced any difficulty using the website, or even that they used it at all.

received (the FAQs) did not recite the fees—even as they acknowledge that another disclosure

(the fee schedule) did so.  *See id.* ¶¶ 95-97.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To

be plausible, "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Well-pled factual allegations are

taken as true, but that "tenet … is inapplicable to legal conclusions," and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory statements" do not state a

plausible claim for relief.  *Iqbal*, 556 U.S. at 678.  "Determining a claim's plausibility is 'a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'"  *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015) (quoting *Iqbal*, 556

U.S. at 679).  Documents integral to or incorporated by reference into the Complaint may be

considered on a Rule 12(b)(6) motion.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

In considering a motion to dismiss for failure to join an indispensable party under Federal Rule

of Civil Procedure 12(b)(7), a court similarly must assume well-pled factual allegations to be

true, but may also consider materials outside the pleadings.  *16th & K Hotel, LP v.

Commonwealth Land Title Ins. Co.*, 276 F.R.D. 8, 12-13 (D.D.C. 2011).

## ARGUMENT

Plaintiffs' attempt to hold JPMCB liable for alleged shortcomings of the U.S. Debit Card

program fails, and their claims should be dismissed, for several reasons.  *First*, dismissal is

warranted under Federal Rule of Civil Procedure 19 because the Complaint fails to join Treasury

and the D.C. Courts, the federal agencies that are responsible for the U.S. Debit Card program

and directed its use to provide funds to D.C. jurors.  Proceeding with this litigation in the absence

of those agencies—neither of which can be joined, because of sovereign immunity—would prejudice the government's interests and JPMCB's interests, and thus violate Rule 19. *Second*, Plaintiffs fail in numerous respects to state a claim, including because they seek to hold JPMCB liable for actions that the federal government, not JPMCB, undertook. *Third*, and finally, Plaintiffs' claims are barred by the government contractor defense and the doctrine of derivative sovereign immunity, each of which bars Plaintiffs from seeking to hold JPMCB liable for actions it was authorized and directed to take under its binding agreement with the government.[5]

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO JOIN TREASURY AND THE D.C. COURTS AS INDISPENSABLE PARTIES

Under Fed. R. Civ. P. 19, a plaintiff must join all "required" parties that can be feasibly joined. A party is "required" if (as relevant here) it claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may … as a practical matter impair or impede the person's ability to protect the interest; or … leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1)(B). If joinder of a required party is not feasible, the court must determine whether that party is "indispensable," *i.e.*, whether, "in equity and good conscience," and considering factors set forth in the Rule, the action may proceed in that party's absence or must be dismissed. Fed. R. Civ. P. 19(b); *see also* Fed. R. Civ. P. 12(b)(7). Application of the test here demonstrates that, at a minimum, Treasury and the D.C.

---

[5]   Plaintiffs' claims against JPMorgan Chase & Co. should be dismissed for the additional reason that JPMorgan Chase & Co. is a holding company and took none of the actions alleged in the Complaint. As reflected in the Complaint and in the exhibits to the Levine Declaration, it is JPMCB, the national bank operating as a subsidiary of JPMorgan Chase & Co., that entered into the FAA with Treasury and issues debit cards pursuant to the U.S. Debit Card program. *See* Levine Decl. Exs. 1 (FAA between Treasury and JPMCB), 2 (DTA to JPMCB), 5 (terms and conditions noting debit card issued by JPMCB). No non-conclusory allegation of the Complaint pleads that JPMorgan Chase & Co. did anything at issue here.

Courts should be joined in this litigation.  If that is not possible (and it almost certainly is not), the case should be dismissed.

