# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WILLIAM MARK SCOTT and RONALD
MORIN, *individually and on behalf of all
others similarly situated*,

               Plaintiffs,

    v.

JPMORGAN CHASE & CO.,

               Defendant.

Civil Action No. 17-cv-249-APM

## PLAINTIFFS' MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, AND
## PLAINTIFFS' MOTION TO STRIKE OR DISREGARD EXTRANEOUS MATERIALS

ANNA HAAC (SBN 181547)
*ahaac@tzlegal.com*
SOPHIA GOREN (SBN 1044723)
*sgoren@tzlegal.com*
JEFFREY KALIEL (SBN 983578)
*jkaliel@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950

DONALD J. ENRIGHT (SBN 013551)
*denright@zlk.com*
**LEVI & KORSINSKY, LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567

ROSEMARY M. RIVAS (*pro hac vice*)
*rrivas@zlk.com*
QUENTIN A. ROBERTS (*pro hac vice*)
*qroberts@zlk.com*
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94111
Tel: (415) 291-2420
Fax: (415) 484-1294

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................................... iii

I.     Introduction ........................................................................................................................ 1

II.    Factual Background ........................................................................................................... 3

III.   Legal Standard ................................................................................................................... 5

IV.    Argument ............................................................................................................................. 6

       A.     The Court Should Disregard Chase's Extraneous Materials ............................ 6

       B.     Chase Cannot Claim Immunity From Suit Based On the Limited Doctrines of
              Derivative Sovereign Immunity or the Government Contractor Defense ........ 8

              1.   Derivative Sovereign Immunity Does Not Apply ..................................... 11

              2.   The Government Contractor Defense Does Not Apply ............................ 14

       C.     The Complaint Adequately States a Claim for Relief ..................................... 16

              1.   Plaintiffs Adequately State a Claim under the CPPA ............................. 16

              2.   Plaintiffs Adequately State a Claim under the EFTA ............................. 20

              3.   Plaintiffs Adequately State a Claim for Unjust Enrichment ................... 24

              4.   Plaintiffs Adequately State a Claim for Conversion ............................... 27

              5.   Plaintiffs Adequately State a Claim under The Consumer Protection Acts
                   of 49 States ................................................................................................ 29

       D.     The Complaint Should Not Be Dismissed For Failure to Join
              Indispensable Parties ......................................................................................... 29

              1.   Legal Standard ........................................................................................... 30

              2.   D.C. and the Treasury Do Not Have a Legally Cognizable Interest
                   Relating to the Subject of the Action ....................................................... 31

              3.   Even if the Treasury or D.C. Had an Interest in this Action, Their
                   Absence Will Not Impair or Impede Their Ability to Protect That
                   Interest Because Chase Has the Same Interests and Will Thus
                   Adequately Defend Any Such Interest ..................................................... 34

              4.   Chase Will Not Be Exposed to a "Substantial Risk of Incurring Double,
                   Multiple, or Otherwise Inconsistent Obligations" if the Treasury and D.C.
                   are Not Joined ............................................................................................ 34

              5.   Even if D.C. or the Treasury Are Required Parties, Joinder Is Feasible .. 36

              6.   The Interests of Justice Weigh Against Dismissing the Complaint ......... 37

V.     Conclusion ........................................................................................................................ 38

REQUEST FOR ORAL ARGUMENT ...................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

### Cases

*4934, Inc. v. D.C. Dep't of Emp't Servs.*,
   605 A.2d 50 (D.C. 1992) ................................................................................. 25

*Amons v. D.C.*,
   231 F. Supp. 2d 109 (D.D.C. 2002) ................................................................. 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 6

*Austin v. Unarco Indus., Inc.*,
   705 F.2d 1 (1st Cir. 1983) ............................................................................... 33

*Azose v. Wash. Mut. Bank*,
   588 F. Supp. 2d 366 (E.D.N.Y. 2008) ............................................................ 24

*Baldanzi v. WFC Holdings Corp.*,
   No. 07 Civ. 9551 (LTS)(GWG), 2008 WL 4924987 (S.D.N.Y. Nov. 14, 2008) .... 27

*Baptista v. JPMorgan Chase Bank, N.A.*,
   640 F.3d 1194 (11th Cir. 2011) ....................................................................... 27

*Boles v. Greeneville Housing Auth.*,
   468 F.2d 476 (6th Cir. 1972) ........................................................................... 33

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988) ............................................................................ 9, 14, 15

*Bridges v. Blue Cross & Blue Shield Ass'n*,
   889 F. Supp. 502 (D.D.C. 1995) ..................................................................... 35

*Brown v. Wells Fargo & Co.*,
   284 F.R.D. 432 (D. Minn. 2012) ..................................................................... 25

*Cadet v. Draper & Goldberg, PLLC*,
   No. 05-cv-2105, 2007 WL 2893418 (D.D.C. Sept. 28, 2007) ........................ 28

*Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   130 F. Supp. 3d 236 (D.D.C. 2015) ............................................................... 26

*Carr v. D.C.*,
   371 F. Supp. 293 (D.D.C. 1974) ..................................................................... 32

*Chambers v. NASA Fed. Credit Union*,
   No. CV 15-2013 (JDB), 2016 WL 6155930 (D.D.C. Oct. 21, 2016) .............. 18

*Charest v. Fed. Nat. Mortg. Ass'n*,
   9 F. Supp. 3d 114 (D. Mass. 2014) ................................................................. 33

*Cipollone v. Liggett Grp., Inc.*,
   505 U.S. 504 (1992) ........................................................................................ 9

*Clemmer v. Key Bank Nat. Ass'n*,
   539 F.3d 349 (6th Cir. 2008) ........................................................................... 22

*Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*,
   699 F.2d 1274 (D.C. Cir. 1983) .......................................................................................... 38

*Coal. on Sensible Transp., Inc. v. Dole*,
   631 F. Supp. 1382 (D.D.C. 1986) ....................................................................................... 34

*Comm'ns Imp. Exp. S.A. v. Congo*,
   757 F.3d 321 (D.C. Cir. 2014) .............................................................................................. 9

*CSX Transp., Inc. v. McBride*,
   564 U.S. 685 (2011) ............................................................................................................ 23

*Ctr. for Biological Diversity v. Tidwell*,
   No. CV 15-2176 (CKK), 2017 WL 943902 (D.D.C. Mar. 9, 2017) ...................................... 7

*DeBerry v. First Gov't Mortg. & Inv'rs Corp.*,
   743 A.2d 699 (D.C. 1999) .................................................................................................. 17

*Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*,
   878 F. Supp. 2d 13 (D.D.C. 2012) ........................................................................... 30, 31, 33

*Dist. Cablevision Ltd. P'ship v. Bassin*,
   828 A.2d 714 (D.C. 2003) ............................................................................................ 17, 20

*Duncan v. State of La.*,
   391 U.S. 145 (1968) .............................................................................................................. 3

*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................................................ 36

*Fagans v. Unisys Corp.*,
   945 F. Supp. 3 (D.D.C. 1996) ............................................................................................. 14

*FHM Constructors, Inc. v. Vill. of Canton Hous. Auth.*,
   779 F. Supp. 677 (N.D.N.Y. 1992) ................................................................................ 32, 33

*Gen. Motors Corp. v. Abrams*,
   897 F.2d 34 (2d Cir. 1990) .................................................................................................... 9

*Gomez v. Campbell-Ewald Co.*,
   768 F. 3d 871 (9th Cir. 2014) ........................................................................... 11, 12, 13, 15

*Haltiwanger v. Unisys Corp.*,
   949 F. Supp. 898 (D.D.C. 1996) ......................................................................................... 14

*Hanjy v. Arvest Bank*,
   94 F. Supp. 3d 1012 (E.D. Ark. 2015) ................................................................................ 11

*Hercules Inc. v. U.S.*,
   516 U.S. 417 (1996) ............................................................................................................ 15

*Hite v. Leeds Weld Equity Partners, IV, LP*,
   429 F. Supp. 2d 110 (D.D.C. 2006) .................................................................................... 32

*In re Auto. Parts Antitrust Litig.*,
   No. 12–md–02311, 2013 WL 2456013 (E.D. Mich. June 6, 2013) ...................................... 29

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................................... 29

*In re Checking Account Overdraft Litig.*,
   694 F. Supp. 2d 1302 (S.D. Fla. 2010) .............................................................. 27, 28

*In re Easysaver Rewards Litig.*,
   737 F. Supp. 2d 1159 (S.D. Cal. 2010) .................................................................... 23

*In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*,
   895 F. Supp. 2d 48 (D.D.C. 2012) ............................................................................ 12

*In re G-Fees Antitrust Litig.*,
   584 F. Supp. 2d 26 (D.D.C. 2008) ............................................................................ 29

*In re Grand Theft Auto Video Game Consumer Litig.*,
   No. 06 MD 1739(SWK)(MHD), 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006) ...... 29

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ...................................................................... 29

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   900 F. Supp. 2d 8 (D.D.C. 2012) .............................................................................. 35

*In re Pharm. Indus. Avg. Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008) ................................................................................. 29

*In re TD Bank, N.A. Dep't Card Overdraft Fee Litig.*,
   150 F. Supp. 3d 593 (D.S.C. 2015) .......................................................................... 28

*In re Torcise*,
   116 F.3d 860 (11th Cir. 1997) .................................................................................. 35

*Jefferson v. Chase Home Fin.*,
   No. C 06-6510 TEH, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) ....................... 27

*Jepson v. Ticor Title Ins. Co.*,
   No. C06-1723 JCC, 2007 WL 2060856 (W.D. Wash. May 1, 2007) ....................... 29

*Johnson v. McCool*,
   808 F. Supp. 2d 304 (D.D.C. 2011) ......................................................................... 28

*Juergens v. Urban Title Servs., Inc.*,
   246 F.R.D. 4 (D.D.C. 2007) .................................................................................... 6, 7

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) .................................................................................. 28

*Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*,
   43 F.3d 1491 (D.C. Cir. 1995) .................................................................................. 37

*Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*,
   606 F. Supp. 2d 114 (D.D.C. 2009) ......................................................................... 15

*Krimes v. JPMorgan Chase Bank, N.A.*,
   No. 15-5087 (E.D. Pa. Mar. 4, 2016) ....................................................................... 11

*Krupski v. Costa Crociere S. p. A.*,
   560 U.S. 538 (2010) ............................................................................................................ 6

*Kubicki ex rel. Kubicki v. Medtronic*,
   No. 12-00734 (CKK), 2013 WL 1739580 (D.D.C. Mar. 21, 2013) ........................................ 11

*Lawlor v. Nat'l Screen Serv. Corp.*,
   349 U.S. 322 (1955) .......................................................................................................... 33

*Makah Indian Tribe v. Verity*,
   910 F.2d 555 (9th Cir. 1990) ............................................................................................. 30

*Mann v. Bahi*,
   No. CV 16-949 (JDB), 2017 WL 1533473 (D.D.C. Apr. 27, 2017) ........................... 16, 17, 18

