**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILLIAM MARK SCOTT and RONALD MORIN, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Civil Action No. 1:17-CV-00249 |
| JPMORGAN CHASE BANK, N.A., | Honorable Amit P. Mehta |
| *Defendant.* | |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF THE CLASS
ACTION SETTLEMENT, CERTIFICATION OF THE PROPOSED SETTLMENT
CLASS, AND ENTRY OF THE PROPOSED FINAL APPROVAL ORDER**

Plaintiffs William Mark Scott and Ronald Morin ("Plaintiffs" or "Class Representatives"), individually and on behalf of the proposed Settlement Class, respectfully submit this motion requesting this Court to grant final approval of the Settlement Agreement, certify the proposed Settlement Class, and enter the Proposed Final Approval Order ("Motion").

Plaintiffs have met and conferred with Defendant regarding the relief requested in the Motion, and Defendant does not oppose the same.

In support of this request, Class Counsel respectfully submits the Memorandum of Points and Authorities incorporated below, as well as the enclosed Declaration of Annegret Preschel in Support of Motion for Final Approval ("Epiq Decl.") (Exhibit 1) and exhibits thereto, and a Proposed Final Approval Order (Exhibit 2).

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    Procedural History ................................................................................. 2

    B.    Summary of Settlement Terms ............................................................. 3

    C.    Preliminary Class Certification and Notice ........................................ 4

        1.    Class Certification ..................................................................... 4

        2.    Class Notice ............................................................................... 5

            a. Direct Mail Notice ............................................................... 5

            b. The Settlement Website and Toll-Free Settlement Phone Line ........ 6

            c. Settlement Class Members' Payments ................................. 6

    D.    Class Representatives' Service Awards and Class Counsel's Attorneys' Fees and Costs ................................................................................................................ 7

THE COURT SHOULD GRANT FINAL APPROVAL ................................................... 7

    A.    Legal Standard ...................................................................................... 7

    B.    The Settlement is the Product of Arm's-length Negotiations by Experienced Settlement Class Counsel ................................................................................ 9

    C.    The Settlement Provides Full Recovery of Actual Damages by Settlement Class Members Notwithstanding Potential Risks of Continued Litigation ................... 11

    D.    Class Counsel Had Sufficient Information to Make a Reasonable Assessment of the Risks of Litigation and to Evaluate the Settlement ........................................ 13

    E.    Experienced Settlement Class Counsel Believe that the Proposed Settlement is Fair, Reasonable, and Adequate and that the Settlement Provides Excellent Relief for Settlement Class Members ............................................................................... 15

    F.    The Reaction of the Class to Date has been Positive ........................... 16

CONCLUSION ................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Citizens for a Better Env't v. Gorsuch,*
  718 F.2d 1117 (D.C. Cir. 1983) ................................................................................... 7

*Hardy v. District of Columbia,*
  49 F. Supp. 3d 48 (D.D.C. 2014) ................................................................................. 9

*In re Baan Co. Sec. Litig.,*
  284 F. Supp. 2d 62 (D.D.C. 2003) .............................................................................. 12

*In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.,*
  4 F. Supp. 3d 94 (D.D.C. 2013) .................................................................................. 12

*In re Lorazepam & Clorazepate Antitrust Litig.,*
  205 F.R.D. 369 (D.D.C. 2002) ......................................................................... 8, 11, 13

In re Nat'l Student Marketing Litig.,
  68 F.R.D. 151 (D.D.C. 1974) .............................................................................. 8, 9, 16

*In re Vitamins Antitrust Litig.,*
  305 F. Supp. 2d 100 (D.D.C. 2004) ................................................................. 7, 8, 9, 15

*In re Vitamins Antitrust Litig.,*
  No. 99-197, 1999 WL 1335318 (D.D.C. Nov. 23, 1999) ........................................... 13

*Luevano v. Campbell*,
  93 F.R.D. 68 (D.D.C. 1981) ................................................................................ 13, 16

*Mayfield v. Barr,*
  985 F.2d 1090 (D.C. Cir. 1993) .................................................................................... 8

*McGuinness v. Parnes,*
  1989 WL 29814 (D.D.C. Mar. 22, 1989) ..................................................................... 9

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
  565 F. Supp. 2d 49 (D.D.C. 2008) ............................................................................... 9