*First*, Treasury and the D.C. Courts are required parties.  Those federal agencies (not JPMCB) decided to disburse juror funds via the U.S. Debit Card program and set forth the features of the program in specific detail in the FAA and the DTA.  Having made a policy determination about how to provide jurors funds for their service, and having then elected to operate the debit card program on specific terms, the agencies have "an interest relating to the subject of the action."  Fed. R. Civ. P. 19(a)(1)(B).  Any determination by this Court that the government was somehow legally prohibited from paying jurors by debit card (rather than check or cash), or indeed that any specific feature of the U.S. Debit Card program challenged by Plaintiffs is unlawful, would "impair or impede" the agencies' "ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).  Because proceeding in the agencies' absence would "deprive … [them] of the right to defend the integrity of … [those] decisions in these areas which so intimately affect … [their] policies and procedures," *Boles v. Greeneville Housing Auth.*, 468 F.2d 476, 479 (6th Cir. 1972), they are "required" parties under Rule 19(a)(1)(B)(i).  The federal agencies also are "required" because permitting this action to go forward in their absence would expose JPMCB "to a substantial risk of incurring … inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B)(ii).  Specifically, Plaintiffs seek through this action to impose obligations on JPMCB that are inconsistent with JPMCB's agreement with Treasury—an untenable position.  *See Bridges v. Blue Cross & Blue Shield Ass'n*, 889 F. Supp. 502, 503 (D.D.C. 1995) (Rule 19 required joinder of federal agency where non-joinder would create "substantial risk" of inconsistent obligations).

*Second*, joinder of Treasury and the D.C. Courts is not "feasible" because each is a federal instrumentality and, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *see* D.C. Code Ann. § 11-101 (noting D.C. Courts were established by Congress pursuant to U.S. Constitution Article I). "A waiver of the United States's sovereign immunity must be unequivocally expressed in statutory text, … and will not be implied." *Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005) (citation omitted). The scope of a sovereign immunity waiver is to be "strictly construed … in favor of the sovereign." *Department of the Army v. Blue Fox*, 525 U.S. 255, 261 (1999) (internal quotation marks omitted). JPMCB is not aware of, and nothing in the Complaint suggests, any waiver by Treasury or the D.C. Courts of their sovereign immunity or any indication that they have consented to be sued on the claims asserted here. Accordingly, neither may be joined.

*Third*, Treasury and the D.C. Courts are "indispensable" parties under Rule 19(b). While the Rule includes a list of factors the Court may consider in determining whether an absent party is indispensable, the interest in protecting the sovereign immunity of the federal government is itself sufficient to warrant dismissal. *See Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995) ("While Rule 19(b) sets forth four non-exclusive factors for the court to consider … there is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests compelling by themselves." (internal quotation marks omitted)). Thus, a "case may not proceed when a required-entity sovereign is not amenable to suit." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008); *see also Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015) (stating that "action must be dismissed if the claims of sovereign

immunity are not frivolous and 'there is a potential for injury to the interests of the absent sovereign'" (quoting *Pimentel*, 553 U.S. at 867)), *cert. denied*, 136 S. Ct. 695 (2015).  That is the circumstance here.

The four Rule 19(b) factors, while not pertinent under *Pimentel*, only provide further support for the indispensability of Treasury and the D.C. Courts.  First, proceeding in the agencies' absence has the potential to prejudice them because, as set forth above, Plaintiffs seek a ruling that the agencies' determination to pay juror funds by debit card and the terms of the program they directed JPMCB to implement are unlawful.  *See* Fed. R. Civ. P. 19(b)(1).  Second, there are no protective measures that would reduce the risk of prejudice if the action is not dismissed.  *See* Fed. R. Civ. P. 19(b)(2).  Third, the public interest "in settling disputes by wholes, whenever possible," *Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank of Wash.*, 699 F.2d 1274, 1280 (D.C. Cir. 1983), supports dismissal.  It is not clear that there is any resolution this Court could achieve in the federal government's absence.  *See* Fed. R. Civ. P. 19(b)(3).  Finally, to the extent Plaintiffs argue that dismissal will deprive them of a remedy, *see* Fed. R. Civ. P. 19(b)(4), even assuming that is true, "absence of an alternative remedy alone does not dictate retention of jurisdiction under Rule 19." *Kickapoo Tribe*, 43 F.3d at 1499.  That is certainly the case where the reason for any unavailability of a remedy is the federal government's sovereign immunity.