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
   471 F.3d 377 (2d Cir. 2006) ......................................................................................... 34, 35

*Mazzanti v. Gen. Elec. Co.*,
   No. 3:13CV1799 (WWE), 2017 WL 923905 (D. Conn. Mar. 7, 2017) ................................... 29

*McMullen v. Synchrony Bank*,
   164 F. Supp. 3d 77 (D.D.C. 2016) ...................................................................................... 17

*Mickelson v. Cnty of Ramsey*,
   No. 13-cv-2911, 2014 WL 4232284 (D. Minn. Aug. 26, 2014) ........................................ 26, 28

*Mikulay Co. v. Urban Mass Transp. Admin.*,
   90 F.R.D. 250 (D.D.C. 1980) ..................................................................................... 32, 34, 36

*Milwaukee Cty. Pavers Ass'n v. Fiedler*,
   731 F. Supp. 1395 (W.D. Wis. 1990) .................................................................................. 32

*Murray v. Northrop Grumman Info. Tech., Inc.*,
   444 F.3d 169 (2d Cir. 2006) ............................................................................................... 15

*Nanko Shipping, USA v. Alcoa, Inc.*,
   850 F.3d 461 (D.C. Cir. 2017) ............................................................................................ 30

*Nat'l Wildlife Fed'n v. Burford*,
   676 F. Supp. 271 (D.D.C. 1985) ......................................................................................... 38

*Paroline v. U.S.*,
   134 S. Ct. 1710 (2014) ...................................................................................................... 23

*Parr v. Ebrahimian*,
   70 F. Supp. 3d 123 (D.D.C. 2014) ...................................................................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ............................................................................................................ 10

*Pinkett v. First Citizens Bank*,
   No. 09 C 2365, 2010 WL 1910520 (N.D. Ill. May 10, 2010) ................................................ 24

*Pyramid Lake Paiute Tribe v. Burwell*,
   70 F. Supp. 3d 534 (D.D.C. 2014) ...................................................................................... 34

*Ramah Navajo Sch. Bd., Inc. v. Babbitt*,
  87 F.3d 1338 (D.C. Cir. 1996) ............................................................. 34

*Ramirez v. STi Prepaid LLC*,
  644 F. Supp. 2d 496 (D. N.J. 2009) ..................................................... 29

*Ransom v. Babbitt*,
  69 F. Supp. 2d 141 (D.D.C. 1999) ....................................................... 34

*Republic of Phil. v. Pimentel*,
  553 U.S. 851 (2008) .............................................................................. 37

*Rochester Methodist Hosp. v. Travelers Ins. Co.*,
  728 F.2d 1006 (8th Cir. 1984) ............................................ 9, 10, 32, 38

*Russek v. Unisys Corp.*,
  921 F. Supp. 1277 (D.N.J. 1996) .......................................................... 15

*Sch. St. Assocs. Ltd. P'ship v. D.C.*,
  764 A.2d 798 (D.C. 2001) .................................................................... 23

*Sparrow v. United Air Lines, Inc.*,
  216 F.3d 1111 (D.C. Cir. 2000) .............................................................. 6

*Temple v. Synthes Corp., Ltd.*,
  498 U.S. 5 (1990) ................................................................................... 33

*Trevino v. Gen. Dynamics Corp.*,
  865 F.2d 1474 (5th Cir. 1989) .............................................................. 15

*TRT Telecomm. Corp. v. W. Union Tel. Co.*,
  No. CIV. A. 87-2760, 1988 WL 19259 (D.D.C. Feb. 17, 1988) ............ 36

*Two Shields v. Wilkinson*,
  790 F.3d 791 (8th Cir. 2015) ............................................................... 38

*U.S. v. Barnes*,
  295 F.3d 1354 (D.C. Cir. 2002) ............................................................ 22

*Vann v. U.S. Dep't of Interior*,
  701 F.3d 927 (D.C. Cir. 2012) ............................................................. 36

*Vick v. Brennan*,
  172 F. Supp. 3d 285 (D.D.C. 2016) ........................................................ 6

*Wetzel v. Capital City Real Estate*,
  *LLC*, 73 A.3d 1000 (D.C. 2013) .......................................................... 17

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
  746 F.3d 1008 (11th Cir. 2014) ........................................................... 35

*Woodard v. Andrus*,
  419 F.3d 348 (5th Cir. 2005) ............................................................... 37

*Yearsley v. W. A. Ross Const. Co.*,
  309 U.S. 18 (1940) ................................................................................ 12

**Statutes**

15 U.S.C. § 1693.................................................................................................................. 36

D.C. Code Ann. § 15-718 ................................................................................. 3, 20, 36, 37

**Rules**

Fed. R. Civ. 26(b) ................................................................................................................ 8

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1, 6, 7, 21

Fed. R. Civ. P. 12(d) ............................................................................................................ 7

Fed. R. Civ. P. 19 ...................................................................................................... passim

Fed. R. Civ. P. 20(a)(3).................................................................................................... 36

Fed. R. Civ. P. 8(a)(2)...................................................................................................... 29

**Treatises**

Wright & Miller, Federal Practice and Procedure § 1623 (3d ed. 2013)..................................... 33

**Regulations**

12 C.F.R. § 1005.10(e)(2).................................................................................. 20, 21, 32

## I.       Introduction

Plaintiffs brought this putative class action challenging JPMorgan Chase & Co.'s ("Chase's") unfair and deceptive practices aimed at siphoning off juror funds guaranteed by statute through the imposition of fees that Chase purposefully obscures, in violation of both federal and state law.

Chase seeks to skirt all liability in this case by shifting the blame to the Treasury and D.C., in reliance on two generic agreements, authorizing Chase, in the abstract, to provide financial services to various federal agencies including the D.C. Courts. These agreements—which are both expired and entirely extraneous to the Complaint—should not even be considered by this Court, but even if they were, they do not exonerate Chase for its own wrongful conduct. Plaintiffs' Complaint is directed at Chase, and challenges Chase's implementation of the Debit Card program insofar as *Chase* compelled jurors to activate and use Chase Debit Cards in order to receive their jury payments; *Chase* failed to provide a way for jurors to access the entirety of their funds without incurring fees; and, to the extent there *is* a way for jurors to access their funds without incurring fees, *Chase* intentionally obscured that information by failing to provide clear, easy-to-understand disclosures explaining how jurors may receive their funds without incurring fees.

Much of Chase's motion rests on factual allegations that run counter to those in the Complaint and are otherwise completely unsupported by the factual record. Chase would have this Court believe that the government was solely responsible for, wholly directed, and fully authorized the unlawful actions the Complaint attributes to Chase. As Chase sees it, the Court should find as a *matter of law,* and thus dismiss all of Plaintiffs' claims under Rule 12(b)(6), on the basis that Chase acted as a model corporate citizen and was supposedly given no choice in

how much it charged jurors, what disclosures it provided to jurors, or whether Chase could give jurors an option for how to receive their payment. Not only are Chase's factual allegations contrary to those in the Complaint (as well as common sense), they are, in fact, contradicted by Chase's own materials, which demonstrate that Chase had considerable discretion in how it implemented its Debit Card program, which Chase employed to line its own pockets to the detriment of jurors fulfilling their civic duty. Plaintiffs have thus adequately stated a claim against Chase for violation of the Consumer Protection Procedures Act ("CPPA"), Electronic Fund Transfer Act ("EFTA"), unjust enrichment, conversion, and the consumer protection acts of the 49 states.

And just as the Financial Agency Agreement ("FAA") does not transfer responsibility for Chase's actions to the government, Chase's mere affiliation with the government does not entitle it to blanket immunity here. Even as an agent of the government, Chase is liable for its own unlawful acts. Indeed, the doctrines Chase seeks to apply—derivative sovereign immunity and the government contractor defense—*have never been applied* in this context before. There is no reason why this Court should be the first to do so. Granting Chase unlimited immunity from state and federal law based on a vague authorization from the government to provide financial services would be absurd. Indeed, the FAA itself does not contemplate this result, and instead specifically states Chase must comply with various state and federal laws, including one at issue here—the EFTA.

Moreover, there is no reason either the Treasury or D.C. needs to be joined in this action. Chase seeks to use Rule 19 not because either the Treasury or D.C. are required parties, but because Chase does not want this Court to be able to scrutinize its conduct. Chase argues D.C. and the Treasury must be joined only because Chase wants to piggyback onto the government's

sovereign immunity. Chase's desperate invocation of Rule 19 does not shield it from judicial review. The Treasury and D.C. do not have a legally protected interest here. But even if they did, Chase would adequately protect that interest because Chase's interests are aligned with the government insofar as they both wish to defend the specific implementation of the Debit Card program in the context of jurors. Further, this Court will be free to fashion relief to apply only to Chase or otherwise in a way that would not impair the interests of any absent party. For example, this Court may order Chase to provide: (1) jurors with a choice of whether to receive the Debit Card; (2) a feasible way for jurors to access their funds without incurring fees; (3) clearer disclosures and/or (4) restitution. None of these potential remedies would implicate either the Treasury or D.C. in the slightest. For that reason alone, neither the Treasury or D.C. is a required party here.

## II.    Factual Background

The right to a trial by jury is so "fundamental to the American scheme of justice," *Duncan v. State of La.*, 391 U.S. 145, 149 (1968), that it is protected by both Article III of the Constitution and the Sixth Amendment in the Bill of Rights. (Compl. ¶¶ 3, p. 11 ¶ 31.)[1] Although vital to our democracy, jury duty can also be a burden on residents. (*Id.* at ¶ 4.) In recognition of this reality, every state in the United States provides compensation to jurors under various circumstances. (*Id.* at ¶ 5.) In Washington, D.C., Superior Court jurors, with certain exceptions not relevant here, are entitled by statute to a daily travel subsidy of $4, and, if selected for trial, an additional attendance fee of $30 for each trial day. D.C. Code Ann. § 15-718. Jurors are statutorily entitled to 100% of these modest, yet important, juror fees. (Compl. ¶ 55.)

---

[1] Due to a clerical error, several paragraphs in Plaintiffs' Consolidated Complaint (Dkt. 14-2) were labelled with duplicate numbers. To avoid confusion, page numbers have been supplied where these paragraphs are referenced.

But rather than distribute juror payments by check, Chase convinced D.C. to enter into an arrangement by which jurors would be exclusively paid for their service via Chase Debit Cards. (*Id.* at ¶ 6.) Jurors are presented with these Debit Cards on a take-it-or-leave-it basis. (*Id.* at ¶¶ 37-41.) Jurors have no choice but to activate and use their Chase Debit Card in order to access their jury payments. (*Id.* at ¶ 42.) Chase further forces jurors to accept its Terms & Conditions when activating their cards through Chase's website. Chase then uses its monopolistic control over juror funds to siphon off fees by imposing a myriad of barriers designed to prevent jurors from fully using the funds they are guaranteed by statute. (*Id.* at ¶ 1.)