*Moore v. National Assoc. of Sec. Dealers, Inc.*,
  762 F.2d 1093 (D.C. Cir. 1985) ................................................................................... 9

*Osher v. SCA Realty I, Inc.*,
  945 F. Supp. 298 (D.D.C. 1996) ........................................................................ 8, 9, 16

*Pray v. Lockheed Aircraft Corp.*,
  644 F. Supp. 1289 (D.D.C. 1986) ............................................................. 9

*Radosti v. Envision Emi, LLC*,
  717 F. Supp. 2d 37 (D.D.C. 2010) ...................................................... 8, 13

*Stewart v. Rubin*,
  948 F. Supp. 1077 (D.D.C. 1996) ............................................... 9, 15, 16

*Thomas v. Albright*,
  139 F.3d 227 (D.C. Cir. 1998) ............................................................ 8, 9, 16

*Trombley v. Nat'l. City Bank*,
  826 F. Supp. 2d 179 (D.D.C. 2011) ............................................. 12, 13, 14

*United States v. District of Columbia*,
  933 F. Supp. 42 (D.D.C. 1996) ............................................................. 7

*Vista Healthplan, Inc. v. Warner Holdings Co., III, Ltd.*,
  246 F.R.D. 349 (D.D.C. 2007) ............................................................. 11

**Rules**

Fed. R. Civ. P. 23 ............................................................................................. 7

**Treatises**

*Newberg on Class Actions* (4th ed. 2002) .......................................... 9

## INTRODUCTION

William Mark Scott and Ronald Morin ("Plaintiffs" or "Class Representatives"),
individually and on behalf of the proposed Settlement Class,[1] respectfully submit this
Memorandum of Points and Authorities in Support of their Unopposed Motion for Final
Approval of the Class Action Settlement, Certification of the Proposed Settlement Class, and
Entry of the Proposed Final Approval Order. The Court preliminarily approved the proposed
settlement reached by the parties in this action, and approved the parties' proposed Class Notice
program. (Dkt. 38.) Class Notice was then disseminated to the Settlement Class as directed by
the Court. Final approval of this Settlement is now appropriate because the proposed Settlement
Agreement is an excellent settlement that is the product of arm's-length negotiations, and is fair,
reasonable, and adequate.

The Settlement includes: (1) automatic reimbursement in full of any fees paid by
Settlement Class Members in connection with their use of certain juror and fact witness debit
cards issued by JPMorgan Chase Bank, N.A. ("Chase" or "Defendant"); (2) an agreement by
Chase not to charge any further fees on these debit cards; (3) remittance of checks to Settlement
Class Members reflecting all remaining balances; (4) an additional estimated $274,610.72 in notice
and administration costs; and (5) direct U.S. Mail notice to Settlement Class Members. The
Settlement meets all factors this Court considers at final approval. It is the result of arm's-length
negotiations, provides significant substantive recovery to the Settlement Class Members, which Class
Counsel believes is fair and adequate, includes a comprehensive and effective Notice Program, and

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Settlement
Agreement.

the reaction of the Settlement Class to date has been positive, with no objections and only three opt-outs.

Plaintiffs thus respectfully urge the Court to grant final approval of the Settlement Agreement.

## BACKGROUND

**A.  Procedural History**

A full discussion of the history of the litigation is included in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval") (Dkt. 37) and Plaintiffs' Unopposed Motion for Attorney Fees filed herewith. A brief summary of that history is provided below for the Court's convenience.

On February 7, 2017, Plaintiff Scott filed a class action lawsuit in this Court against JPMorgan Chase & Co., the parent company of now Defendant JPMorgan Chase Bank, N.A., alleging a deceptive and unlawful scheme to deprive jurors of their full payments for jury service in connection with debit cards issued by Chase for use by court systems in multiple jurisdictions to pay persons for their jury service (the "*Scott* Action"). (Dkt. 1.) Plaintiff Scott alleged that these Juror Debit Cards were deceptive and loaded with excessive and unreasonable fees that made it nearly impossible for jurors to fully consume the funds to which they were statutorily entitled. (*Id.*) On March 3, 2017, Plaintiff Ronald Morin filed a similar class action (the "*Morin* Action"). *See Morin v. JP Morgan Chase & Co.*, Case No. 1:17-cv-00387-APM (D.D.C.).