The circumstances here present an even stronger case for dismissal on Rule 19 grounds than in *Boles*, which found that a federal agency was "indispensable."  In *Boles*, the plaintiffs challenged an urban planning process approved by the U.S. Department of Housing and Urban Development ("HUD").  *See* 468 F.2d at 477-79.  The Sixth Circuit found that challenge not materially distinguishable from a challenge to HUD's decision itself:  "[W]hen appellants attack

the Plan, they indirectly attack HUD's administrative decision approving the Plan." *Id.* at 479.

Here, Treasury and the D.C. Courts decided to pay juror funds by debit card, and then directed

the specific contours of the program that Plaintiffs challenge.  Nor is Plaintiffs' challenge to the

U.S. Debit Card program "indirect."  In the very first paragraph of their Complaint, Plaintiffs

claim that the program itself is a "deceptive and unlawful scheme."  Compl. ¶ 1.  In *Boles*, the

Sixth Circuit was "most hesitant to set the precedent of allowing the policies and practices of …

any … federal agency to be overhauled by the judiciary without at least affording the agency the

opportunity to be heard in support of its present operation."  468 F.2d at 479.  The court

accordingly held that the suit there could not proceed in the absence of HUD, the federal agency

at issue.  The same result should obtain here for the same reasons.  *See, e.g.*, *Two Shields*, 790

F.3d at 796 (affirming dismissal under Rule 19 with observation that "the government's liability

cannot be tried behind its back").

## III.   THE COMPLAINT FAILS TO STATE A CLAIM

Plaintiffs also fail to state a valid claim for relief.  Their failure stems largely from their

attempt to hold JPMCB liable for decisions and actions that the federal government, not JPMCB,

took.  The claims fail due to numerous other deficiencies too, as set forth below.

### A.   Plaintiffs Fail to State a Claim for Unjust Enrichment

A claim for unjust enrichment lies where "a plaintiff confers a benefit on the defendant,

the defendant retains the benefit, and under the circumstances, the defendant's retention of the

benefit is unjust."  *Chambers v. NASA Fed. Credit Union*, No. 15-cv-2013, 2016 WL 6155930, at

*8 (D.D.C. Oct. 21, 2016).  The gravamen of Plaintiffs' unjust enrichment claim is that they

were charged fees "in an unfair, unconscionable, and oppressive manner."  Compl. ¶ 121.  Even

assuming that any fees paid by Scott (but not Morin, who does not claim to have paid any fees

and therefore cannot state an unjust enrichment claim) constitute a benefit retained by JPMCB,

none of Plaintiffs' three theories of liability supports a plausible allegation that it would be "unjust" for JPMCB to retain such fees.

Most fundamentally, there can be no unjust enrichment claim *against JPMCB* on the theory Plaintiffs were "forced" receive their funds on debit cards.  Compl. ¶ 115.  That is because it was Treasury and the D.C. Courts, not JPMCB, that decided to disburse juror funds via debit card.  *See id.* ¶ 38 ("D.C. does not provide any other options for jurors to access their funds."); FAA ¶ 3(A) ("The Financial Agent shall provide the debit card services described in Exhibit A of this FAA."), DTA ¶ 2 ("Direction to Agent No. 34 directs JPMorgan Chase Bank, N.A. (Financial Agent) to provide U.S. Debit Card program products and services to the DC Courts."). JPMCB would be powerless to make any such disbursement decision, as the juror funds are paid by the government, not by JPMCB.

Nor is there any support for Plaintiffs' contention that JPMCB "forced" them to pay fees. Not only were all of the fees specifically directed by the federal government in the FAA and DTA but, just as importantly, Plaintiffs did not need to pay any fees (and indeed, Morin does not claim to have paid any).  The fee schedule Plaintiffs acknowledge was provided to jurors offered Plaintiffs numerous options for avoiding fees, including by withdrawing funds at JPMCB or partner network ATMs or using the card to pay for purchases or receive cash back at the point of sale—such that, to the extent Plaintiffs chose otherwise, they consented to be charged.  *See Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 443 (D. Minn. 2012).