All the while, Chase misrepresents the Debit Cards as "FREE" and easy to use. (*Id.* at ¶ 94.) They are not. After jurors are forced to activate their cards, Chase hits jurors with a series of fees—fees that, as a practical matter, are nearly impossible to avoid. (*Id.* at ¶ 79). For example, Chase represents that jurors can receive their funds for "FREE" via an "In-network ATM (Chase or partner bank)." (*Id.* at ¶¶ 13, 73.) But Chase has no ATMs anywhere in the District. And there are no ATMs that will dispense money in increments less than $20. (*Id.* at ¶ 14.) That means <u>all</u> jurors who report to jury duty and receive only the $4 daily travel subsidy, in fact, <u>have no way</u> to withdraw their payment for free from an ATM—contrary to Chase's claims. Similarly, all jurors who are paid in increments other than $20 increments—which is likely the vast majority of jurors who serve on a jury—also have no way of withdrawing their rump balances for free from an ATM.[2] (*Id.* at ¶ 17.) Indeed, the <u>*only*</u> jurors who are able to fully withdraw their payments for free from an ATM are those who serve on a jury for exactly 10 days (or in 10-day

_____

[2] For example, a juror who serves on a jury for a single day will be paid $34 ($30 for service and $4 for travel), but the most he or she will be able to withdraw from an ATM is $20.00, leaving $14.00 as a "rump balance."

increments) and are lucky enough to withdraw their funds on the 10th day, when the amount is evenly divisible by $20.[3] Of course, Chase does not make this clear in its "disclosures."

Instead, Chase also misleadingly represents that point of sale transactions are "FREE." (*Id.* at ¶ 101.) But if a juror does not know the balance of his or her card, and tries to swipe the card at the point of sale and does not have enough funds, that swipe costs $0.25. (*Id.*) And to merely find out the balance of the card at an ATM, it costs $0.45. (*Id.* at ¶ 11.) A point of sale transaction is thus only free if it costs less than the Debit Card balance, meaning again that jurors are left with inaccessible rump balances. (*Id.*) And soon enough, Chase will transfer these rump balances to its own pockets because, remarkably, even if a juror does not use his or her card, he or she is hit with fees. Chase charges a $1.50 monthly fee for non-use of the card. (*Id.* at ¶ 11.)

This maze of fees is designed to benefit Chase to the detriment of jurors. (*Id.* at ¶ 79). For example, Plaintiffs allege that they are not aware of any way to withdraw their rump balances for free. (*Id.* at ¶ 101.) Plaintiff Scott fulfilled his civic duty in July 2016 and without his consent received a Debit Card. (*Id.* at ¶ 20.) He has incurred two declined point of sale fees and two monthly inactivity fees. (*Id.*) Plaintiff Scott has a small remaining balance that he is unable to withdraw from an ATM. (*Id.* at ¶ 21.) Plaintiff Morin fulfilled his civic duty in January 2017 and without his consent received a Debit Card. (*Id.* at ¶ 25.) Plaintiff Morin also has a small remaining balance that he is unable to withdraw from an ATM. (*Id.*)

## III.   **Legal Standard**

"In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiffs . . . and must

---

[3] A juror who serves on a jury for exactly 10 days, would receive $340, which can by evenly divided by $20. By comparison, jurors who serve on a jury for 9 days, receive $304, which would result in a rump balance of $9 after an ATM withdrawal.

assume the truth of all well-pleaded allegations." *Vick v. Brennan*, 172 F. Supp. 3d 285, 295

(D.D.C. 2016). "A complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Sparrow v. United Air Lines, Inc*., 216 F.3d 1111, 1117 (D.C. Cir. 2000).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). The Court

may not consider "[f]actual allegations in briefs of memoranda of law . . . when deciding a Rule

12(b)(6) motion, particularly when the facts they contain contradict those alleged in a

complaint." *Juergens v. Urban Title Servs., Inc.*, 246 F.R.D. 4, 10 (D.D.C. 2007).

## IV.    Argument

### A.    The Court Should Disregard Chase's Extraneous Materials

Chase[4] improperly seeks to put before the Court cherry-picked documents in the form of

(i) a copy of the FAA between Chase and the Treasury and a copy of purported amendment no. 3

to the FAA (both of which show that the FAA expired July 1, 2016) (attached as Exhibit 1 to the

Levine Declaration); (ii) a copy of the "Direction to Agent No. 34" (the "Memorandum of

Understanding" or "MOU") (attached as Exhibit 2 to the Levine Declaration); and (iii) a

purported copy of the "English language version of the terms and conditions" supposedly

provided with U.S. Debit Cards issued to District of Columbia Superior Court jurors during the

time period when Plaintiffs received their cards (attached as Exhibit 5 to the Levine Declaration).

---

[4] Chase alleges Plaintiffs have sued the wrong Chase entity. (*See* Mot. at 8 n. 5.) That is a factual issue to be resolved after the benefit of discovery. If Chase is correct, Plaintiffs should be granted leave to amend. *See Krupski v. Costa Crociere S. p. A*., 560 U.S. 538, 554 (2010).

None of these extraneous materials are properly considered in connection with a motion to dismiss.

In evaluating a motion under 12(b)(6), the Court is "limited to considering facts alleged in the complaint, any documents attached to or incorporated in the  complaint, matters of which the court may take judicial notice, and matters of public record." *Juergens*, 246 F.R.D. at 10; *see also* Fed. R. Evid. 201(b). Otherwise, the court must convert a Rule 12(b)(6) motion into a Rule 56 motion, and provide the parties a reasonable opportunity for discovery and presentation of evidence. *See Amons v. D.C.*, 231 F. Supp. 2d 109, 113 (D.D.C. 2002) (rejecting defendant's attempt to convert its motion to dismiss into a partial summary judgment motion); *see also* Fed. R. Civ. P. 12(d).

Exhibits 1, 2, and 5 of Chase's Motion to Dismiss are not exhibits to the Complaint. The Complaint does not reference the FAA or the MOU. The Complaint does not allege any claim against the Treasury or D.C. It does not allege any breach of contract claim, let alone a breach of the FAA or MOU. None of Plaintiffs' claims rely on the existence of the FAA or MOU or a review of their terms. Similarly, none of Plaintiffs' claims depend on or reference the purported Terms & Conditions, which neither Plaintiff allege they received. Absent any claims or allegations that directly put these materials at issue, Exhibits 1, 2, and 5 simply are not "documents upon which the plaintiff's complaint necessarily relies." *Ctr. for Biological Diversity v. Tidwell*, No. CV 15-2176 (CKK), 2017 WL 943902, at *3 (D.D.C. Mar. 9, 2017) (refusing to analyze defendant's declarations in the context of a 12(b)(6) motion).

Neither Plaintiffs nor the Court are in a position to confirm the authenticity of Chase's extraneous materials or place them in context. Indeed, the FAA that Chase has provided is not even current. (*See* FAA at Amendment No. 3 (showing the FAA expired July 1, 2016).) Chase

cannot selectively disclose only certain materials without permitting Plaintiffs (or the Court) to view other relevant materials. This is exactly the kind of lopsided, "information asymmetry" that the Federal Rules aim to prevent through discovery. *See* Fed. R. Civ. 26(b), advisory comm. notes (2015) ("'Information asymmetry' . . . often mean[s] that the burden of responding to discovery lies heavier on the party who has more information, and properly so."). Accordingly, the Court should strike or disregard Chase's extraneous exhibits.

### B. Chase Cannot Claim Immunity From Suit Based On the Limited Doctrines of Derivative Sovereign Immunity or the Government Contractor Defense

Relying on two of these improperly introduced exhibits, Chase attempts to shield itself from liability by invoking derivative sovereign immunity and the government contractor defense. But neither operate to help Chase escape liability for three independent reasons. First, Plaintiffs' claims against Chase arise from Chase's own illegal conduct. An agent of the government is not, as Chase contends, immune from liability for its own torts. Second, Chase asks this Court to apply both of these doctrines in an entirely novel context. Derivative sovereign immunity applies in cases of property damage resulting from public works projects, and the government contractor defense has only been applied to products liability actions in this Circuit. Granting Chase's Motion would unjustifiably blast open the doors of sovereign immunity to encompass *all financial activity* of *every bank* operating as a so-called "agent" of the federal government. Such a radical expansion of either doctrine is both unprecedented and unwarranted. Finally, as one court has already held when evaluating similar claims against Chase also arising under the U.S. Debit Card program, adjudication of these defenses is premature at the motion to dismiss stage. Resolution of each requires fact-specific inquiries, which this Court should decline to resolve without the benefit of a fully developed evidentiary record.

As an initial matter, governmental immunity is a form of preemption. *See, e.g.*, *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (explaining that this type of immunity exists in "a few areas, involving 'uniquely federal interests,'" where state law is preempted). There is a well-established presumption against preemption. *See, e.g.*, *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 518 (1992); *see also*, *Massachusetts v. U.S. DOT*, 93 F.3d 890, 894 (D.C. Cir. 1996) (declining to find preemption "in light of the strong presumption against federal preemption in matters traditionally regulated by the state"); *Comm'ns Imp. Exp. S.A. v. Congo*, 757 F.3d 321, 333 (D.C. Cir. 2014) (same). This is particularly true here as the subject matter is consumer protection. "Because consumer protection law is a field traditionally regulated by the states, compelling evidence of an intention to preempt is required in this area." *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41-42 (2d Cir. 1990). Chase submits no such compelling evidence.

Chase's arguments fail on the merits as well. First, Chase cannot claim immunity here because Plaintiffs seek injunctive relief and damages against Chase *for its own wrongful acts.* "It is well established that agents, even government agents, may be subject to liability either in tort or in contract." *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1012 (8th Cir. 1984) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686 (1949)). Here, Chase "exceeded the bounds of the authority conferred upon it by the government," *id.* at 1015, by, *inter alia*, compelling D.C. jurors to retrieve their statutory payments via a Chase Debit Card in violation of federal law, by making it prohibitively difficult for jurors to access their full balances without incurring fees, and by providing misleading disclosures, *see* Sec. (IV)(C)(1).

That Plaintiffs' claims are against Chase and not the government is further demonstrated by the "effect of the relief sought." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 107 (1984). A suit is against the government if "the judgment sought would expend itself on

the public treasury or domain, or interfere with the public administration," or if the effect would restrain the government to act or compel it to act. *Rochester Methodist Hosp.*, 728 F.2d at 1012 (citations omitted). That is not the case here. Certainly the relief sought would not expend itself on the public treasury. Chase has retained Plaintiffs' juror fees—not government monies. (Compl. ¶¶ 118, 128.) According to the court in *Rochester Methodist*, this fact alone is "dispositive." *Rochester Methodist Hosp.*, 728 F.2d at 1013. Nor would the relief Plaintiffs seek restrain the government or compel it to act. The relief sought affects Chase and Chase alone.