On March 29, 2017, Plaintiffs filed an unopposed motion to consolidate the *Scott* and *Morin* Actions (the "Consolidated Action") and for appointment of Lead Counsel. (Dkt. 14.) On April 3, 2017, the Court granted the motion to consolidate, appointing Tycko & Zavareei LLP and Levi & Korsinsky LLP as Interim Co-Lead Counsel for Plaintiffs in the Consolidated Action. (Dkt. 15). On May 3, 2017, then-Defendant JPMorgan Chase & Co. filed a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 18.) Plaintiffs opposed that motion. (Dkt. 21.) The Court held a hearing on the motion on September 29, 2017.

On October 30, 2017, the Court issued an order denying the motion with respect to its claim of derivative sovereign immunity in order to allow the parties to engage in limited discovery on that issue. (Dkt. 27 at 14.) Although the parties thereafter issued formal discovery requests directed to the question of whether Defendant was entitled to derivative sovereign immunity, the parties engaged in settlement negotiations and conducted informal discovery in an attempt to reach a resolution of this matter and avoid costly and protracted litigation. (Declaration of Anna Haac in Support of Motion for Preliminary Approval ("Haac PA Decl.") ¶¶ 6-8, 10.) On January 19, 2018, the parties reached an agreement in principle on a proposed settlement, which they finalized in the form of the Settlement Agreement on April 19, 2018.

On April 20, 2018, Plaintiffs filed their Motion for Preliminary Approval. (Dkt. 37.) Pursuant to the Settlement Agreement, Plaintiffs also simultaneously filed an Amended Consolidated Complaint substituting JPMorgan Chase Bank, N.A. as defendant. (Dkt. 36.) On April 24, 2018 this Court granted Plaintiffs' Motion for Preliminary Approval, conditionally certified the Settlement Class, and set various deadlines for notice and settlement proceedings, including a Final Fairness Hearing. (Dkt. 38.)

### B. **Summary of Settlement Terms**

As set forth more fully below, Plaintiffs achieved what they set out to do when filing this case initially. Settlement Class Members will automatically receive checks reflecting a full refund of any fees and surcharges paid in connection with their use of Juror or Fact Witness Debit Cards, as well as 100% of their outstanding balances. (Dkt. 37-1, Settlement Agreement ("Agreement") ¶¶ 44-45.) Chase has further agreed not to charge any additional fees on Settlement Class Members' Juror or Fact Witness Debit Cards and in fact, Chase no longer

issues such debit cards in any U.S. jurisdiction. (*Id.* ¶ 46.) In exchange for Chase's undertakings, Plaintiffs and the Settlement Class will provide Chase with a release of all claims that were or could have been alleged in the action. (*Id.* ¶¶ 71-73.) Final approval of the Settlement Agreement will result in the dismissal with prejudice of Plaintiffs' individual and class claims against Chase.

In addition to the complete relief afforded Settlement Class Members, the Settlement's robust notice and administration plan will ensure that the maximum number of Settlement Class Members receive the payments to which they are entitled. Direct mail notice was delivered to approximately 96% of Settlement Class Members, and checks will automatically be mailed to Settlement Class Members as set forth in the Settlement Agreement. (*Id.* ¶¶ 44-45, 69; Epiq Decl. ¶ 6.) There is no claim form. The notice program and distribution of settlement payments will be overseen by Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a reputable organization with deep experience in the field. (Agreement ¶ 35; Epiq Decl. ¶¶ 2-3.) Moreover, notice and administration costs are being paid by Chase separate and apart from any distributions to Settlement Class Members. (Agreement ¶ 48.)

Chase will also separately pay (subject to the terms of the Settlement Agreement and pending Court approval) Service Awards to Plaintiffs and an award of attorneys' fees and costs to Class Counsel. (*Id.*) The Parties did not agree on the amount of Class Counsel's attorneys' fees and costs or any potential Service Awards to Plaintiffs until after they agreed on all other Settlement terms. (Haac PA Decl. ¶ 10.)

**C. Preliminary Class Certification and Notice**

    **1. Class Certification**

On April 24, 2018, in granting Plaintiffs' Motion for Preliminary Approval, the Court also certified for settlement purposes the proposed class, finding that the prerequisites for a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure have been met.