Plaintiffs cannot ground their unjust enrichment claim on the contention that any fees they paid were "unfair" or "unconscionable."  Compl. ¶ 121.  First, the government specified the fees in the FAA and DTA; any claim concerning their fairness should be directed to the government.  Second, Plaintiffs cannot complain that a fee was unfair or unconscionable when

they had the option to avoid those fees altogether, and indeed JPMC advised them just how to do so in the disclosure materials.  (As noted, Morin does not allege he paid any such fee.)  Third, even if JPMCB, rather than the government, had directed the fee amounts, any challenge to that judgment would be preempted by the National Bank Act, whose implementing regulations authorize national banks to determine "non-interest charges and fees, their amounts, and the method of calculating them."  12 C.F.R. § 7.4002(b)(2).  If application of state law would limit a national bank's ability to determine and charge fees such that it "is in substantial conflict with federal authorization to charge such fees" (as would be the case here, assuming JPMCB set the fees itself), then preemption applies.  *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 (11th Cir. 2011).

Plaintiffs similarly cannot ground their unjust enrichment claim on the contention that the disclosures they received were "deceptive."  Again, the disclosures were all subject to federal government approval.  And in any event, Plaintiffs' allegations do not plausibly suggest they were deceived.  Plaintiffs complain that one document (the cardholder FAQs) failed to disclose fees applicable to teller withdrawals, out-of-network ATM withdrawals, and balance inquiries, *see* Compl. ¶¶ 95-99, but Plaintiffs do not allege they incurred *any* of those types of fees and *all* of them were disclosed in the fee schedule that Plaintiffs admit jurors received, *see id.* ¶ 73. And, while Plaintiffs contend that the fee schedule is deceptive (because it states that jurors can avoid fees at in-network ATMs and that no fee is charged when a cardholder pays at the point of sale), Plaintiffs notably do not (and cannot) claim that these statements are *inaccurate*.  Indeed, they cannot even explain how they are deceptive; rather, Plaintiffs contend only that in-network ATMs are hard to find and that a cardholder could incur a fee if he chooses not to check his card

balance and then attempts a purchase that exceeds his available funds.  At best, those are claims of inconvenience, not deception.

Finally, the Complaint and documents integral to the Complaint demonstrate that any fees Plaintiffs paid were charged pursuant to a lawful agreement between the federal government and JPMCB—conclusively rebutting the assertion of the Complaint that "no lawful authority" exists to support such fees, as well as any argument that JPMCB somehow violated D.C. Code Ann. § 15-718 establishing minimum juror fees.  *See* Compl. ¶¶ 52-53.  The facts alleged by Plaintiffs are similar to those in *Mickelson v. County of Ramsey*, No. 13-cv-2911, 2014 WL 4232284 (D. Minn. Aug. 26, 2014), *aff'd*, 823 F.3d 918 (8th Cir. 2016), *and cert. denied*, 2017 WL 1366808 (Apr. 17, 2017), which dismissed an unjust enrichment claim based on fees associated with debit cards issued to released prison inmates, explaining:  "Pursuant to the [issuer's] agreement with [the government], the assessment of debit card fees … was legally authorized. … Defendants were not 'unjustly enriched' by the imposition of these fees and the equitable remedy of unjust enrichment is unavailing to Plaintiffs."  *Id.* at *15.  The outcome here should be the same.

### B.      Plaintiffs Fail to State a Claim for Conversion

To state a claim for conversion, a plaintiff must plausibly allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto."  *Campbell v. National Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 258 (D.D.C. 2015).  Plaintiffs' conversion claim here, grounded in their conclusory contention that their funds have been retained on debit cards "unlawfully and without … consent," Compl. ¶ 128, falls short of the bar.

The FAA and DTA make clear that the government's placement of Plaintiffs' funds on debit cards for their use was not "unlawful," as required for a conversion claim.  The funds were

placed on debit cards at the direction of Treasury in accord with the program requirements

concerning features and fees.  *See* FAA ¶ 3(A); DTA ¶ 2.  Again, *Mickelson* counsels dismissal.