Second, Chase conveniently ignores that neither the government contractor defense nor derivative sovereign immunity have ever—as far as Plaintiffs know—been applied in this context. And for good reason. If this Court were to hold as a matter of first impression that any financial institution providing debit card services under the U.S. Debit Card program is immune from any liability relating to their implementation and execution of such services, such immunity would be far-sweeping. The FAA appears to provide for all types of incentive, bonus, per diem, payroll, and benefit payments on debit cards. (FAA at 2); and Chase appears to be simply one of many financial agents that can provide such debit cards (FAA, Ex. C p. 1 (noting that the Treasury "may seek debit card services from another financial agent")). Moreover, the reasoning would extend to the provision of any financial services to government agencies, employees, or benefit recipients.

The case law does not support such a sweeping bestowal of immunity. Derivative sovereign immunity comes from an 80-year old Supreme Court decision regarding property damage while implementing a public works project. The Ninth Circuit has held the doctrine is of limited applicability outside of that specific context. *Gomez v. Campbell-Ewald Co.*, 768 F. 3d 871, 879 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9,

2016). Likewise, the government contractor defense has never been applied outside of the products liability context in this Circuit. For the reasons discussed in Secs. 1 and 2 below, this Court should not be the first to apply these doctrines in such novel circumstances.

Finally, the procedural status of this case prohibits a dismissal based on immunity defenses. The immunity doctrines Chase raises require a case-specific and fact-intensive inquiry. Courts, including in this Circuit, regularly decline to decide questions of immunity without having a fully developed evidentiary record. *See, e.g.*, *Kubicki ex rel. Kubicki v. Medtronic*, No. 12-00734 (CKK), 2013 WL 1739580, at *5 (D.D.C. Mar. 21, 2013) (denying defendant's motion to dismiss on the grounds of federal preemption); *see also*, *Hanjy v. Arvest Bank*, 94 F. Supp. 3d 1012, 1025 (E.D. Ark. 2015) (quoting *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1369 n.15 (N.D. Ga. 2008) ("As a whole, the claims Plaintiffs have stated are plausible based on the facts alleged, so the court will not dismiss the claims on preemption grounds before any discovery has taken place").

Indeed, in footnote 7 of Chase's brief, Chase acknowledges a 2016 decision in which it lost this very issue. In *Krimes v. JPMorgan Chase Bank, N.A.*, No. 15-5087 (E.D. Pa. Mar. 4, 2016), the Plaintiffs challenged Chase's Debit Card program for a different federal agency. (Mot. at 20.) There, the court denied Chase's motion to dismiss holding the issues raised were "more properly suited for the summary judgment stage." Order at 1 n.1, *Krimes v. JPMorgan Chase Bank, N.A.*, No. 15-5087 (E.D. Pa. Mar. 4, 2016), ECF No. 22. Here, as in *Krimes*, the Court should hold similarly and deny Chase's Motion to Dismiss.

### 1.      Derivative Sovereign Immunity Does Not Apply

Derivative sovereign immunity is a "narrow rule regarding claims arising out of property damage caused by public work projects." *Gomez*, 768 F.3d at 879. The defense arose from *Yearsley v. W. A. Ross Const. Co.*, 309 U.S. 18 (1940), when a plaintiff sued for property damage

resulting from the construction of a dike. The dike was constructed by a federal contractor, under the supervision of the Secretary of War and Chief of Engineers, for the purpose of improving the navigation of the Missouri River, as authorized by an Act of Congress. *Id.* at 19. In *Yearsley*, the Court held that plaintiff's claim was best suited under the Fifth Amendment's "taking" clause rather than state tort law because the federal contractor was acting on the order of Congress. *Id.* at 22-23.

Derivative sovereign immunity does not apply here. First, as discussed above, Plaintiffs bring claims against Chase *for its own wrongful acts*, not for merely "executing [the] will" of the government. *See id.* at 21. Derivative sovereign immunity is therefore inapplicable. *See In re Fort Totten Metrorail Cases Arising Out of Events of June 22, 2009*, 895 F. Supp. 2d 48, 75 (D.D.C. 2012) ("The claims against [defendant] alleging that it acted negligently in performing its contractual obligations thus do not challenge [the government's] purportedly 'immune decision,' but instead concern [defendant's] voluntary conduct after that decision was made. Consequently, [defendant] is not entitled to derivative sovereign immunity under *Yearsley* as to these claims.").

Second, the facts of *Yearsley* render it inapplicable here. In *Gomez*, 768 F.3d 871, the Ninth Circuit declined to extend *Yearsley* beyond the context of property damage resulting from public works projects. *Id.* at 880. The Supreme Court granted certiorari and affirmed that the defendant's status as a federal contractor did not entitle it to immunity from federal statutes. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 665 (2016), *as revised* (Feb. 9, 2016).[5] While the

---

[5] Notably, the defense in *Gomez* was raised at the summary judgment stage where there was a record to support whether the contractor had exceeded its authority, unlike here.

Supreme Court did not expressly reserve this type of immunity for property damage claims, it did state that unlike the United States and its agencies, federal contractors do not enjoy absolute immunity and that no derivative immunity exists when the contractor has exceeded its authority or its authority was not validly conferred. *Id.* at 672-74.[6] Under this Supreme Court precedent, to the extent Chase argues that the government authorized Chase's violation of the EFTA by compelling jurors to use Chase Debit Cards, that authority was not validly conferred. *See* Sec. IV(C)(2).

This Court, like the Ninth Circuit in *Gomez*, should decline Chase's invitation to expand derivative sovereign immunity beyond the limited application for which it was intended. All banks should not be entitled to blanket immunity for all financial activity merely because a vague FAA provides a modicum of government "approval" for the program. Indeed, the FAA itself does not contemplate Chase's immunity from state or federal law—quite the opposite. The FAA specifically states Chase is required to *comply* with the Electronic Fund Transfer Act and Regulation E, as well as various other state laws. (*See* FAA at 8 ("The Financial Agent is solely liable for any loss or claim related to the Operation of the program arising under Regulation E"), FAA, Ex. A at 2 ("Cardholder Funds are FDIC-insured and are subject to Regulation E protections"); FAA, Ex. A at 5 ("For debit cards with Cardholder Funds, the Financial Agent

---

[6] Chase's cited cases support Plaintiffs' position. In *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014), the Fourth Circuit held that the district court **erred** in finding the contract was entitled to derivative sovereign immunity at the motion to dismiss stage, thus supporting Plaintiffs' position. Likewise, in *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 198 (2d Cir. 2008), the court affirmed the district court's denial of Defendant's motion for summary judgment on the issue of derivative sovereign immunity, holding that there was not a sufficiently clear factual record to decide the issue. Finally, and most persuasively, in *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1345 (11th Cir. 2007), the Eleventh Circuit rejected the defendant's "premise of total derivative immunity for common law agents" as incorrect. *Id.*

shall . . . Comply with all applicable provisions of Regulation E (12 CFR Part 205, Electronic

Fund Transfers); Comply with the Gramm-Leach-Bliley Act and other applicable laws related to

the protection of the cardholder's privacy); FAA, Ex. C, at 3 ("If a change in Federal or State law

or regulation governing the issuance, processing or pricing of debit cards is enacted, and the law

or regulation substantially increases or decreases the costs associated with the services under the

general scope of the FAA, FMS and the Financial Agent will negotiate an equitable adjustment

in the prices of the services[.]".)

## 2. The Government Contractor Defense Does Not Apply

The government contractor defense fares no better. The government contractor defense

may preempt state law obligations in "a few areas, involving 'uniquely federal interests . . .'"

*Boyle*, 487 U.S. at 504. The defense arose in the context of military contractors building

equipment for the United States government, according to the government's specifications and

under the government's supervision. *Id.* at 507-08. In *Boyle*, the Court determined that "the

procurement of equipment by the United States is an area of uniquely federal interest" and after

its analysis, it reversed a wrongful death jury verdict against a military contractor. *Id.* at 507.

Plaintiffs know of no case in the District of Columbia applying the government

contractor defense outside of the products liability context.[7] Indeed, the Supreme Court described

the doctrine as one that "shields contractors from tort liability for products manufactured for the

Government in accordance with Government specifications, if the contractor warned the United

States about any hazards known to the contractor but not to the Government." *Hercules Inc. v.*

*U.S.*, 516 U.S. 417, 422 (1996). The doctrine is plainly inapplicable here, where there is no

---

[7] While Chase cites *Fagans v. Unisys Corp.*, 945 F. Supp. 3, 6 n.3 (D.D.C. 1996) and
*Haltiwanger v. Unisys Corp.,* 949 F. Supp. 898 (D.D.C. 1996), in support of the proposition that
the doctrine has been applied outside of the *military* context*, both *Fagans* and Haltiwanger were
products liability actions involving injuries from machines made for the U.S. Postal Service.

manufactured product, and no "hazards" known to the contractor but not to the government. *See Gomez.,* 768 F.3d at 881 (holding that *Boyle* did not create "a general grant of immunity for government contractors" but is instead a preemption case that is rendered inapposite when plaintiffs bring a claim under federal law); *see also Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*, 606 F. Supp. 2d 114, 119 (D.D.C. 2009) (government contractor defense inapplicable to breach of contract action).[8]

Nonetheless, even if the government contractor analysis were to apply in this context, Chase fails to identify a "uniquely federal interest" and a "significant conflict" with that interest. *Boyle*, 487 U.S. at 507. Requiring Chase to provide non-deceptive disclosures and/or requiring Chase to eliminate the barriers to access that prevent jurors from obtaining their money does not present a "significant conflict" with any "uniquely federal interest." *See also* Sec. IV(D)(2). Indeed, requiring Chase to comply with federal law is uniquely *within* the federal interest, rather than counter to it. *See Gomez.*, 768 F.3d at 881.

Moreover, Chase fails the *Boyle* test on the merits as well. *Id.* at 512. *Boyle* requires "the government and the contractor [to] engage in a 'continuous back and forth' review process regarding the design of the product." *Russek v. Unisys Corp.*, 921 F. Supp. 1277, 1288 (D.N.J. 1996) (citation omitted). The test itself thus demonstrates the inapplicability of the government contractor defense outside of the products liability arena. Moreover, the "process" must be "more than a rubber stamp." *Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1480 (5th Cir. 1989).

---

[8] The only case Chase cites supporting immunity outside of the context of either a products liability action or property damage action is *Murray v. Northrop Grumman Info. Tech., Inc*., 444 F.3d 169, 175 (2d Cir. 2006). But in *Murray*, the Court held a federal contractors' employees were immune from liability under the doctrine of official immunity—a close, but distinct doctrine of immunity that insulates federal officials from state tort liability for carrying out their official duties. Chase does not raise the doctrine of official immunity here, rendering *Murray's* analysis inapplicable.

Here, there is no record of any back and forth between the government and Chase regarding the Debit Card specifications. The FAA—which in generic terms, authorizes Chase to provide Debit Card services to federal agencies—is a "rubber stamp." It is not the "reasonably precise specifications" of military equipment at issue in *Boyle*, further demonstrating the doctrine's inapplicability here.