(Dkt. 38.) No substantive change in fact or law warrants reconsideration of that order. For purposes of settlement only, Chase does not oppose class certification. Plaintiffs thus respectfully request that the Court finally approve the proposed Settlement Class and enter the [Proposed] Final Approval Order attached hereto as Exhibit 2.

### 2. Class Notice

The parties selected and the Court approved Epiq as the Settlement Administrator. (Dkt. 38 at ¶ 10; Agreement at ¶ 35.) As set forth in the Court's Preliminary Approval Order, Chase is paying for all notice program and settlement administration costs. (Agreement at ¶ 48.) This is an added benefit to the class as these costs will be paid separately from the monetary relief paid to the Settlement Class, as well as any payment of a service award to Plaintiffs or award of attorneys' fees and costs to Class Counsel.

After the Court granted preliminary approval of the settlement, Epiq began implementing the Class Notice plan, which provided the best notice practicable to Settlement Class Members. (*See* Epiq Decl. ¶¶ 4-8, 11.)

### a. Direct Mail Notice

Pursuant to the Settlement Agreement, Chase provided Epiq with a list of all members of the Settlement Class, including available mailing address information. (*See* Epiq Decl. ¶ 5.) Epiq then used the National Change of Address Database to update those addresses to the extent possible. (*Id*.) Starting on May 23, 2018, Epiq commenced disseminating direct mail notice to the over 168,000 Settlement Class Members for whom valid mailing address information was available. (*Id*. at ¶ 4.) In each case where Epiq subsequently received information indicating that initial notice was undeliverable, if Epiq was able to obtain an updated address for the Settlement Class Member from the U.S. Postal Service or a commercial provider of address information,

Epiq attempted to re-mail the notice to the Settlement Class Member at the updated address. (*Id.* at ¶ 5.) To date, this has resulted in 6,533 records being updated with new addresses and being re-mailed. (*Id.* at ¶ 6.) As a result of this process, the estimated percentage of successful mailings to the direct-mail notice population is 96% of the Settlement Class, or 163,096 Settlement Class Members for whom suitable addresses were available. (*Id.*)

      b.   <u>The Settlement Website and Toll-Free Settlement Phone Line</u>

In accordance with this Court's Preliminary Approval Order, Epiq also established a Settlement Website (<u>www.juryfeesettlement.com</u>) as a means for Settlement Class members to obtain notice of, and information about, the Settlement. (*Id.* ¶ 7.) The Settlement Website included an electronic and printable copy of the Long Form Notice, information about the litigation and the Settlement, and important Court documents and deadlines. (*Id.*) The Settlement Website was activated on May 25, 2018 and remains active. (*Id.*) The Settlement Website's URL was prominently displayed in all printed notice materials. (*Id.*) To date, the Settlement Website has received 1,743 page hits. (*Id.*)

Epic also activated and maintains a dedicated toll-free telephone line for the members of the Settlement Class to obtain additional information about the Settlement. (*Id.*) The toll-free number was prominently displayed in all printed notice materials and was operational as of May 25, 2018 and remains active to date. To date, Epiq has received a total of 426 calls. (*Id.*)

      c.   <u>Settlement Class Members' Payments</u>

As set forth in the Settlement Agreement, eligible Settlement Class Members will automatically receive their settlement benefit via a check in the mail upon final approval of the Settlement by this Court and occurrence of the Effective Date. (Agreement ¶¶ 69.)

**D. <u>Class Representatives' Service Awards and Class Counsel's Attorneys' Fees and Costs</u>**

The Court has already appointed Plaintiffs' counsel as Class Counsel to represent the Settlement Class. (Dkt. 38.) Chase will not oppose Class Counsel's request for reasonable attorneys' fees up to $335,000.00, which includes reimbursement of litigation costs and expenses. (*See* Agreement ¶ 47.) Chase will also not oppose a reasonable Service Award of $5,000 for Mark Scott and Ronald Morin in their role as class representatives ($10,000 total). (*Id.*) The amount of Service Awards, attorneys' fees, and costs Chase would pay was negotiated only after the principal terms and structure of relief for the Settlement Class were agreed upon, and will be paid by Chase separate and apart from the monetary relief available to the Settlement Class. (*Id.*; *see also* Haac PA Decl. ¶ 10.)