*See* 2014 WL 4232284, at *14 ("The assessment of the debit card fees arises out of a valid,

lawful agreement between [defendants]. … Accordingly, because the imposition of … the debit

card fees was lawfully justified, Plaintiffs' claim for conversion fails." (citation omitted)); *see*

*also, e.g.*, *Cadet v. Draper & Goldberg, PLLC*, No. 05-cv-2105, 2007 WL 2893418, at *13

(D.D.C. Sept. 28, 2007) (dismissing conversion claim where defendant's retention of deposit was

pursuant to a contractual right and "not, therefore, 'unlawful'").

In addition, the government's placement of Plaintiffs' funds on prepaid debit cards, for

Plaintiffs' use, does not constitute the exercise by JPMCB of "ownership, dominion, or control"

over those funds.  Rather, having been loaded to prepaid debit cards that were issued to

Plaintiffs, the funds were placed in Plaintiffs' possession and control, available to be spent at

Plaintiffs' discretion.  Indeed, the funds remain in Plaintiffs' possession today.  Plaintiffs cannot

sue to recover funds they already possess.  *See Kaempe*, 367 F.3d at 964 ("Where there has been

no dispossession of property rights, there can be no action for conversion.").

## C.      Plaintiffs Fail to State a Claim Under the Consumer Protection Procedures Act

Plaintiffs' claim under the D.C. Consumer Protection Procedures Act ("CPPA") sounds

in deception.[6]  To prevail on such a claim, Plaintiffs must plausibly allege a statement or

---

[6]      Plaintiffs invoke seven distinct provisions of the CPPA.  *See* Compl. ¶ 142 (citing D.C. Code Ann. § 28-3904(a), (e) (e-1), (f), (f-1), (r), (u)).  Of those seven provisions, all but one— Section 28-3904(r)—concern misrepresentations and omissions.  The lone exception, Section 28-3904(r), which makes it unlawful to "make or enforce unconscionable terms or provisions of sales or leases," is plainly inapplicable to Plaintiffs' claims because it "creates a cause of action for making or enforcing 'unconscionable terms or provisions' *of an agreement*," *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 177 (D.D.C. 2013) (emphasis added), and Plaintiffs have

omission that would "tend to mislead." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1176 (D.C. Cir. 2003).  Plaintiffs have not come close to doing so.

As noted, Plaintiffs allege that the FAQs do not disclose the fees cardholders might incur, *see* Compl. ¶¶ 95-99—but it is undisputed that the fee schedule, which accompanied the FAQs, *did* provide such a disclosure.  Although Plaintiffs complain that "[e]ven the fee schedule itself is deceptive," *id.* ¶ 100, they do not actually identify any inaccuracy in the schedule.  Plaintiffs also contend that "Chase misrepresented its authority to charge … fees," *id.* ¶ 145, but JPMCB's agreements with Treasury and the D.C. Courts, which include a schedule of fees, plainly confer such authority.  Finally, Plaintiffs contend that providing the sum of $4 via debit card is "inherently deceptive" because it is "virtually impossible for a juror to use that $4." *Id.* ¶ 148. But even if either Plaintiff claimed to have been the subject of such a $4 transaction—neither does—the card carrier, fee schedule, and terms and conditions make clear that a debit card containing $4 may be used to pay for a purchase at the point of sale without paying a fee, including, if necessary, by means of a cash-back or split transaction.  *See Chambers*, 2016 WL 6155930, at *8 (dismissing CPPA claim where agreements disclosed fees).

### D.      Plaintiffs Fail to State a Claim Under "Consumer Protection Laws of 49 States"

Plaintiffs' attempt to plead violations of the consumer protection acts of 49 states, *i.e.* all 50 states "except for the state of Iowa," Compl. ¶ 156, fails.  The Complaint recites no facts at all concerning any debit card program other than the one operated by JPMCB for the D.C. Courts. Nor is this merely a failure of pleading:  Plaintiffs' alleged injuries as a result of being issued a prepaid debit card in D.C. are insufficient to confer upon them Article III standing to pursue a

---

disclaimed the existence of any contract governing their prepaid debit cards, *see* Compl. ¶ 9 ("Jurors do not enter into a contractual relationship for receipt of the Debit Card.").

claim under any other state's consumer protection law.  *See In re G-Fees Antitrust Litig.*, 584 F.