### C.      The Complaint Adequately States a Claim for Relief

Chase's derivative sovereign immunity and government contractor defenses, as well as its Rule 19 argument, are purely procedural attempts to distract the Court from Chase's own unlawful practices—practices that take advantage of jurors who are simply fulfilling their civic duty and are nevertheless denied the full payments they are entitled to by statute due to Chase providing misleading disclosures and creating other barriers to access for purposes of Chase lining its own pockets. Chase attempts to point the finger at the government as having devised and authorized this unfair, unlawful, and deceptive scheme, but as discussed below, the Complaint sufficiently alleges that Chase's own conduct violated federal and state law.

### 1.      Plaintiffs Adequately State a Claim under the CPPA

Chase brazenly asks this Court to hold—contrary to the Complaint's allegations—that its jury Debit Card scheme is a model of clarity and transparency that cannot give rise to a violation of the CPPA as a matter of law. Chase's arguments fall flat. <u>First</u>, Chase misstates the law. Chase argues that Plaintiffs must point to a specific statement or omission that was misleading to state a violation under the CPPA. (Mot. at 16-17.) But Plaintiffs are not required to identify specific falsities; rather, Plaintiffs only need to demonstrate that Chase's implied or express representations or omissions have the tendency to mislead a reasonable consumer. *See Mann v. Bahi*, No. CV 16-949 (JDB), 2017 WL 1533473, at *9-10 (D.D.C. Apr. 27, 2017) (Denying defendant's motion to dismiss when the defendant did not explicitly state a falsity, but instead its

statements and omissions, when taken as a whole, may have implied a falsity). Plaintiffs have more than done so here.

"A main purpose of the CPPA is to assure that a just mechanism exists to remedy *all* improper trade practices." *Dist. Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 723 (D.C. 2003). In pointing to discrete statements in its fee schedule and disclosures that were technically accurate, Chase loses the forest amidst the trees. The crux of Plaintiffs' Complaint is that Chase designed its disclosures and fee structure to make it prohibitively difficult for putative class members to obtain the jury payments to which they are statutorily entitled. (*See, e.g.,* Compl. ¶¶ 16, 22, 143, 148.) Chase obscures how jurors can access their full balances without incurring fees, providing the "inaccurate impression" that a juror can access all of his or her funds for free. It is this unfair trade practice, taken as a whole, that states a claim under the CPPA, not individual aspects of Chase's deceptive scheme considered in isolation. *See Mann*, 2017 WL 1533473, at *10.[9]

Second, Chase raises what are nothing more than disputes of fact that are not properly resolved at this stage. Whether an alleged unfair trade practice is deceptive is almost always a question for the jury. "[T]he CPPA does not require much by way of pleading to state a claim under § 28-3904(e)." *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 94–95 (D.D.C. 2016). The proper inquiry is whether Chase's conduct had a tendency to mislead. *See Wetzel v. Capital City Real Estate, LLC*, 73 A.3d 1000, 1005 (D.C. 2013) (allegation that defendant "misrepresented that the basement and walls were free from defect, which misled [plaintiff] into

---

[9] Chase argues in a footnote that Plaintiffs are barred from pursuing § 28-3904(r) because there was no "agreement" between Chase and Plaintiffs, but the lack of an explicit contract is not fatal to Plaintiffs' claims here. *See generally DeBerry v. First Gov't Mortg. & Inv'rs Corp.*, 743 A.2d 699, 703 (D.C. 1999) (declining to adopt a narrow reading of 23-3904(r) because the provision is not "meant to address unconscionability only in the one context and not the other[.]").

thinking this Property was worth more than it actually was" was actionable under CPPA). In evaluating claims under this provision, "[a] court must consider an alleged unfair practice in terms of how the practice would be viewed and understood by a reasonable consumer." *Mann*, 2017 WL 1533473, at *10. This is generally a question for the jury. *Id.*; *see also Parr v. Ebrahimian*, 70 F. Supp. 3d 123, 137 (D.D.C. 2014) ("[T]he question of whether these representations were misleading and material, or otherwise in violation of the CPPA, are jury questions[.]").[10]

    <u>Third</u>, the facts here do not suggest this is one of those exceptionally rare cases in which no reasonable juror could conclude Chase's conduct was unfair or deceptive. Quite the opposite. Chase's factual arguments do not even pass the sniff test. For example, in response to the Complaint's allegation that Chase repeatedly misrepresents its juror Debit Cards as "FREE,"[11] Chase responds by insisting that point of sale transactions are free "by means of a cash-back or split-transaction." Setting aside the fact that Plaintiff Scott clearly alleges otherwise—given that he in fact incurred a fee for a point of sale transaction[12]—the term "split-transaction" is not even defined in Merriam-Webster's dictionary. That a reasonable D.C. juror was supposed to intuitively know about the availability and feasibility of a "split transaction" *as a matter of law* is facially absurd. Indeed, Chase's response only reinforces the core of Plaintiffs' Complaint: Chase does not provide jurors with a transparent mechanism for withdrawing their funds without

---

[10] *Chambers v. NASA Fed. Credit Union*, No. CV 15-2013 (JDB), 2016 WL 6155930, at *8 (D.D.C. Oct. 21, 2016) is inapposite. In that case, the court held the contract unambiguously disclosed that overdraft fees would be imposed. In this case, the disclosures are far from "unambiguous" and in fact purposely obscure the ways in which a consumer can access his/her money without fees. Moreover, in this case, unlike in *Chambers*, Plaintiffs are entitled to their money by statute, and have never contractually agreed that Chase may take *any* fees.
[11] (*See* Compl. ¶¶ 13, 14, 69, 94, 101.)
[12] (*See* Compl. ¶¶ 83, 101, 102, 108, 112.)

incurring fees. Instead, Chase leads unwitting jurors into a maze where each wrong turn results in fees, with Chase's "disclosures" designed to hide the only ways jurors can withdraw the entirety of their statutory payments without penalty, if there even are any.

Plaintiffs' Complaint details the aspects of this maze that render Chase's unfair and deceptive practices a violation of the CPPA. Chase starts with a captive audience, which itself is a violation of federal law. *See* Sec. IV(C)(2).[13] Next, Chase provides jurors with a bundle of materials chock-full of deception. (Compl. ¶¶ 94-102.) The materials, taken as a whole, are designed to make the Debit Card look "FREE" and easy to use. (*Id.* at ¶ 94.) It is neither. Chase's myriad of fees and misrepresentations are designed to prevent jurors from fully using the funds they are guaranteed by statute by siphoning off fees to line Chase's own pockets. (*Id.* at ¶ 1.)

For example, Chase misleadingly states in-network withdrawals and point-of-sale transactions are "FREE." But Plaintiffs are not aware of any ATM in the District that dispenses amounts in dollar increments or even in increments of less than $20. (*Id*. at 100.) It is therefore misleading to describe all in-network withdrawals as "FREE," when any user receiving their funds in an odd dollar increment—including all recipients of the $4 travel stipend—have this option foreclosed to them. Indeed, as discussed above, the <u>only</u> jurors who are able to fully withdraw their payments for free from an ATM are those who serve on a jury for exactly 10 days (or in 10-day increments) and withdraw their funds on the 10th day, when the amount is evenly divisible by $20. *See supra* at 5, n. 3. But Chase does not make this clear in its "disclosures."

Similarly, a point of sale transaction is only free if it costs less than the Debit Card

---

[13] Plaintiffs allege Chase misrepresented its authority to charge fees because both the EFTA and D.C. statute prohibit it from doing so. (Compl. ¶¶ 145-47.) Chase's only response to these allegations is that a contract with the federal government authorizes these fees. But the FAA does not authorize Chase to violate state or federal law. *See supra*, at Sec. IV(B)(1).

balance. (Compl. 101.) In fact, rather than being "FREE," a point of sale transaction often dings users with a $0.25 declined transaction fee. Chase does not explain this fee, which itself is difficult to understand and counterintuitive. (*Id.* at 102.) The fee means the Debit Card is not like a gift card or a prepaid card: if the purchase price is greater than the amount on the card, the Debit Card will not charge the remaining balance on the card towards the purchase. It will instead slap users with a $0.25 merely for *attempting* to use their card at the point of sale. (*Id.*) Because users risk a $0.25 fee every time they swipe their cards, a point of sale transaction cannot fairly be stated as "FREE." Through the above barriers to access and Chase's misleading representations, Chase ensures jurors are left with inaccessible rump balances, which Chase simply steals under the guise of "inactivity fees." (*Id.* at ¶ 11.) [14]

Finally, Plaintiffs' allege Chase violates both state and federal law in forcing jurors to accept payment via debit card and siphoning off fees. (*Id.* at ¶ 145); *see* Sec.ii; D.C. Code Ann. § 15-718. This alone is an independent violation of the CPPA. *See Dist. Cablevision Ltd. P'ship*, 828 A.2d at 723.

### 2.      Plaintiffs Adequately State a Claim under the EFTA

Chase's attempt to evade liability under the EFTA fares no better. The EFTA's Regulation E provides: "No financial institution or other person may require a consumer to establish an account for receipt of electronic fund transfers with a particular institution as a condition of employment or receipt of a government benefit." 12 C.F.R. § 1005.10(e)(2). Plaintiffs allege Chase violated the EFTA by requiring jurors to activate and use Chase Debit Cards in order to obtain their statutorily entitled juror payments. (Compl. ¶ 175.) Chase does not

---

[14] The rest of Chase's disclosures fare no better. Plaintiffs allege both the "Frequently Asked Questions" sheet and the "Welcome to the U.S. Debit Card Program" sheet contain several inaccuracies and omissions which have a tendency to mislead. (Compl. ¶¶ 95-99.)

deny an the EFTA violation occurred—indeed, there is no dispute that jurors do not have the option of receiving their jury payments by cash or check, as required by the EFTA. Rather, Chase's only defense to this claim is that the *federal government* violated the EFTA, thereby insulating Chase from any and all liability. But Chase cannot shift the blame so easily.[15]

As an initial matter, *who* was involved in the decision to compel jurors to use Chase Debit Cards, *how* that decision was made, *when* it was made, and *why* it was made are all questions of fact not properly resolved at this stage. Accepting Chase's version of events would amount to improper speculation and run contrary to Plaintiffs' allegations, in violation of the applicable legal standard under Rule 12(b)(6). The Complaint alleges, for example, that "Chase convinced D.C. to participate in a deceptive and unlawful arrangement with Chase whereby all juror fees are placed on Debit Cards . . ." (Compl. ¶ 6.) The Complaint further alleges that Chase required consumers to "activate the card." (*Id.* at ¶ 42.) Jurors who did not do so were denied access to their money." (*Id.* at ¶ 44.) Similarly, jurors who attempted to activate their cards through Chase's website were denied access to their money "[i]f a juror d[id] not accept [Chase's] Terms and Conditions." (*Id.* at ¶ 48.) These are all actions that *Chase* took in violation of the EFTA; and they are sufficient to state a claim thereunder.