## <u>THE COURT SHOULD GRANT FINAL APPROVAL</u>

**A. <u>Legal Standard</u>**

Rule 23(e) provides for judicial approval of any compromise of claims brought on a class basis if the proposed class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *see also United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("'The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that there has been valid consent by the concerned parties.'") (quoting *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)). Approval of class action settlements is committed to the sound discretion of the district court. *See* Fed. R. Civ. P. 23(e); *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004).

In exercising this discretion, district courts are mindful of the strong judicial policy favoring settlements. *Id.* (expressing a "principle of preference" favoring and encouraging settlements); *Mayfield v. Barr*, 985 F.2d 1090, 1092 (D.C. Cir. 1993) (policy of encouraging settlements is particularly appropriate in class actions, which are often complex, protracted, and demanding of limited judicial resources). Indeed, "[t]he Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375 (D.D.C. 2002). "In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits." *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (internal citations omitted). Thus, while court approval is required in order to protect the interests of absent class members, courts assume a limited role when reviewing a proposed class action settlement. *In re Nat'l Student Marketing Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974). In ruling on a motion to approve a class action settlement, the Court is not required to undertake the "detailed and thorough investigation that it would undertake if it were actually trying the case." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 103 (internal citation omitted).

While there is no single test in this Circuit that courts use to determine whether the proposed settlement of a class action should be approved, courts consider the facts and circumstance of each case, identify the most relevant factors under the circumstances, and exercise their discretion in deciding whether the proposed settlement is "fair, adequate and reasonable." *Radosti v. Envision Emi, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (quoting *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998)). This inquiry may be performed by evaluating: (1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the

time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel.

*Hardy v. District of Columbia*, 49 F. Supp. 3d 48, 49-50 (D.D.C. 2014).[2] As discussed below,

this Settlement meets and exceeds all of the factors used to judge class action settlements in this

Circuit.

## B.  **The Settlement is the Product of Arm's-length Negotiations by Experienced Settlement Class Counsel**

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which

was negotiated at arm's-length by counsel for the class, is presented to the Court for approval."

*Newberg on Class Actions* § 11.41 (4th ed. 2002); *see also Meijer, Inc. v. Warner Chilcott*

*Holdings Co. III, Ltd.*, 565 F. Supp. 2d 49 (D.D.C. 2008) ("A presumption of fairness, adequacy,

and reasonableness may attach to a class settlement reached in arm's-length negotiations

between experienced, capable counsel after meaningful discovery.") (citing *In re Vitamins*

*Antitrust Litig.*, 305 F. Supp. 2d at 104). "Absent evidence of fraud or collusion, [class action]

settlements are not to be trifled with." *Osher*, 945 F. Supp. at 304 (internal citation omitted).

These presumptions apply here, where the Settlement Agreement was negotiated at arm's length

by Class Counsel well-versed in class actions. (*See, e.g.*, Haac PA Decl. ¶¶ 7-8, 10.)

Class Counsel are experienced litigators in both class action and other complex civil

litigation. (*See* Haac PA Decl. ¶ 19; Dkt. 14-3; 14-4; 15.) Class Counsel have successfully

handled national, regional, and statewide class actions throughout the United States in both

federal and state courts. (*Id.*) For nearly 18 years, Rosemary M. Rivas has dedicated her legal

---

[2] *See also In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 104-105 (citing *Thomas*, 139 F.3d 227; *In re Nat'l Student Marketing Litig.*, 68 F.R.D. at 155; *Osher*, 945 F. Supp. at 304; *Pray v. Lockheed Aircraft Corp.*, 644 F. Supp. 1289, 1290 (D.D.C. 1986); *Moore v. National Assoc. of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985); *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997); *McGuinness v. Parnes*, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989)).

career to representing consumers in complex, class action litigation involving unfair business practices, false advertising and defective product claims and has been influential in recovering millions of dollars on behalf of consumers. Ms. Rivas was recently appointed as Co-Lead Interim Counsel by the Honorable Michael Simon in the case titled, *In re Intel Corp. CPU Marketing, Sales Practices, and Products Liability Litig.,* Case No. 3:18-md-02828-SI (D. Or.). In a highly competitive application process, Judge Charles R. Breyer also appointed Ms. Rivas to the Plaintiffs' Steering Committee in *In re: Volkswagen "Clean Diesel" MDL*, Case No. 15-MDL-2672-CRB (JSC), which has resulted in unprecedented settlements exceeding $14 billion dollars. Based on her work in the Volkswagen matter, Ms. Rivas was honored with the 2018 California Lawyer of the Year (CLAY) Award. The CLAY awards are given annually to outstanding California practitioners "whose extraordinary work and cases had a major impact on the law."