Supp. 2d 26, 36 (D.D.C. 2008) (dismissing for lack of standing where "the allegations do not

support an inference that any of the named plaintiffs have been personally injured such as to

provide them with the causes of action asserted … under the laws of" states where they did not

claim their injuries occurred).  Dismissal should be the result.

> ### E.      Plaintiffs Fail to State a Claim Under Regulation E

Finally, Plaintiffs contend that JPMCB violated the Electronic Fund Transfer Act, 15

U.S.C. § 1693 *et seq.* ("EFTA") and Regulation E, 12 C.F.R. pt. 205.  In a variant of their

"compulsion" theory, the Complaint alleges that JPMCB "requires Plaintiffs and the Classes to

receive electronic fund transfers with a particular institution as a condition of employment or

receipt of a government benefit," Compl. ¶ 175, thus violating the bar on such requirements in

the EFTA and Regulation E.

The claim fails because the Complaint and documents integral to it demonstrate that

*JPMCB* did not require Plaintiffs to receive their juror funds on JPMCB debit cards, nor could

*JPMCB* have done so.  Rather, the *federal government* made that decision, implementing it by

paying jurors through the medium of JPMCB debit cards.  *See* FAA ¶ 3(A); DTA ¶ 2.  And if

Plaintiffs' theory is that the *federal government's* use of the U.S. Debit Card program to disburse

funds to jurors violated Regulation E, numerous courts have held that one party may not be held

liable for a Regulation E violation by another party.  *See In re Easysaver Rewards Litig.*, 737 F.

Supp. 2d 1159, 1181 (S.D. Cal. 2010) (rejecting attempt to hold one defendant liable for aiding

and abetting another defendant's alleged violation of Regulation E); *Pinkett v. First Citizens

Bank*, No. 09-cv-2365, 2010 WL 1910520, at *6 (N.D. Ill. May 10, 2010) ("As First Citizens

points out, it did not extend Pinkett credit, Norwest Capital did, and so it cannot have violated

the EFTA."); *Azose v. Washington Mut. Bank*, 588 F. Supp. 2d 366, 372 (E.D.N.Y. 2008)

(concluding banks were not liable for alleged Regulation E violations by other banks).

## IV.    PLAINTIFFS CANNOT HOLD JPMCB LIABLE FOR ACTIONS THE FEDERAL GOVERNMENT DIRECTED IT TO TAKE

Finally, even to the extent Plaintiffs seek to characterize their claims as somehow based

on alleged actions of JPMCB itself, rather than of the federal government, the claims should be

dismissed because JPMCB cannot be liable based on actions the government directed it to take.

"[G]overnment contractors obtain certain immunity in connection with work which they do

pursuant to their contractual undertakings with the United States." *Campbell-Ewald Co. v.*

*Gomez*, 136 S. Ct. 663, 672 (2016), as revised (Feb. 9, 2016) (quoting *Brady v. Roosevelt S.S.*

*Co.*, 317 U.S. 575, 583 (1943)).  Federal law recognizes "two defenses that contractors may raise

in order to argue that the government's sovereign immunity shields them from tort suit." *Smith*

*v. International SOS Assistance Inc.*, No. 11-cv-3125, 2013 WL 6474150, at *2 (E.D. Pa. Dec. 6,

2013).  These are (1) derivative sovereign immunity and (2) the government contractor defense.

*See id.* (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1998) and *Yearsley v. W.A. Ross*

*Constr. Co.*, 309 U.S. 18 (1940)).  These two related doctrines protect federal contractors or

agents from liability where (as here) the federal government has directed them "to do the very

thing that is the subject of the claim." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 n.6

(2001).  Together, they establish as "well-settled" law that "contractors and common law agents

acting within the scope of their employment for the United States" enjoy a form of "immunity"

from suit. *Butters v. Vance Int'l Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).