Chase nevertheless asks this Court to hold as a matter of law—contrary to Plaintiffs' allegations—that because D.C. may have also violated the EFTA, Chase cannot be held liable for its own unlawful conduct. Chase argues that "the *federal government* made th[e] decision" to "require Plaintiffs to receive their juror funds on JPMCB debit cards" and that Chase cannot be held liable for that violation. (Mot. at 18.) But Chase misconstrues Plaintiffs' claims and

---

[15] Indeed, the fact that the FAA specifically requires Chase to comply with the EFTA only further strengthens Plaintiffs' argument that Chase is liable here. *See supra* at Sec. IV(B)(1).

misstates the law. Plaintiffs are not asking this Court to hold Chase liable for the government's violation of the EFTA. They are asking this Court to hold Chase liable for its own involvement and participation in the violation. Chase would like this Court to be the first to hold that as a matter of law under 12 C.F.R. § 1005.10(e)(2) only one defendant may "require" a consumer to establish an account. But allowing Chase to escape liability on this basis would be contrary to the plain language and remedial purpose of the EFTA, as well as long-established legal principles.

The D.C. Circuit has made clear that, "[i]n construing a statute, we look first for the plain meaning of the text. If the language of the statute has a 'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.'" *U.S. v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002). By a plain reading of Regulation E—that "***no financial institution*** . . . may require a consumer to establish an account"—Chase is a financial institution that required consumers to establish an "account" at their bank to receive their juror payments. The Court's inquiry can end there. Moreover, such a reading is consistent with the EFTA's regulatory scheme to protect consumers from coercive and abusive financial practices. Indeed, the EFTA "is a remedial statute accorded a broad, liberal construction in favor of the consumer." *Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 353 (6th Cir. 2008).

Chase nevertheless takes issue with the word "require" in the regulation, arguing the federal government was the only entity to "require" consumers to establish an account with Chase. But not only should Chase's factual arguments be rejected as contrary to the Complaint, they make no sense in the context of the regulation. Under Chase's interpretation of the statute, a "financial institution" could never "require" consumers to establish an account to receive a government benefit because *private* financial institutions, by definition, never have *unilateral* control over *government* benefits; there is always an agreement between a financial institution

and the government agency detailing how the benefits shall be distributed (just as there is here). Under Chase's limited reading of the word "require," the "financial institutions" phrase is therefore rendered meaningless in the context of government benefits, which violates a central tenet of statutory construction. *See Sch. St. Assocs. Ltd. P'ship v. D.C.*, 764 A.2d 798, 807 (D.C. 2001).

Moreover, it is well-established that more than one party may be liable for unlawful conduct. *See Paroline v. U.S.*, 134 S. Ct. 1710, 1740–41 (2014) ("[A] tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury[.]). And just as there might be more than one tortfeasor, the law recognizes there might be more than one proximate cause of an injury. By way of analogy, in the context of the Federal Employers' Liability Act (FELA), the Supreme Court has repeatedly rejected courts attempts to cut off liability if a "proximate cause" is not *the sole* proximate cause. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 693 (2011). Instead, in FELA actions, juries are instructed to determine if defendant's negligence "played any part, no matter how small in bringing about or actually causing the injury." *Id.* at 698-99. Here, the government's involvement with whatever decision was made regarding how to distribute juror funds does not relieve Chase from responsibility for its own illegal conduct.

Chase's cited cases are of no assistance as they do not concern the provision of the EFTA under which Plaintiffs brought suit, and are otherwise of limited applicability. For example, in *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1181 (S.D. Cal. 2010), Plaintiffs alleged defendant Provide unlawfully shared their credit card information with co-defendant EMI, and that EMI then made unauthorized charges on Plaintiffs' card. The EFTA only prohibits the unauthorized charge—not the sharing of information which resulted in the unauthorized

charge—and therefore the court dismissed the EFTA claim against Provide. While it is logical only one defendant may "charge" a consumer's account, here, the regulation at issue is far broader in that it prohibits financial institutions *or other persons* from "requiring" consumers to establish an account. Chase's argument that only one defendant may be liable under this provision is far less intuitive than in *EasySaver Rewards*.

Likewise, in *Azose v. Wash. Mut. Bank*, 588 F. Supp. 2d 366, 372 (E.D.N.Y. 2008), Plaintiffs brought suit under a provision of the EFTA stating, "an automated teller machine *that imposes a fee* for a balance inquiry is required to provide notice that a fee will be imposed for providing a balance inquiry" and "to disclose the amount of the fee." *Id.* (emphasis added). Plaintiffs brought suit against Chase for fees charged by Washington Mutual on Washington Mutual customers using Chase machines. The court interpreted the plain language of the provision as only requiring disclosure when the operator of the ATM imposes a fee, and because it was Washington Mutual—not Chase—that imposed the fee, disclosure was not required. *Id.* at 372-73. Again, this provision is plainly inapplicable here.

Finally, in *Pinkett v. First Citizens Bank*, No. 09 C 2365, 2010 WL 1910520, at *6 (N.D. Ill. May 10, 2010), Plaintiffs sued under the provision stating that "no person may—(1) condition the extension of credit to a consumer on such consumer's repayment by means of preauthorized electronic fund transfers." The Court granted First Citizens' motion to dismiss because First Citizens failed to satisfy an essential prerequisite for liability: it did not extend the Plaintiffs credit. Here, unlike in *Pinkett,* Chase satisfies all the prerequisites for liability: it is a "financial institution" that "required consumers to establish an account..." Plaintiffs have therefore adequately stated a claim Chase violated the EFTA.

### 3.   Plaintiffs Adequately State a Claim for Unjust Enrichment

Chase argues that Plaintiffs cannot state an unjust enrichment claim because, as a matter

of law, there is nothing "unjust" about Chase retaining Plaintiffs' juror fees. Chase makes several arguments in support, which all essentially boil down to, "The government told us to do it." None are availing.

For example, Chase argues its retention of benefits is just here because the government, not Chase, "decided to disburse juror funds via debit card." (Mot. at 13.) But again, who "decided to disburse juror funds via debit card" is a question of fact not appropriate for resolution now. And even assuming, *arguendo*, the truth of Chase's factual argument, it does not matter for purposes of unjust enrichment who made the decision to distribute the cards—what matters is who reaped the benefit. "A claim of unjust enrichment does not require fault on the part of the recipient of the benefit. His innocence in receiving the benefit does not mean that his retention of that benefit without payment is just." *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 56 (D.C. 1992). Thus, regardless of who instigated the Debit Card program, Chase is the one that benefitted from it. Equity requires Chase to return these ill-gotten funds to Plaintiffs.

Chase also claims that Plaintiffs "consented" to the fees charged by Chase, which Chase further asserts were transparently and straightforwardly conveyed. But the Complaint alleges the exact opposite. (*See* Compl. ¶¶ 1, 103, 128, 147, 160 (alleging Plaintiffs did not consent to the fees); *see also id.* at ¶¶ 25, 74, 79, 89, 90, 93, 103, 143, (alleging Chase makes it nearly impossible for Plaintiffs and the Class to access their funds without incurring fees).) Plaintiffs allege they were forced into a one-sided relationship with Chase that did not involve any consumer negotiation or, importantly, choice. (*Id.* at ¶¶ 37-41.) Chase cannot with a straight face argue consent under those circumstances.[16] Similarly, Plaintiffs' Complaint clearly outlines the

---

[16] Chase cites *Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 443 (D. Minn. 2012), but in *Brown*, the court merely held an "ATM user's explicit agreement to continue the transaction and accept a fee after an on-screen notice is sufficient to form a contract" and thus the claim for unjust

numerous ways Chase's disclosures were deceptive and misrepresented the Debit Cards as "FREE." (*Id.* at ¶¶ 94-102.) Moreover, Chase's factual assertions are completely unsupported by the record and improper prior to discovery.

Finally, Chase contends its retention of benefits is not unjust as a matter of law because Plaintiffs "were charged pursuant to a lawful agreement between the federal government and [Chase]." (Mot. at 15.) But whether or not the government authorized the fees is not dispositive of whether they were just to impose on *Plaintiffs* in the context and under the circumstances alleged. Plaintiffs never consented to receiving payment via debit card, or to the fee schedule. (Compl. ¶ 8.) *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 257 (D.D.C. 2015) ("To the extent that [Plaintiff] alleges that Defendants charged her more than they were authorized by her or by D.C. law, she has plausibly stated that Defendants' retention of the unauthorized portion of her premium payments was unjust."). And as discussed above, Chase made it prohibitively difficult for consumers to obtain the funds to which they were statutorily entitled by purposefully and deceptively the fees it charged, all the while representing its Debit Cards as "FREE." *See* Sec. IV(C)(1).

Chase's cited cases are not persuasive. In *Mickelson v. Cnty of Ramsey*, No. 13-cv-2911, 2014 WL 4232284 (D. Minn. Aug. 26, 2014), the plaintiff challenged the County's practice of charging a $25 booking fee, and then returning the booking fee via a prepaid card. But in *Mickelson*, "[t]he booking fee [wa]s imposed *pursuant to Minnesota law*" *id*. at *1, whereas here, the debit card fees are imposed directly *contrary* to both D.C. and federal law. Moreover, unlike in *Mickelson*, the fees associated with the Debit Cards here do not go to a government entity to

---

enrichment would be dismissed. *Id.* Here, Chase does not and cannot argue it had a valid contract with consumers.

offset administrative costs. Instead, all fees are collected by Chase, kept by Chase, and used to line Chase's own pockets to the detriment of jurors. (Compl. ¶ 6.)

Chase's reliance on *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011), is also misplaced. Chase argues in two sentences that to the extent it is responsible for setting the fee schedules, it is permitted to do so by the National Bank Act ("NBA"), and that the NBA preempts Plaintiffs' state laws claims. (Mot. at 14.) But *Baptista*, and other courts finding preemption, have done so only in the context of state statutes specifically targeted at national banks. *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ. 9551 (LTS)(GWG), 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("In contrast to findings of federal preemption in cases involving specific state regulations that *conflict* with the NBA, causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted.") (emphasis added).[17] "State laws of general applicability, however, have been found not to be preempted." *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1311 (S.D. Fla. 2010). Here, Plaintiffs are not seeking to enforce a state law specifically targeted at national banks. And Plaintiffs' claims have no bearing on Chase's ability to "engage in the business of banking." *See id.* at 1310.[18] Chase's conclusory preemption argument should therefore be rejected.

### 4.    Plaintiffs Adequately State a Claim for Conversion

Chase raises two arguments in attempting to rebut Plaintiffs' conversion claim: 1) Chase's retention of juror fees was not "unlawful" because the FAA purportedly authorized the

---

[17] *See also Jefferson v. Chase Home Fin.*, No. C 06-6510 TEH, 2008 WL 1883484, at *12-14 (N.D. Cal. Apr. 29, 2008) (holding that general consumer protection laws to bring advertising-based claims against a national bank was not preempted by federal banking law and regulations).
[18] Unlike Plaintiffs here, the plaintiff in *Baptista* "agreed to the fee" and later brought the suit contesting it.  *Baptista*, 640 F.3d at n.3.

fees charged; and 2) Chase does not have "ownership, dominion or control" over Plaintiffs' funds. Chase is wrong on both counts.