Over the past ten years, Anna Haac has also gained substantial experience handling complex civil litigation and class actions, first as an associate with the large defense law firm of Covington & Burling and then as a Partner at Tycko & Zavareei. She is currently lead or co-lead counsel in a number of ongoing class action and putative class action lawsuits, including *Brice v. Rees, et al.*, 3:18-cv-01200 (N.D. Cal.); *Banks v. Rees, et al.***,** 3:2018cv00816 (N.D. Tex.); *Canary v. Youngevity Int'l, Inc.*, 5:18-cv-03261 (N.D. Cal.); and *Grayson, et al. v. General Electric Company*, 3:13-cv-1799 (D. Conn.). She has also played significant support roles in numerous other class action cases in which Tycko & Zavareei has been named Class Counsel, Lead Counsel, or Settlement Class Counsel, including *Kumar v. Safeway, Inc. et al.*, RG14726707 (Super. Ct. of Cal. Cty. of Alameda); *Kumar v. Salov North America Corp., et al.*, 4:14-cv-02411 (N.D. Cal.); *Farrell v. Bank of America, N.A.*, 3:16-cv-00492 (S.D. Cal.);

*Stathakos et al. v. Columbia Sportswear Company*, 3:15-cv-04543 (N.D. Cal.); *In re: APA Assessment Fee Litigation*, 1:10-cv-01780 (D.D.C.).

These experienced counsel are strongly of the opinion that the settlement in this action is fair, adequate, and reasonable (Haac PA Decl. ¶ 5), and their opinion "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement." *Lorazepam v. Mylan Laboratories, Inc.*, MDL No. 1290, 2003 WL 22037741, at *6 (D.D.C. June 16, 2003).

In sum, the Settlement Agreement was arrived at via arm's-length negotiations between capable and experienced counsel who zealously represented the Settlement Class Members' interests.

### C. The Settlement Provides Full Recovery of Actual Damages by Settlement Class Members Notwithstanding Potential Risks of Continued Litigation

In judging the strength of the Class's recovery, the Court must weigh both the Class's chances of prevailing at trial and the percentage of the recovery procured in the Settlement. *See Vista Healthplan, Inc. v. Warner Holdings Co., III, Ltd.*, 246 F.R.D. 349 (D.D.C. 2007) ("It is obvious that Plaintiffs faced significant risks in establishing both liability and damages and in continuing to trial, and the fairness, adequacy, and reasonableness of the settlement must be viewed in light of these circumstances."); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 369, 377 ("The fact that this settlement amount is less than the total estimated damages is not surprising and ultimately does not render the terms of the settlement unfair, unreasonable, or inadequate in the Court's opinion, as several additional factors should be taken into consideration. Continued litigation of these lawsuits would undoubtedly require substantial additional pretrial preparation and expense, as the defendants have denied all liability. . . . Further litigation also entails substantial risks[.]")

As for the relief provided by the Settlement Agreement, in short, it is outstanding. Chase has agreed to refund 100 percent of the fees and surcharges Settlement Class Members incurred in connection with the use of their Juror and Fact Witness Debit Cards *and* issue checks in the amount of all outstanding balances remaining on their cards, as well as to ensure no further fees will be charged to Settlement Class Members in connection with the use of Juror and Fact Witness Debit Cards. (Agreement ¶¶ 44-46.) The Settlement is not claims-made, meaning Settlement Class Members will automatically receive a check with the full amount of their funds. (*Id*. ¶¶ 44-45, 69.) In addition, Chase has agreed to pay for notice and settlement administration costs, reimbursement of attorneys' fees and costs, and Service Awards separate and apart from the monetary relief provided to Settlement Class Members. (*Id*. ¶ 48.)