The government "cannot perform all necessary and proper services itself and must

therefore contract out some services for performance by the private sector." *Mangold v. Analytic*

*Servs., Inc.*, 77 F.3d 1442, 1448 (4th Cir. 1996).  Here, Congress has manifested that general

principle of decisional law in a specific statute, authorizing Treasury to enlist national banks like

JPMCB to act as financial agents for the government.  *See Citizens & S. Nat'l Bank*, 889 F.2d at

1069.  Derivative sovereign immunity and the government contractor defense ensure that private

suits against the government's agents do not "impede the significant governmental interest in the

completion of its work."  *Butters*, 225 F.3d at 466.  Both defenses apply here, requiring

dismissal.  Though often addressed at the summary judgment stage, both defenses are also

suitable for resolution on a motion to dismiss.  *See Ackerson v. Bean Dredging LLC*, 589 F.3d

196, 203 (5th Cir. 2009) (derivative sovereign immunity); *Bentzlin v. Hughes Aircraft Co.*, 833

F. Supp. 1486, 1489-92 (C.D. Cal. 1993) (government contractor defense).[7]

## A.    Derivative Sovereign Immunity Bars Plaintiffs' Claims

The doctrine of derivative sovereign immunity originated in *Yearsley v. W. A. Ross

Construction Co.*, 309 U.S. 18 (1940), in which the government engaged a private firm to

construct dikes.  A landowner sued the firm for damages caused by work "authorized and

directed by the Government of the United States."  *Id.* at 20.  Reasoning that "[t]he action of the

agent is the 'act of the government,'" the Supreme Court held that the company could not be

liable for performing services on the government's behalf.  *Id.* at 22.  As recognized in *Yearsley*

and its progeny, the doctrine "'protects agents of the sovereign from liability for carrying out the

---

[7]     JPMCB notes that, in a 2016 decision addressing a motion to dismiss a lawsuit
challenging a branch of the U.S. Debit Card program operated by JPMCB for a different federal
agency, a federal district court declined to decide the issues of derivative sovereign immunity
and the government contractor defense at the motion to dismiss stage.  *See* Order at 1 n.1, *Krimes
v. JPMorgan Chase Bank, N.A.*, No. 15-5087 (E.D. Pa. Mar. 4, 2016), ECF No. 22.  However,
the court in that case relied upon the decision of the Fourth Circuit in *In re KBR, Inc. Burn Pit
Litig.*, 744 F.3d 326 (4th Cir. 2014), which declined to dismiss on the pleadings because there
was not enough evidence in the record to determine whether the defendant had complied with the
government's instructions (as required for application of derivative sovereign immunity).  *See id.*
at 345.  The Complaint here does not allege that JPMCB failed in any respect to comply with the
FAA or the DTA.

sovereign's will.'" *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341-42 (4th Cir. 2014); *see also In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 196-97 (2d Cir. 2008); *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1343 (11th Cir. 2007).  It applies whenever the sovereign's agent "was working pursuant to the authorization and direction of the federal government," and "the acts of which the plaintiff complained fell within the scope of those government directives."  *In re Fort Totten Metrorail Cases*, 895 F. Supp. 2d 48, 73 (D.D.C. 2012) (internal quotation marks omitted).  "T]here is no liability on the part of the contractor' who simply performed as the Government directed."  *Campbell-Ewald Co.*, 136 S. Ct. at 672-73 (quoting *Yearsley*, 309 U.S. at 20-21).