First, the FAA—to the extent it is admissible—does not authorize Chase to violate state or federal law. It says the opposite. *See supra*, at Sec. IV(B)(1). Chase again cites to *Mickelson* for the proposition that the possession of the jurors' money is lawful. But again, in *Mickelson*, the state statute explicitly authorized the imposition of booking fees. Here, the statute says no such thing.[19]

Second, Chase has "ownership, dominion or control" over Plaintiffs' funds. The funds taken from Plaintiffs due to the excessive and unavoidable fees charged by Chase are undeniably in Chase's possession. (Compl. ¶¶ 127-128); *see also In re TD Bank, N.A. Dep't Card Overdraft Fee Litig.*, 150 F. Supp. 3d 593, 630 (D.S.C. 2015) ("[P]laintiffs may bring a conversion claim for fees that are alleged to have been wrongfully assessed"); *see also*, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323 ("[A] conversion action is available for a bank's wrongful debiting of funds from a customer's account."). Additionally, the "rump balances" are essentially in the "ownership, dominion, or control" of Chase as well. Plaintiffs allege Chase has created a system that ensures rump balances are ultimately transferred to Chase. (Compl. ¶¶ 1, 18, 22, 24-25, 66, 81-87.) This is an "intentional exercise of dominion or control" which "seriously interferes with the right of another to control [these funds]." *See Johnson v. McCool*, 808 F. Supp. 2d 304, 308 (D.D.C. 2011).[20]

---

[19]   Chase also cites to *Cadet v. Draper & Goldberg, PLLC*, No. 05-cv-2105, 2007 WL 2893418 (D.D.C. Sept. 28, 2007.  In *Cadet*, however, the plaintiffs entered into Memorandum of Sale with the defendants, expressly allowing for the forfeiture of their deposit in the event of default. *Id.* at *13. By contrast, here, Plaintiffs have not entered into a contract with Chase; indeed, there has been no mutual consent among the parties on any term here. Thus *Cadet* does not apply.

[20]   *Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) is not relevant here. There, the plaintiff alleged the defendants converted his interest in a patent by assigning that interest to a third party

5.      **Plaintiffs Adequately State a Claim under The Consumer Protection Acts of 49 States**

Finally, under the guise of standing, Chase seeks dismissal of the uniform claims of proposed class members residing in other states. (Mot. at 18.) Chase's argument is premature.[21] Numerous courts have held that is it more appropriate to decide class certification first, followed by any Article III challenges. *See, e.g, Jepson v. Ticor Title Ins. Co.*, No. C06-1723 JCC, 2007 WL 2060856, at *1 (W.D. Wash. May 1, 2007); *Hydroxycut Mktg. & Sales Practices Litig. v. Iovate Health Scis. Group, Inc.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06 MD 1739(SWK)(MHD), 2006 WL 3039993 (S.D.N.Y. Oct. 25, 2006); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 377 (E.D.N.Y. 2010); *In re Auto. Parts Antitrust Litig.*, No. 12–md–02311, 2013 WL 2456013, at *55 (E.D. Mich. June 6, 2013); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D. N.J. 2009).[22]

D.      **The Complaint Should Not Be Dismissed For Failure to Join Indispensable Parties**

Chase seeks to shift the blame in this case onto the government not because the

---

without his consent. *Id.* at 963. Ultimately, the Court determined that it could not be inferred that plaintiff's patent rights were assigned or conveyed and thus the claim for conversion had to be dismissed. *Id.* at 964. In contrast, here, Plaintiffs have sufficiently alleged that their funds have indeed been taken and/or made inaccessible by Chase because of the excessive and unconscionable Debit Card fee structure.

[21] Chase's argument that Plaintiffs did not spell out each jurisdiction where Chase issues jury payments on Debit Cards should be rejected. Chase knows exactly in which states it issues jury payments on Debit Cards; Fed. R. Civ. P. 8(a)(2) does not require such specificity. ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").

[22] Plaintiffs recognize that the court in *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 36 (D.D.C. 2008), did the opposite and dismissed causes of action under the state laws where the plaintiffs did not reside. But other courts have certified multistate classes without representatives from each state. *See, e.g.*, *Mazzanti v. Gen. Elec. Co.*, No. 3:13CV1799 (WWE), 2017 WL 923905, at *1 (D. Conn. Mar. 7, 2017); *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 252 F.R.D. 83, 104 (D. Mass. 2008).

government is actually at fault here, but for strategic purposes. Chase wants the government to be a "required" party not so that this litigation may be fairly and adequately resolved against all parties with an interest in the case, but so that this action is dismissed under the auspices of sovereign immunity. The Court should reject Chase's gamesmanship.

### 1.     Legal Standard

"The burden is on the moving party to demonstrate that an absent party is required under Rule 19." *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13, 24 (D.D.C. 2012) (citing *Ilan–Gat Engineers, Ltd. v. Antigua International Bank,* 659 F.2d 234, 242 (D.C.Cir.1981)). This burden is a high one. As the D.C. Circuit has explained, "[a] decision under Rule 19 '*not* to decide' a case otherwise properly before the court is a power to be exercised only "[i]n rare instances." *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 465 (D.C. Cir. 2017). Further, "[t]he inquiry is a practical one and fact specific, and is designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (internal citation omitted). For this reason, joinder decisions "may properly be deferred if adequate information is not available at the time." Fed.R. Civ. P. 19, advisory comm. notes (1966).

Whether a "required party" must be joined involves a three-part analysis. *Direct Supply, Inc.*, 878 F. Supp. 2d at 24. <u>First</u>, the Court must determine whether an absent party is, in fact, a "required party." *Id*. There are two bases for concluding a party is "required" under Rule 19(a)(1). Chase focuses solely on the second,[23] which confers "required" status on an absent party if:

---

[23] The first basis is whether "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Here, there is not dispute that the Court can accord complete relief among the parties as Chase does not argue otherwise.

(B)   that person claims an interest relating to the subject of the action
*and* is so situated that disposing the action in the person's
absence may:

(i)   as a practical matter impair or impede the person's ability to
protect the interest; *or*,

(ii)  leave an existing party subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations because of
the interest."

Fed. R. Civ. P. 19(a)(1)(B) (emphasis added).

Second, even if an absent party is "required," the Court must determine if they can be

joined. *Direct Supply, Inc.*, 878 F. Supp. 2d at 24. Third, if the absent party cannot be joined, the

Court must determine whether the action may still proceed in equity and in good conscience. *Id.*

Each of these questions should be answered in Plaintiffs' favor. Rule 19 thus does not

provide a basis for dismissal here.

## 2.   D.C. and the Treasury Do Not Have a Legally Cognizable Interest Relating to the Subject of the Action

As a threshold matter under 19(a)(1)(B), an absent party must claim a legally cognizable

interest relating to the subject of the action. There is none here.

Chase argues that the Treasury and D.C. have an interest in this litigation because they

"made a policy determination about how to provide jurors funds for their service" and "elected to

operate the debit card program on specific terms." (Mot. at 9.) But again, *what* decision was

made, *who* made it, *how*, and *why*, are factual issues not properly before the Court. To the extent

these issues are relevant, the Court should defer any ruling until after discovery. Moreover,

Chase fails to explain how a "policy determination" is a legally cognizable interest under Rule

19. *See Direct Supply, Inc., LLC*, 878 F. Supp. 2d at 24 (D.C. was not a required party when the

defendant did not articulate why D.C. had a legally protected interest beyond a conclusory

statement.). Chase also argues that any determination "that the government was somehow legally

prohibited from paying jurors by debit card (rather than check or cash)" would run counter to the government's legally cognizable interest. (Mot. at 9.)

But a legally protected interest is "not merely a financial interest or interest of convenience." *Mikulay Co. v. Urban Mass Transp. Admin.*, 90 F.R.D. 250, 252 n.2 (D.D.C. 1980). And "a mere claim that a non-party has acted illegally is insufficient to create an 'interest' in the non-party under Rule 19(a)(2)." *Hite v. Leeds Weld Equity Partners, IV, LP*, 429 F. Supp. 2d 110, 116 (D.D.C. 2006) (citing cases). Moreover, presumably the government does not have an "interest" in violating federal law. *See* 12 C.F.R. § 1005.10(e)(2); *see also supra at 15*.

Nor do the facts otherwise give rise to an interest that triggers Rule 19(a). "This is a case seeking damages against an agent for its own wrongful acts." *Rochester Methodist Hosp.*, 728 F.2d at 1012. Plaintiffs seek no recovery from either the Treasury or D.C. *See FHM Constructors, Inc. v. Vill. of Canton Hous. Auth.*, 779 F. Supp. 677, 686 (N.D.N.Y. 1992) (HUD was not a required party when Plaintiffs sought no recovery from HUD); *Carr v. D.C.*, 371 F. Supp. 293, 296 (D.D.C. 1974), *aff'd and remanded,* 521 F.2d 324 (D.C. Cir. 1975) (The federal government was not a required party in an action against D.C. in part because the funds at stake in the action would not be satisfied from United States funds). Nor does Plaintiffs' Complaint even mention the FAA or the MOU. There is no reason why Plaintiffs' Complaint implicates either of these two agreements, and thus no reason why either the Treasury or D.C. needs to be joined *See Milwaukee Cty. Pavers Ass'n v. Fiedler*, 731 F. Supp. 1395, 1407 (W.D. Wis. 1990), *aff'd*, 922 F.2d 419 (7th Cir. 1991) (Federal government was not an indispensable party when Plaintiffs challenged Wisconsin's implementation of federal legislation, not the federal legislation itself).

To the extent D.C. has also violated the law, as Chase claims, by not giving jurors an option as to how to receive their funds, D.C. and Chase are joint tortfeasors, which are not considered indispensable parties under federal law." *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir. 1983); *see also Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). "The same principle typically adheres to the agent/principal relationship." *Charest v. Fed. Nat. Mortg. Ass'n*, 9 F. Supp. 3d 114, 134 (D. Mass. 2014); *see also* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1623 (3rd ed. 2013) ("joinder has not been required of principals and agents") (collecting cases); *Direct Supply, Inc.*, 878 F. Supp. 2d at 24 ("There is no general rule that a party is required to be joined under Rule 19 based merely upon affiliations."). Co-conspirators are not indispensable parties, either. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 330 (1955).