Because the Notice costs, attorneys' fees, and Service Awards are in addition to the monetary relief provided to the Class, these costs will not in any way reduce the full relief Settlement Class Members will receive. The monetary relief provided by the Settlement is therefore extremely favorable to the Settlement Class Members. *See, e.g.*, *In re Fed. Nat'l Mortg. Assoc. Sec., Derivative, & ERISA Litig.*, 4 F. Supp. 3d 94, 103-04 (D.D.C. 2013) (approving settlement that represented between four and eight percent of plaintiffs' estimated best recovery); *Trombley v. Nat'l. City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011) (finding settlement that represented between 17% and 24% of estimated trial recovery to be reasonable); *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65-66 (D.D.C. 2003) (approving settlement that represented 16% of plaintiffs' best-case-scenario damages, and between 32.5 and 54% of defendants' damages estimate).

With respect to the risk of continued litigation, Plaintiffs and Class Counsel are pragmatic that there was no guarantee of success. (Haac PA Decl. ¶ 11.) For example, this Court deferred

ruling on Chase's sovereign immunity defense pending discovery, which, had Chase been successful, would have been a death knell to the litigation. Even if Chase had not been successful, it would have made little sense to continue to litigate given the full and immediate relief being afforded the Settlement Class and the substantial resources required to continue to litigate. *See Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981) ("Even putting aside all consideration of the risks of litigation, the delay in providing relief to the class if the case were to be litigated is a factor strongly supporting the compromise reached by the parties."). Indeed, the Settlement was reached at a critical moment: after receipt of vital information from Chase, but before pivotal procedural and merits junctures after which the expense of litigating Plaintiffs' claims would have increased substantially. (Haac PA Decl. ¶ 13.)

### D. Class Counsel Had Sufficient Information to Make a Reasonable Assessment of the Risks of Litigation and to Evaluate the Settlement

Courts in this District have repeatedly held that swift settlements prior to formal discovery are appropriate and merit approval. *Radosti*, 717 F. Supp. 2d at 62 ("In determining whether a proposed class action settlement is fair, adequate, and reasonable, courts consider whether counsel had sufficient information, through adequate discovery, to reasonably assess the risks of litigation vis-a-vis the probability of success and range of recovery."); *see In re Vitamins Antitrust Litig.*, No. 99-197, 1999 WL 1335318, at *4 (D.D.C. Nov. 23, 1999) ("The pursuit of early settlement is a tactic that merits encouragement; it is entirely appropriate to reward expeditious and efficient resolution of disputes") (internal citations omitted); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. at 377 ("[E]arly settlement of these types of cases is encouraged."). Indeed, "formal discovery is not a prerequisite, even for final approval purposes." *Trombley*, 826 F. Supp. 2d at 200 (internal quotations omitted).

Here, Class Counsel had more than sufficient information to evaluate the merits of their claims against Defendant and to evaluate the adequacy and fairness of the ultimate Settlement Agreement reached by the parties. Class Counsel's pre-settlement investigation, research, and informal discovery were robust, and Class Counsel had a well-founded basis upon which to negotiate this Settlement. *Trombley*, 826 F. Supp. 2d at 200 (arm's length negotiations, pre-settlement discovery, and informal investigation sufficient to establish that settlement was fair, adequate, and reasonable for purposes of final approval). When the litigation was filed, for example, Plaintiffs already had copies of the disclosures they alleged were misleading and the fee schedule they alleged was unfair.

After the Court's ruling deferring a decision on Defendant's Motion to Dismiss, Plaintiffs propounded discovery requesting, *inter alia*, the amount of fees incurred by jurors. (Haac PA Decl. ¶ 6.) Plaintiffs then made a demand to settle the case for complete relief to the Class—a full refund of any fees charged in connection with the use of Juror and Fact Witness Debit Cards. (*Id.*) The Parties thereafter engaged in negotiations and information sharing that culminated in an agreement in principle. (*Id.* ¶¶ 6-8.) Class Counsel used informal discovery to gather information pertaining to jurisdictions and programs for which Juror and Fact Witness Debit Cards were issued, as well as the amount of fees and surcharges charged in connection with the use of these cards and any outstanding balances remaining. (*See Id.* ¶ 7.)