Those criteria are met here.  In operating the U.S. Debit Card program, JPMCB acts as Treasury's agent under valid statutory authority.  The National Bank Act permits Treasury to engage banks like JPMCB as its "financial agents" to "perform all such reasonable duties … as may be required of them."  12 U.S.C. § 90.  Implementing the U.S. Debit Card program is a "duty" Treasury has assigned to JPMCB.  *See* FAA at 1 (reciting that the FAA is established "[p]ursuant to 12 U.S.C. § 90" and "[i]n furtherance of [Treasury's] … statutory role in managing the disbursement functions of the Federal government").  The services JPMCB provides and the fees it charges are stipulated in its agreement with the federal government. Plaintiffs' claims conflict with the agreement between JPMCB and Treasury in critical respects, including most importantly that Plaintiffs challenge the program itself (*i.e.*, the government's decision to disburse juror funds by debit card) as well as the fact and amount of the fees. Because JPMCB is "act[ing] pursuant to 'validly conferred' government authority" in providing the debit card services specified in the FAA, *Campbell-Ewald Co.*, 136 S. Ct. at 672-73, and

because JPMCB "simply performed as [Treasury] directed," *id.*, JPMCB is protected by derivative sovereign immunity from Plaintiffs' claims challenging that conduct.

### B.      The Government Contractor Defense Bars Plaintiffs' Claims

Plaintiffs' claims against JPMCB are also barred by the government contractor defense. The government's authority to engage and direct agents implicates "uniquely federal interests" that can preempt contrary state-law obligations. *Boyle*, 487 U.S. at 504 (internal quotation marks omitted).  In *Boyle*, the Supreme Court held that the defense barred product liability claims challenging the design of a helicopter built to federal specifications. *Id.* at 502, 509-12.  Such claims were preempted, the Court held, where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

The federal interests identified in *Boyle* are not unique to military procurement contracts. *See Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir. 1993) (recognizing that a "significant federal interest exists regardless of whether the … contract is military or nonmilitary"); *Fagans v. Unisys Corp.*, 945 F. Supp. 3, 6 n.3 (D.D.C. 1996) (citing *Carley* and noting extension of *Boyle* beyond military context).  Courts thus have applied *Boyle*'s logic generally to suits challenging the conduct of private firms performing services for the federal government. *See Ackerson*, 589 F.3d at 206-07 (contractor not liable for dredging services); *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 175-76 (2d Cir. 2006) (contractor not liable for administering visa program); *Haltiwanger v. Unisys Corp.*, 949 F. Supp. 898, 902 (D.D.C. 1996) (contractor not liable for design of postal equipment).  When a private contractor "is compelled by a contract to perform an obligation for the United States," it "should, in some circumstances, share the sovereign immunity of the United States." *Carley*, 991 F.2d at 1120.

22

Application of the three-prong *Boyle* analysis to the financial agency agreement here demonstrates that the government contractor defense bars all of Plaintiffs' claims. First, the federal government set forth "reasonably precise specifications" governing the U.S. Debit Card program. The FAA and the DTA establish comprehensive and specific requirements concerning the debit cards issued to Plaintiffs and other jurors. Those requirements govern everything from the card stock JPMCB uses to the fees it charges. Second, JPMCB "conformed to those specifications." Plaintiffs do not allege that JPMCB failed to issue and service their debit cards as agreed with Treasury or that it charged them any fee inconsistent with the fee schedule they admit jurors received. Third, to the extent relevant in this context, there is no suggestion in the Complaint that JPMCB failed to disclose to the government any "risks" related to the U.S. Debit Card known to JPMCB but not the government. Indeed, the source of Plaintiffs' supposed injury here—the fees—were authorized by the government itself in the FAA and DTA. The government contractor defense therefore bars this suit.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that Plaintiffs' Complaint be dismissed with prejudice.

Dated:  May 3, 2017

Respectfully submitted,

*/s/ Noah A. Levine*

Noah A. Levine (admitted *pro hac vice*)
Jamie S. Dycus (admitted *pro hac vice*)
Jenny R. A. Pelaez (admitted *pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
noah.levine@wilmerhale.com
jamie.dycus@wilmerhale.com
jenny.pelaez@wilmerhale.com

Jonathan E. Paikin (D.C. Bar No. 466445)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Telephone: (202) 633-6703
Facsimile: (202) 663-6363
jonathan.paikin@wilmerhale.com

*Attorneys for Defendant JPMorgan Chase & Co.*