Finally, *Boles v. Greeneville Housing Auth.*, 468 F.2d 476, 479 (6th Cir. 1972), is not dispositive here. In *Boles*, the plaintiff argued a Greenville Housing Authority urban renewal plan approved by HUD violated HUD's own guidelines. Because resolution of that question involved HUD's interpretation of its own guidelines, the Sixth Circuit held HUD was an indispensable party. As one district court noted in distinguishing this case, the decision "was based partly on the court's unwillingness to find that HUD had misinterpreted its own guidelines without giving HUD an opportunity to defend itself." *FHM Constructors, Inc.*, 779 F. Supp. at 685. Here, the Court is not required to interpret any Treasury or D.C.-issued guidelines. The only relevant question here is whether *Chase's* conduct violated several distinct statutory rights and duties—the Treasury and D.C. are simply not required for that analysis.

**3.     Even if the Treasury or D.C. Had An Interest In This Action, Their Absence Will Not Impair or Impede Their Ability to Protect That Interest Because Chase Has the Same Interests and Will Thus Adequately Defend Any Such Interest**

Even if the Treasury or D.C. had an interest in this litigation (they do not), Chase will more than adequately protect the interests of both because their interests are aligned. Under such circumstances, courts find that absent parties' interest will not be impeded or impaired. *See Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996), *amended* (Aug. 6, 1996) ("If the nonparties' interests are adequately represented by a party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered 'necessary.'"); *Mikulay*, 90 F.R.D. at 253 (The City of Minneapolis was not a required party because the City's interest "can be adequately protected by the defendants, whose position in this action is not inconsistent with that which would be taken by the City."); *Coal. on Sensible Transp., Inc. v. Dole*, 631 F. Supp. 1382, 1386 (D.D.C. 1986) (The State of Maryland was not an indispensable party in part because the similarly of interests between the defendants "obviates any serious possibility of prejudice"); *Ransom v. Babbitt*, 69 F. Supp. 2d 141, 148 (D.D.C. 1999) ("[W]hatever interests the Constitutional Government might have in this case will find adequate representation by Defendants."); *Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 541 (D.D.C. 2014) (same).

**4.     Chase Will Not Be Exposed to a "Substantial Risk of Incurring Double, Multiple, or Otherwise Inconsistent Obligations" if the Treasury and D.C. are Not Joined**

The resolution of this action will also not expose Chase to "inconsistent obligations," as contemplated by Rule 19. The paradigmatic case for joinder is the adjudication of real property rights—not contract disputes. *See generally MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006). "[I]nconsistent *obligations* occur when a party is unable to

comply with one court's order without breaching another court's order concerning the same incident[.]" *In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8, 14 (D.D.C. 2012) (emphasis added). No "other" court order exists here that could possibly create an inconsistent obligation, nor are speculative claims of inconsistent obligations cognizable. *See In re Torcise*, 116 F.3d 860, 866 (11th Cir. 1997).

Contractual obligations to non-parties are not the "inconsistent obligations" courts typically find compel joinder. In *MasterCard.*, for example, the Second Circuit held Visa was not a necessary party in a suit that alleged FIFA breached an exclusive sponsorship agreement with MasterCard when it granted those same rights to Visa. 471 F.3d at 388 The Court held that "[w]hether Visa is or is not a party in the underlying lawsuit, FIFA and Visa will litigate *their* dispute under *their* contract later on down the road if MasterCard prevails here." *Id.* If Plaintiffs prevail here, Chase can litigate its contractual dispute—if there is one—with the government later on down the road. *See also Winn-Dixie Stores, Inc. v. Dolgencorp, LLC,* 746 F.3d 1008, 1040 (11th Cir. 2014) ("[W]here two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages.").

Moreover, as a matter of fact, there is nothing in the FAA that could result in inconsistent obligations to Chase. Chase does not identify a single obligation contained in the FAA that is inconsistent with the relief Plaintiffs seek, and the Court should not speculate on the matter.[24]

---

[24] Chase cites *Bridges v. Blue Cross & Blue Shield Ass'n*, 889 F. Supp. 502, 504 (D.D.C. 1995). But in that case, federal employees sued their health insurer, alleging a conspiracy to rack up prices. The court held the Office of Personnel Management was a required defendant in part because OPM had the final authority in its contract with Blue Cross to select and implement plan benefits. Here, the FAA indicates the opposite. Chase has the final authority over the fees on the card, not the government. (*See* FAA, Ex. C at 1 ("FMS may request the Financial Agent to

*See Mikulay*, 90 F.R.D. at 253 ("The defendants do not suggest how they might be subject to inconsistent relief or multiple litigation, and the Court declines to speculate on the matter."); *TRT Telecomm. Corp. v. W. Union Tel. Co.*, No. CIV. A. 87-2760, 1988 WL 19259, at *2 (D.D.C. Feb. 17, 1988) (denying motion to dismiss under Rule 19(b) because "Defendant's risk of incurring multiple obligations remains wholly speculative and unsubstantiated.").

The FAA is a generalized agreement authorizing Chase "to provide debit card services to Federal agencies" which D.C. decided to use to administer juror fees. (FAA at 1.)  And the MOU states only that Chase will "provide U.S. Debit Card program products and services to the D.C. Courts." (Levine Dec., Ex. 2 at 1.) Chase can simultaneously comply with its duties under the contract and under the law by, *inter alia*, providing jurors with a choice of how to receive their funds, eliminating some of the fees for use of the card, and/or providing clearer disclosures. There is no risk of Chase incurring inconsistent obligations here.

> **5.      Even if D.C. or the Treasury Are Required Parties, Joinder Is Feasible**

Even if this Court were to hold that the Treasury and D.C. are required parties under Rule 19(a)(1)(B), joinder of each is feasible. Chase assumes the Treasury and D.C. would be entitled to sovereign immunity, but the Court has discretion in fashioning relief. "Neither a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded. The court may grant judgment to one or more plaintiffs according to their rights, and against one or more defendants according to their liabilities." Fed. R. Civ. P. 20(a)(3).

With respect to D.C., Plaintiffs may sue D.C.[25] for injunctive and declaratory relief for

---

reconsider its fee schedule for a particular program . . . but Financial Agent is under no obligation to modify its fees.").)

[25] Or more precisely, the D.C. employee responsible for administering juror fees, in his or her official capacity.

violating D.C. Code Ann. § 15-718 and 15 U.S.C. § 1693. *See generally Ex parte Young*, 209

U.S. 123, 190 (1908); *see also Vann v. U.S. Dep't of Interior*, 701 F.3d 927, 930 (D.C. Cir. 2012)

(Cherokee Nation, which enjoys sovereign immunity, was not a required party when Principal

Chief was sued in his official capacity under *Ex Parte Young*).

Additionally, Plaintiffs could bring a due process claim against both the Treasury and

D.C. under the Fourth and Fourteenth Amendment respectively for deprivation of their juror

fees. "The hallmark of property ... is an individual entitlement grounded in state law, which

cannot be removed except 'for cause.'" *Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005).

"In other words, state-created property rights are protected by due process of law." *Id.* Here, the

Treasury and D.C. interfered with the Plaintiffs' and the Class' property rights, as guaranteed to

them under D.C. Code Ann. § 15-718, without due process of law. There is thus nothing

stopping Plaintiffs from suing either the Treasury or D.C.

### 6.     The Interests of Justice Weigh Against Dismissing the Complaint

Finally, even in the unlikely scenario that this Court determines the Treasury and D.C.

are required parties and cannot be joined in this action, in equity and good conscience the action

should proceed among the existing parties. Several factors counsel toward continuing the action

even in the absence of the Treasury and D.C.[26]

---

[26] Chase argues the 19(b) factors are "not pertinent" under *Republic of Phil. v. Pimentel*, 553 U.S. 851, 871 (2008). (Mot. at 11.) Chase goes too far. *Pimental* held the Court of Appeals incorrectly applied the 19(b) factors, not that they are inapplicable to all cases involving a sovereign entity. Indeed, in *Pimental* the Court went through each 19(b) factor one by one and determined the Republic the Philippines was indispensable to the action, and immune from suit under the Foreign Sovereign Immunities Act. *Kickapoo Tribe of Indians of Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1493 (D.C. Cir. 1995), too, goes through the four 19(b) factors, while admitting that the inquiry is "more circumscribed" when the inquiry involves a necessary party immune from suit. But in that case, unlike this one, the State of Kansas was a required party because the subject of the suit was the validity of a contract between the Tribe and the Governor of Kansas. Any decision by the Court regarding the enforceability of

First, the absent parties will not be prejudiced if they are not included in the action. *See supra* at Sec. IV(D)(3). Second, prejudice could be lessened or avoided by shaping the relief in a way that impacts only Chase; e.g. *Chase* could be required to provide clearer disclosures, *Chase* could be required to provide the option to jurors to receive their money via check. None of these avenues of relief would affect the government. Third, for these same reasons, a judgment without the government would be adequate. Finally, should this action be dismissed, Plaintiffs would have no other adequate remedy.[27] *See Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271, 275–76 (D.D.C. 1985), *aff'd,* 835 F.2d 305 (D.C. Cir. 1987) ("The fact that dismissal of plaintiff's claims for relief in this court would effectively foreclose plaintiff from relief elsewhere outweighs the more speculative harm to the absent parties."); *see also Rochester Methodist Hosp.*,728 F.2d at 1017 (Treating HHS as indispensable "would be completely inconsistent with equity and good conscience).

## V.   Conclusion

For the foregoing reasons, Chase's Motion to Dismiss should be denied.

---

the contract necessarily would affect or impair the State's interest. Here, there is not a similar concern. Plaintiffs do not bring suit under the FAA or MOU.

[27] This fact distinguishes this case from at least two of Chase's cited cases. In *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1280 (D.C. Cir. 1983), the D.C. Circuit affirmed the district court's dismissal under Rule 19 when joinder meant the plaintiffs were simply required to pursue their cause of action in D.C. Superior Court rather than D.C. District Court. Here Plaintiffs have no such alternative forum. Likewise, in *Two Shields v. Wilkinson*, 790 F.3d 791, 798 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 695, 193 L. Ed. 2d 521 (2015), the Eighth Circuit affirmed dismissal based on failure to include the United States as a required party when the plaintiffs had an action for damages pending against the United States in the Court of Federal Claims, causing the court to conclude, "it appears [plaintiffs] will have an adequate alternate remedy" even if the Complaint is dismissed. *Id.*

Dated: May 17, 2017                         Respectfully submitted,

/s/ Anna Haac
ANNA HAAC (SBN 181547)
*ahaac@tzlegal.com*
SOPHIA GOREN (SBN 1044723)
*sgoren@tzlegal.com*
JEFFREY KALIEL (SBN 983578)
*jkaliel@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950

DONALD J. ENRIGHT (SBN 013551)
*denright@zlk.com*
**LEVI & KORSINSKY, LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567

ROSEMARY M. RIVAS (*pro hac vice*)
*rrivas@zlk.com*
QUENTIN A. ROBERTS (*pro hac vice*)
*qroberts@zlk.com*
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94111
Tel: (415) 291-2420
Fax: (415) 484-1294

*Attorneys for Plaintiffs*

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7(f), Plaintiffs respectfully request an oral hearing on Defendant's Motion to Dismiss.