Class Counsel had conferences with defense counsel to evaluate this information and requested additional information to ensure a complete picture of the proposed class and any damages sustained. (*Id.*) Class Counsel carefully studied and applied this information to the negotiation of the Settlement Agreement and ultimately concluded that under the circumstances,

a settlement with complete relief to the Settlement Class was undoubtedly in the interests of Settlement Class Members. (*See id.*)

Based on this information and the legal issues raised in the motion to dismiss briefing, both Parties and their counsel had an informed view of the strengths and weaknesses of their respective positions, the risks of continued litigation, and an appreciation for the substantial value this settlement delivers to the Settlement Class. The Parties understood that each side carried risk moving forward with the litigation, and considering the amount of the actual damages claimed by Plaintiffs, determined that lengthy litigation was not economical for either side. The negotiations that led to the proposed Settlement were serious, informed, and adversarial. (*See id.*)

E. **Experienced Settlement Class Counsel Believe that the Proposed Settlement is Fair, Reasonable, and Adequate and that the Settlement Provides Excellent Relief for Settlement Class Members**

Courts should generally "defer to the judgment of experienced counsel" in ruling on proposed class action settlements. *Stewart*, 948 F. Supp. at 1099. "Although the Court will not defer blindly to the views of counsel with regard to the adequacy of a settlement, it must consider that the Settlements were reached after several months of arm's length negotiation by experienced counsel and that both counsel and all parties involved view the settlements as reasonable." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d at 106.

As discussed above, Class Counsel are seasoned litigators with years of experience litigating complex cases, including class actions. Based on that experience, Class Counsel believe that this Settlement is an excellent Settlement that is more than fair, adequate, and reasonable. (Haac PA Decl. ¶ 5.) And as discussed above, the Settlement Agreement provides outstanding relief for Settlement Class Members.

**F.  <u>The Reaction of the Class to Date has been Positive</u>**

The last of the factors typically considered in determining the reasonableness of a settlement is the reaction of the class. *Thomas*, 139 F.3d at 231-33; *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. at 155; *Osher,* 945 F. Supp. at 305; *Stewart*, 948 F. Supp. at 1077. Although the opt-out and objection period is still open, the initial reaction by Settlement Class Members to the Settlement has been positive, which further supports final approval. Notice was effectuated according to the proposed plan, with direct mail notice reaching over 163,000 Settlement Class Members (or 96% of the Settlement Class). (Epiq Decl. ¶ 6) As of the date of this filing, (with a July 23, 2018 deadline), the Claims Administrator has received no objections to the Settlement and only 3 people have requested exclusion from the settlement. (*Id.* ¶¶ 9-10.)

The absence of any objections and small number of opt-out requests (comprising a miniscule .0000178% of the Class to date) is a strong sign that the Settlement Class Members support this Settlement. *See, e.g.*, *Osher*, 945 F. Supp. at 305 ("[T]he Court concludes that the reaction of the Class members is overwhelmingly in favor of the proposed settlement. Only 30 Class members have requested to be excluded from the Settlement Class out of the approximately 14,000 Class members given Notice of the proposed settlement. Furthermore, only one objection to the proposed settlement has been received by Class and Derivative Counsel."); *Luevano*, 93 F.R.D. at 91 ("The fact that only one-sixth of one percent of the class has chosen to object to the settlement is an important indication of its fairness and adequacy.").

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant Final Approval of this settlement and enter judgment accordingly.

Dated: July 10, 2018                    Respectfully submitted,

    /s/ Anna Haac
Anna Haac
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 973-0900
ahaac@tzlegal.com


**LEVI & KORSINSKY, LLP**

Donald J. Enright (D.C. Bar No. 013551)
1101 30th Street. NW, Suite 115
Washington, DC 20007
(202) 524-4290
denright@zlk.com

Rosemary M. Rivas (*pro hac vice*)
Quentin A. Robert (*pro hac vice*)
44 Montgomery Street, Suite 650
San Francisco, CA 94111
(415) 291-2420
rrivas@zlk.com
qroberts@zlk.com

*Settlement Class Counsel*

**<u>Certificate of Service</u>**

I, Anna Haac, one of the attorneys for Plaintiffs, hereby certify that the proceeding document was caused to be served electronically on July 10, 2018, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.


/s/ Anna Haac