**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WILLIAM MARK SCOTT and RONALD
MORIN, individually and on behalf of all
others similarly situated,

*Plaintiffs*,

JPMORGAN CHASE BANK, N.A.,

*Defendant.*

Civil Action No. 1:17-CV-00249

Honorable Amit P. Mehta

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF AWARD OF
ATTORNEYS' FEES, REIMBURSMENT OF EXPENSES, AND PAYMENT OF
<u>SERVICE AWARDS TO PLAINTIFFS</u>**

Plaintiffs William Mark Scott and Ronald Morin ("Plaintiffs" or "Class

Representatives),[1] individually and on behalf of the proposed Settlement Class, respectfully

submit this motion for an award of attorneys' fees and reimbursement of expenses to Class

Counsel,[2] as well as for the payment of incentive awards to Plaintiffs in connection with final

approval of the Proposed Settlement.

Pursuant to the terms of the Settlement Agreement, Class Counsel respectfully

ask this Court to: (1) award attorneys' fees and reimbursement of costs in the amount of

$335,000 to be paid by Chase separate and apart from the monetary benefits paid to the

Settlement Class; and (2) authorize payment of service awards of $5,000 each to the Class

Representatives.

---

[1] Unless otherwise noted, capitalized terms have the same meaning as contained in the Settlement Agreement. (Dkt. No. 37-1 ("Agreement")).

[2] Pursuant to the Court's order of April 24, 2018, Anna C. Haac, of Tycko & Zavareei LLP, and Rosemary M. Rivas, of Levi & Korsinsky, LLP, were appointed Class Counsel.

Plaintiffs have met and conferred with Defendant regarding the relief requested in this Motion, and Defendant does not oppose the same.

In support of this request, Class Counsel respectfully submit the Memorandum of Points and Authorities incorporated below, as well as the enclosed Declaration of Anna Haac in Support of Motion for Attorneys' Fees, Costs, and Service Awards (Exhibit 1), Declaration of Rosemary M. Rivas in Support of Motion for Attorneys' Fees, Costs, and Service Awards (Exhibit 2), and a Proposed Order (Exhibit 3).

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY........................................... 1

       A.     Case Overview .................................................................................... 1

       B.     Settlement Negotiations and Preliminary Approval .............................. 4

III.   SUMMARY OF THE SETTLEMENT ............................................................. 4

IV.    CLASS COUNSEL'S UNOPPOSED REQUEST FOR ATTORNEYS' FEES IS
       REASONABLE AND AUTHORIZED BY THE SETTLEMENT AGREEMENT ............ 5

       A.     Application of the Lodestar Method is Proper....................................... 6

       B.     Class Counsel's Lodestar is Properly Calculated .................................. 7

              i.     The Number of Hours Worked is Reasonable ............................ 7

              ii.    Class Counsel's Hourly Rates Are Reasonable ......................... 9

       C.     The Reasonableness of the Sought Fee Award is Underscored by a Negative
              Multiplier, Notwithstanding Factors that would Support an Enhanced Lodestar. 11

V.     CLASS COUNSEL'S COSTS ARE REASONABLE AND WERE NECESSARILY
       INCURRED ................................................................................................... 13

VI.    THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD BE
       APPROVED ................................................................................................... 14

VII.   CONCLUSION............................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beck v. Test Masters Educational Services, Inc.*,
   73 F. Supp. 3d 12 (D.D.C. 2014) ................................................................................ 7, 11, 14

*Bynum v. District of Columbia*,
   412 F. Supp. 2d 73 (D.D.C. 2006 ........................................................................................ 12

*Campbell v. District of Columbia*,
   202 F. Supp. 3d 121 (D.D.C. 2016) ..................................................................................... 14

*Ceccone v. Equifax Info. Servs.*,
   No. 13-CV-1314, 2016 WL 5107202 (D.D.C. Aug. 29, 2016) ................................................ 12

*Cobell v. Norton*,
   231 F. Supp. 2d 295 (D.D.C. 2002) ..................................................................................... 10

*Copeland v. District of Columbia*,
   No. 13-837 CRC/DAR, 2016 WL 5342702 (D.D.C. Aug. 29, 2016).......................................... 14

*Daniels v. District of Columbia*,
   No. 14-665DAR, 2017 WL 1154948 (D.D.C. Mar. 27, 2017) ................................................ 14

*Galvez v. Americlean Servs. Corp.*,
   No. 1:11CV1351 JCC/TCB, 2012 WL 2522814 (E.D. Va. June 29, 2012) ............................... 9

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. 07-cv-05923, 2015 WL 2438274 (N.D. Cal. May 21, 2015)............................................ 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   No. 99MS276(TFH), 2003 WL 22037741 (D.D.C. June 16, 2003) ........................................ 15

*In re Vitamins Antitrust Litig.*,
   No. MDL 1285, 2001 WL 34312839 (D.D.C. July 16, 2001)................................................ 6, 7

*Medford v. District of Columbia*,
   691 F. Supp. 1473 (D.D.C. 1988) ......................................................................................... 8

*Osher v. SCA Realty I, Inc.*,
   945 F. Supp. 298 (D.D.C. 1996) ......................................................................................... 11

*Salazar ex rel. Salazar v. District of Columbia*,
   809 F.3d 58 (D.C. Cir. 2015) ................................................................................................ 5

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ................................................................................. 13

*Texas v. U.S.*,
  No. CV 11-1303 (RMC), 2017 WL 1194159 (D.D.C. Mar. 30, 2017) ..................................... 9

*Trombley v. Nat'l City Bank*,
  826 F. Supp. 2d 179 (D.D.C. 2011) ................................................................. 13, 15

*Wells v. Allstate Ins. Co.*,
  557 F. Supp. 2d 1 (D.D.C. 2008) .................................................................... 10, 15

*West v. Potter*,
  717 F.3d 1030 (D.C. Cir. 2013) ...................................................................... 7, 11

*Williams v. First Gov't Mortg. & Investors Corp.*,
  225 F.3d 738 (D.C. Cir. 2000) ...................................................................... 5, 6, 12

**Statutes**

15 U.S.C. § 1693m(a)(2)(3) ..................................................................................... 6

Cal. Civ. Code § 1780 ............................................................................................ 6

D.C. Code § 29-3905(k)(2)(F) ................................................................................ 14

Md. Code, Com. L. § 13-408 .................................................................................. 6

Va. Code Ann. § 59.1-204 ..................................................................................... 6

**Other Authorities**

Theodore Eisenberg & Geoffrey P. Miller,
  *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303
  (2006) ............................................................................................................. 15

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ 5, 14

**Regulations**

12 C.F.R. § 205.10 ............................................................................................... 3

## I.      INTRODUCTION

Plaintiffs negotiated a Settlement with Defendant JPMorgan Chase Bank, N.A. ("Chase") that provides Settlement Class Members the relief Plaintiffs were seeking when they first filed this case in early 2017. In short, Settlement Class Members will receive 100% of their actual damages resulting from Plaintiffs' claims, namely full reimbursement of any fees or third-party surcharges paid by Settlement Class Members in connection with their use of certain juror and fact witness debit cards issued by JPMorgan Chase Bank, N.A. ("Chase") and issuance of checks in the amount of all remaining balances, with an agreement by Chase not to charge any further fees on these debit cards. This is an excellent result for the Settlement Class.

Plaintiffs and Class Counsel have separately moved for Final Approval of the Settlement. Concurrently therewith, and pursuant to the Settlement Agreement, Plaintiffs and Class Counsel respectfully move for (i) attorneys' fees in the amount of $329,640.75 to reimburse Class Counsel for their work in achieving the Settlement, (ii) $5,359.25 in costs and expenses incurred in prosecuting this litigation, and (iii) service awards for the named plaintiffs in the amount of $5,000 each. Chase does not oppose this motion and will pay the above requested attorneys' fees and costs, as well as service awards, separately from the monetary benefits Chase will pay the Settlement Class.

## II.     BACKGROUND AND PROCEDURAL HISTORY

### A.      Case Overview

In September 2008, the United States Department of the Treasury ("Treasury") entered into a Financial Agency Agreement ("FAA") with Chase. Pursuant to the FAA, Chase operated the U.S. Debit Card program, which "provide[s] debit card services to cardholders within and outside of the United States as necessary to facilitate the use of debit cards by Federal agencies and cardholders anywhere in the world." (Dkt. 18-2, FAA ¶ 3(c).) In April 2012, Treasury and the District of

Columbia Courts ("D.C. Courts") executed an interagency agreement permitting D.C. Courts to participate in the U.S. Debit Card program. The same month, Treasury executed a "Direction to Agent" for Chase to "provide U.S. Debit Card program products and services to the DC Courts." (Dkt. 18-3, Direction to Agent No. 34 ¶ 2.)

Including but not exclusively pursuant to the U.S. Debit Card program, Chase issued debit cards for use by court systems in multiple jurisdictions to pay persons for their jury service ("Juror Debit Cards"). Under the U.S. Debit Card program operated for D.C. Courts, Chase issued Juror Debit Cards to persons who served on juries in the D.C. Courts. (Dkt. 37-1, Agreement ¶ 3.) Chase also issued Juror Debit Cards to persons who served on juries in Gwinnett County, GA; Livingston County, MI; and Fort Bend County, TX. (*Id.*) Pursuant to the same U.S. Debit Card program operated for D.C. Courts, Chase provided debit cards for payment to persons for service as fact witnesses in Washington, D.C. ("Fact Witness Debit Cards"). (*Id.* ¶ 4.) Plaintiff William Mark Scott is a resident of the District of Columbia and served on a jury in July 2016. (Dkt. 14-2, Consol. Compl. ¶ 24.) Plaintiff Morin is a resident of the District of Columbia and served on a jury in January 2017. (*Id.* ¶ 25.) Plaintiffs both received Juror Debit Cards upon completion of jury service. (*Id.* ¶¶ 24-25.)

On February 7, 2017, Plaintiff Scott filed a class action lawsuit in this Court against JPMorgan Chase & Co., the parent company of JPMorgan Chase Bank, N.A. alleging a deceptive and unlawful scheme to deprive jurors of their full payments for jury service in connection with the Juror Debit Cards (the "*Scott* Action"). (Dkt. 1.) Specifically, Plaintiff Scott alleged that Chase's Juror Debit Cards were loaded with excessive and unreasonable fees that made it nearly impossible for jurors to fully consume the funds to which they were statutorily entitled. (*Id.*) Plaintiff Scott further alleged that the disclosures provided to cardholders were deceptive. (*Id.*) On March 3, 2017,

Plaintiff Ronald Morin filed a similar class action (the "*Morin* Action"). *See Morin v. JP Morgan Chase & Co.*, Case No. 1:17-cv-00387-APM (D.D.C.).

On March 29, 2017, Plaintiffs filed an unopposed motion to consolidate the *Scott* and *Morin* Actions (the "Consolidated Action") and for appointment of Lead Counsel. (Dkt. 14.) On April 3, 2017, the Court granted the motion to consolidate, appointing Tycko & Zavareei LLP and Levi & Korsinsky LLP as Interim Co-Lead Counsel for the Plaintiffs in the Consolidated Action. (Dkt. 15.) The Consolidated Action alleged causes of action for unjust enrichment, conversion, unfair and deceptive practices in violation of state consumer protection statutes, and violation of the Electronic Fund Transfer Act ("EFTA"), 12 C.F.R. § 205.10, relating to the alleged nonconsensual possession of jurors' funds, and the amounts and disclosure of fees in connection with using a Juror Debit Card. (*See* Consol. Compl. ¶¶ 117-76.) Chase has since ceased its participation in the U.S. Debit Card program and no longer issues debit cards in connection with juror or fact witness service in any U.S. jurisdiction.

On May 3, 2017, JPMorgan Chase & Co. filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 18.) Plaintiffs opposed the motion. (Dkt. 21.) The Court held a hearing on that motion on September 29, 2017. At the conclusion of oral argument on the motion, the Court requested supplemental briefing on the meaning of the term "government benefit" in the EFTA. The Parties filed their supplemental briefs on October 6, 2017. (Dkt. 25, 26.) On October 31, 2017, the Court issued an order denying the motion with respect to Chase's claim of derivative sovereign immunity, and deferred ruling on the remainder of the motion. (Dkt. 27.) The Court allowed the Parties to engage in limited discovery on the question of whether Defendant was entitled to derivative sovereign immunity. (*Id*. at 14.) That limited discovery was initially scheduled to close on January 29, 2018. (*Id*. at 15.)

## B.      Settlement Negotiations and Preliminary Approval

Shortly after the Court issued its decision denying in part Chase's Motion to Dismiss and allowing limited discovery, Plaintiffs made a demand to settle the case for complete relief to the Class—a full refund of any fees charged in connection with the use of Juror and Fact Witness Debit Cards. (Declaration of Anna Haac in Support of Motion for Preliminary Approval ("Haac PA Decl.") ¶ 6; *see also* Declaration of Anna Haac in Support of Motion for Attorneys' Fees, Costs, and Service Awards ("Haac FP Decl.") ¶ 16(f).) Although the Parties issued formal discovery requests about  the derivative sovereign immunity issue raised by Chase, the Parties thereafter engaged in settlement negotiations and discovery in an attempt to reach a resolution of this matter and avoid costly and protracted litigation. (Haac PA Decl. ¶¶ 6-8, 10; Haac FP Decl. ¶ 16(f).)

On January 19, 2018, the Parties reached an agreement in principle on a proposed settlement and requested and were granted additional time to memorialize their agreement and engage in further confirmatory discovery. (Haac PA Decl. ¶ 8; Haac FP Decl. ¶ 16(f); Dkt. 28, 30, 32-33.) The Parties executed the attached Settlement Agreement on April 19, 2018, subject to Preliminary Approval and Final Approval as required by Federal Rule of Civil Procedure 23.

## III.    SUMMARY OF THE SETTLEMENT

For purposes of this Motion, Plaintiffs reiterate here that the Settlement Agreement provides for payment by Chase of $618,837.83 to eligible Settlement Class Members, which will constitute a full refund of any Chase fees and third-party surcharges charged in connection with Chase's Juror and Fact Witness Debit Cards, as well as any outstanding balances that remain on Settlement Class Members' Juror or Fact Witness Debit Cards at the time of distribution. (Haac PA Decl. ¶ 44-46.)

Apart from the money allocated to the Settlement Class, Chase is further obligated to pay reasonable notice and settlement administration costs associated with the Settlement, which are expected to be $274,610.72. (Agreement at ¶ 48; Declaration of Annegret Peschel in Support of Motion for Final Approval ("Epiq Decl.") (filed concurrently) ¶ 12.) In addition, Chase has agreed not to oppose Class Counsel's request for attorneys' fees and costs of $335,000 and service awards of $5,000 to each Class Representative ($10,000 together), for an aggregate amount of $345,000. (Agreement at ¶¶ 46-47.) The service award will compensate the class representative for the time, effort, and risks he undertook in prosecuting the Action. (*Id.*) The total amount made available under the Settlement Agreement is thus $1,238,448.55.

Further details regarding the Settlement are found in Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, filed concurrently herewith.

## IV.   CLASS COUNSEL'S UNOPPOSED REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND AUTHORIZED BY THE SETTLEMENT AGREEMENT

At the conclusion of a successful class action, class counsel may apply to a court for an award of attorneys' fees. *See* Fed. R. Civ. P. 23(h). The amount of an attorneys' fee award is within the district court's discretion so long as it employs the correct standards and provides a "concise but clear explanation of its reasons." *Williams v. First Gov't Mortg. & Investors Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000) (recognizing that the district court is best positioned to determine an appropriate fee award); *see also, e.g., Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 63 (D.C. Cir. 2015) ("We review the district court's fee awards for abuse of discretion, and will not upset its hourly rate determination absent clear misapplication of legal principles, arbitrary fact finding, or unprincipled disregard for the record evidence."). As indicated in the Court-approved Notice disseminated to the Settlement Class, Class Counsel request attorneys' fees and costs in the amount of $335,000, to be paid exclusively by Chase,

separate and apart from the settlement payments to be made to Settlement Class Members. (*See* Agreement ¶¶ 46-47.)

Not only does the Settlement provide for reasonable attorneys' fees to be paid by Chase, but Class Counsel's requested attorneys' fees fall within the acceptable range of fees routinely approved in this District and Circuit.

## A. Application of the Lodestar Method is Proper

Courts typically use "one of two approaches to assess the reasonableness of requests for attorneys' fees. In statutory fee shifting cases, courts frequently employ the lodestar method. In common fund cases, many jurisdictions apply the percentage of recovery method." *In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 34312839, at *2 (D.D.C. July 16, 2001). This is not a common fund case; therefore, the percentage-of-recovery approach is inapplicable. Instead, the lodestar method is appropriate in cases, such as this one, that do not involve a common settlement fund.

"The lodestar method is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *Id.* at *3 (quoting *In re Prudential Ins. Co Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)). That is also the goal of the fee-shifting provision of the D.C. Consumer Protection Procedures Act, which was the primary claim asserted in this Litigation.[1] *See, e.g.*, *Williams*, 225 F.3d at 747 (declining

---

[1] The Electronic Funds Transfer Act ("EFTA"), which has a relatively low class action cap of $500,000, also provides for attorneys' fees, 15 U.S.C. § 1693m(a)(2)(3), as do many of the other state consumer protection statutes asserted in the Litigation. *See, e.g.*, Cal. Civ. Code § 1780 (awarding attorneys' fees to prevailing plaintiffs under the California Consumer Legal Remedies Act); Md. Code, Com. L. § 13-408 (authorizing the award of reasonable attorneys' fee under the Maryland Consumer Protection Act); Va. Code Ann. § 59.1-204 (authorizing the award of reasonable attorneys' fees under the Virginia Consumer Protection Act).

to read a rule of proportionality into awards under the DCPPA in light of the important public policy interests that it serves); *Beck v. Test Masters Educational Services, Inc.*, 73 F. Supp. 3d 12, 15-16 (D.D.C. 2014) (awarding attorney fees of $854,623.90 under D.C. CPPA even though the fees far exceeded the $4,500 in statutory damages awarded, finding the fees objectively reasonable, and refusing to reduce them proportionally). Class Counsel's fee request of $329,640.75 is reasonable under the lodestar method.

**B.      Class Counsel's Lodestar is Properly Calculated**

"In assessing the reasonableness of fees within the context of a fee shifting statute, courts generally apply the lodestar method. Under this method, a court first determines the hours reasonably expended by counsel. . . . The court next multiplies the number of compensable hours by a reasonable hourly rate. This computation yields the 'lodestar' of the court's determination. The lodestar might then be increased or decreased by a 'multiplier' based upon consideration of the risks or contingencies of the particular case, as well as the quality of the attorneys' work." *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, at *3 (internal quotations and citations omitted). A strong presumption exists that the lodestar figure represents a reasonable fee. *See, e.g.*, *West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013) ("The Supreme Court has held that there is a strong presumption that the fee yielded by the now-ubiquitous 'lodestar' method, which bases fees on the prevailing market rates in the relevant community, is reasonable.") Class Counsel's hours and rates in this action are reasonable. Indeed, Class Counsel's fee request reflects a discounted lodestar.

**i.      The Number of Hours Worked is Reasonable**

Class Counsel seeks compensation for over 699 hours spent in this action. (Haac FP Decl. ¶ 15; Rivas Decl. ¶ 22.) The number of hours is reasonable given the complex nature of this

litigation. Class Counsel has spent significant time and effort prosecuting the class claims against

Chase, including:

- Extensive pre-filing investigation of Plaintiffs' claims against Chase, including issuing a Freedom of Information Act ("FOIA") request and conducting multiple interviews with the class representatives concerning their experiences with Chase, as well as the experience of other affected jurors;[2]

- Conducting legal research regarding various procedural and substantive issues;

- Researching, drafting, and amending the complaints;

- Drafting and filing a motion for consolidation and appointment of lead counsel, and correspondence with all parties related to the same;

- Drafting and filing an opposition to Chase's Motion to Dismiss, and preparing for and attending oral argument on that motion;

- Drafting and filing supplemental briefing on the Court's question of whether Juror Debit Cards fall within the meaning of the term "government benefit" as used in the EFTA;

- Propounding discovery requests directed to the issue of Chase's derivative sovereign immunity claim and preparing responses to Chase regarding the same;

- Reviewing and negotiating data and other informal information requests to Chase;

- Drafting and filing case status reports;

- Drafting and negotiating settlement documents, including an initial term sheet, the lengthy settlement agreement, class notice, and notice and settlement administration plan;

- Reviewing and responding to correspondence from Settlement Class Members;

---

[2] Compensable activities include pre-litigation services in preparation of filing the lawsuit, background research and reading complex cases, and productive attorney discussions. *See, e.g.*, *Medford v. District of Columbia*, 691 F. Supp. 1473, 1480 (D.D.C. 1988) (stating that it is "established law that work done prior to the formal inception of a proceeding is subject to a fee award," including "attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests" (quoting *Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 250 (1985) (Brennan, J., concurring in part and dissenting in part)).

- Monitoring the work of the Claims Administrator; and

- Drafting, researching, and filing the preliminary and final approval pleadings.

(Haac FP Decl. ¶ 16; Rivas Decl. ¶¶ 4-14.)

Moreover, Class Counsel's work is not yet done. Class Counsel will be required to, among other things: (1) continue to monitor the notice administration process; (2) respond to class member inquiries now and potentially for years to come; (3) research, draft, and file a response to any objections to the Settlement Agreement; (4) prepare for and attend the Final Approval Hearing; (5) monitor distribution of benefits to the Settlement Class; and (6) potentially handle post-judgment appeals. (Haac FP Decl. ¶ 24; Rivas Decl. ¶ 16.) Notably, Class Counsel's fee request does not seek any additional funds for this future work on behalf of the Settlement Class. (Haac FP Decl. ¶ 24; Rivas Decl. ¶ 16.)

### ii.    Class Counsel's Hourly Rates Are Reasonable

At the hourly rates currently charged by Class Counsel, their lodestar is $375,234.95 (Haac FP Decl. ¶ 15; Rivas Decl. ¶ 22.) Yet, Class Counsel agreed to settle and thus request a discounted lodestar of $329,640.75 (representing a *negative* .88 multiplier). For attorneys and staff from the Washington, D.C. office of Tycko & Zavareei LLP, the hourly rates are calculated using the adjusted Laffey Matrix, which provides market rates for attorneys working in the Washington, D.C. and Baltimore areas.[3] "The *Laffey* Matrix is the most commonly used fee matrix in determining fees for complex federal litigation in the D.C. Circuit." *See, e.g.*, *Texas v. U.S.*, No. CV 11-1303 (RMC), 2017 WL 1194159, at *4 (D.D.C. Mar. 30, 2017); *see also Galvez v. Americlean Servs. Corp.*, No. 1:11CV1351 JCC/TCB, 2012 WL 2522814, at *5 n.6 (E.D. Va. June 29, 2012) ("The Laffey Matrix is used as a guideline for reasonable attorneys'

---

[3] *See* http://www.laffeymatrix.com/.

fees in the Washington/ Baltimore area."); *Cobell v. Norton*, 231 F. Supp. 2d 295, 301-02 (D.D.C. 2002) (referring to Laffey Matrix as containing "standard hourly rate for attorneys in the Baltimore–Washington area").

The attorneys who primarily worked on this matter for Tycko & Zavareei, LLP are Anna Haac and Sophia Goren. Anna Haac is a 2006 graduate of the University of Michigan Law School (12 years of experience). (*Id.*)[4] Sophia Goren is a 2015 graduate of the University of California, Berkeley, School of Law (3 years experience). (*Id.*) The Tycko & Zavareei firm's rates have been approved by courts throughout the country. (Haac FP Decl. ¶ 12.)

The attorneys who primarily worked on this matter for Levi & Korsinsky, LLP are Rosemary Rivas and Quentin Roberts. (Rivas Decl. ¶ 22.) Ms. Rivas is a 2000 graduate of the University of California, Hastings College of the Law (17+ years of experience). (Dkt. 14-4, Ex. A at 17.) Quentin Roberts is a 2015 graduate of the University of San Francisco School of Law (2+ years experience). (*Id.* at 30.) Levi & Korsinsky, LLP's hourly rates were recently approved on July 5, 2018 in the action titled, *Sung, et al. v. Schurman Fine Papers*, Case No. 3:17-cv-02760-LB (N.D. Cal.) (granting final approval of class action settlement and approving rates as reasonable). Moreover, the hourly rates are within the range of those charged in other complex, class action litigation. *See Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding that hourly rates of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support and paralegals were

---

[4] Anna Haac was also previously an attorney at the Washington, D.C. office of the law firm of Covington & Burling, where partners who graduated in 2006 generally bill at hourly rates in excess of $800. (Haac FP Decl. ¶ 15.) Given that defense counsel are employed at a similar large law firm, WilmerHale, it is also almost certain that the rates paid by Chase to its counsel in this case are equivalent to or exceed the rates requested for Class Counsel. WilmerHale is a global, full-service law firm with more than 1,000 legal professionals operating out of 12 offices throughout the world. *See* https://www.wilmerhale.com/about/overview/.

reasonable). Calculating Class Counsel's lodestar using their current billing rates is appropriate given that these rates are the current rates charged by Plaintiffs' Counsel, the same rates were in effect throughout this litigation, and in light of the deferred and contingent nature of counsel's compensation. *See West*, 717 F.3d at 1033-34 (approving the use of current market rates in a lodestar calculation); *Beck*, 73 F. Supp. 3d at 18 (approving fee award where counsel's requested hourly rates aligned with the "current Laffey index").

The hourly rates claimed by the attorneys in this litigation are reasonable. Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. (Haac PA Decl. ¶ 5, 28; Haac FP Decl. ¶ 7; Dkt. 14-4.) Class Counsel regularly engage in major complex litigation involving consumer class actions, and have been appointed class counsel by courts throughout the country. (*Id.*)

**C.     The Reasonableness of the Sought Fee Award is Underscored by a Negative Multiplier, Notwithstanding Factors that would Support an Enhanced Lodestar**

The reasonableness of Class Counsel's fee request here is further underscored by various factors. Most notably Class Counsel's fee request results in a *negative* multiplier—or a discount on their lodestar, notwithstanding that there are other factors that would support application of a *positive* multiplier. *See Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 308 (D.D.C. 1996) (stating that factors warranting the application of a multiplier include (1) the complexity and magnitude of the case; (2) the quality of counsel's representation; (3) the results achieved by counsel; and (4) public policy considerations."). Here, Class Counsel's total lodestar is actually $375,234.95 which is *more* than the discounted $329,640.75 fee requested here. (Haac FP Decl. ¶ 15; Rivas Decl. ¶ 22.) This further demonstrates the reasonable (if not overly conservative) nature of the requested fee award.

The reasonableness of Class Counsel's fee request here is also supported by the fact that Class Counsel litigated this case wholly on a contingency fee basis, and did so at great risk of never receiving any compensation. (Haac FP Decl. ¶ 27; Rivas Decl. ¶ 21.) *See, e.g.*, *Ceccone v. Equifax Info. Servs.*, No. 13-CV-1314, 2016 WL 5107202, at *13 (D.D.C. Aug. 29, 2016) ("A multiplier is also particularly appropriate in contingency fee cases, to reflect the risk of loss that the attorneys assume."); *Bynum v. District of Columbia*, 412 F. Supp. 2d 73, 84-85 (D.D.C. 2006) (taking "contingent risk" into account in awarding attorneys' fees and recognizing "the market expectation in the legal market for an enhancement in contingent fee cases to compensate for litigation risk"); *accord Williams*, 225 F.3d at 745 (stating that purpose of fee-shifting statute is to encourage the private bar to take cases under the CPPA).

In effect, Class Counsel has advanced their legal services to the Settlement Class since the inception of this litigation. Class Counsel's contingent-fee model means that their law firms do not get paid in every case. (Haac FP Decl. ¶ 27; Rivas Decl. ¶ 21.) Sometimes, they get nothing or are awarded fees equal to only a small percentage of the amount worked. (*Id.*) Class Counsel thus bore considerable risk in litigating this case on a contingent basis and advancing all costs. (*Id.*) Furthermore, the time spent on the Action was time that could not be spent litigating other matters. (Haac FP Decl. ¶ 28; Rivas Decl. ¶ 21.) During the pendency of the litigation, Class Counsel thus turned away other work. (Haac FP Decl. ¶ 28; Rivas Decl. ¶ 21.)

Class Counsel's fee request is further reasonable given the duration, progression, nature, and complexity of this litigation, and reflects the efficient management of this litigation. (Haac FP Decl. ¶ 25.) Class Counsel sought to avoid duplication of effort both by consolidating the *Scott* and *Morin* Actions and to ensure work was distributed efficiently among firms. (*Id*. at ¶ 26.) In addition, Class Counsel settled at an opportune time. Class Counsel commenced

settlement negotiations immediately following the Court's decision on Chase's Motion to Dismiss and reached an agreement without significant additional litigation. (Haac FP Decl. ¶ 29.) This efficiency (and the concomitant savings to the judicial system) also supports the reasonableness of Class Counsel's lodestar request.[5] *See Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 199 (D.D.C. 2011) (stating that "[a]s a general matter, early settlement is encouraged").

Finally, the action was complex, demanding that Class Counsel research, understand, and brief various abstruse theories and arguments concerning Chase's defenses based on government contractor immunity and derivative sovereign immunity, as well as a matter of first impression regarding EFTA liability. (Haac FP Decl. ¶ 31.) And although Class Counsel were able to achieve an excellent result for the Settlement Class in this case, the relief obtained cannot be viewed in a vacuum. Class Counsel's litigation of the class claims has been fraught with risk since inception of this matter, as evidenced by Chase's motion to dismiss. (*Id.*) While Class Counsel are confident in the strength of Plaintiffs' claims, they are also pragmatic that there is no guarantee of success. (*Id.* ¶ 12.)

## V.   CLASS COUNSEL'S COSTS ARE REASONABLE AND WERE NECESSARILY INCURRED

Class Counsel also request reimbursement for a total of $5,359.25 in certain litigation costs and expenses. (Haac FP Decl. ¶ 20). This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of this litigation and the Settlement, and which are itemized in the Haac and Rivas

---

[5] Numerous courts have recognized the disincentive to settle promptly inherent in the lodestar methodology. *See, e.g.*, *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1267 (D.C. Cir. 1993) (recognizing that the lodestar processes "creates a disincentive for the early settlement of cases").

Declarations attached as exhibits hereto. (Haac FP Decl. ¶ 21; Rivas Decl. ¶ 26.) Such costs are compensable in a class action. *See* Fed. R. Civ. P. 23(h) (permitting award of "nontaxable costs that are authorized by law or by the parties' agreement"). In addition to being compensable under Rule 23, these costs are also compensable under the primary consumer protection statute alleged in the complaint. *See* D.C. Code § 29-3905(k)(2)(F); *Beck*, 73 F. Supp. 3d at 15 (stating that prevailing plaintiffs are entitled to recover reasonable fees and costs under the CPPA).

The categories of expenses for which Class Counsel seek reimbursement here are the type of expenses routinely charged to paying clients in the marketplace and, therefore, the full requested amount should be reimbursed. (*See* Haac FP Decl. ¶ 22; Rivas Decl. ¶ 26.) These expenses include but are not limited to: filing and service fees; photocopies; travel expenses, and research fees. (*Id.*) These expenses are reasonable and justified, and Class Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See, e.g.*, *Daniels v. District of Columbia*, No. 14-665DAR, 2017 WL 1154948, at *6 (D.D.C. Mar. 27, 2017) (approving costs that included the same categories as those requested here); *Copeland v. District of Columbia*, No. 13-837 CRC/DAR, 2016 WL 5342702, at *6 (D.D.C. Aug. 29, 2016) (same); *Campbell v. District of Columbia*, 202 F. Supp. 3d 121, 137-38 (D.D.C. 2016) (same). This relatively modest amount of expenses should thus be reimbursed, which again Chase does not object to and will pay separately from the benefits provided to the Settlement Class under the Settlement Agreement.

## VI.   THE REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD BE APPROVED

Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation. As concisely put in *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276(TFH), 2003 WL

14

22037741, at *10 (D.D.C. June 16, 2003): "The propriety of allowing modest compensation to class representatives seems obvious." "In deciding whether to grant incentive awards and the amounts of such awards, courts consider factors such as the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998)).

Class Counsel respectfully submit that Plaintiffs William Mark Scott and Ronald Morin should each receive a reasonable and modest service award of $5,000 for their efforts in this action. Each Class Representative actively assisted in the prosecution and settlement of this case. (*See* Haac FP Decl. ¶ 35-36; Rivas Decl. ¶ 14.) They provided detailed information concerning the allegations in the various complaints filed, participated in phone calls with Class Counsel, and remained informed about the status of the litigation—including discussing the terms of the proposed Settlement and ensuring that the Settlement Agreement was in the best interests of the Settlement Class Members. (*Id.*) Their efforts furthermore resulted in an excellent recovery for Settlement Class Members.

In short, the requested awards appropriately recognize the Representative Plaintiffs' efforts and contributions and are well within the range of the incentive awards granted in other cases in this Circuit. *See, e.g., Trombley*, 826 F. Supp. 2d at 207-208 (Bates, J.) ($5,000 incentive award); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) ($10,000 incentive award to each named plaintiff); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award

is $6,358.80). The Notice informed Settlement Class Members about these anticipated Service Award requests, and no objection has been made to them to date (or to any other aspect of the Settlement for that matter). Plaintiffs thus respectfully request that they be reasonably rewarded for their contributions to this litigation and the excellent result obtained for the Settlement Class.

## VII.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant this Unopposed Motion for Attorneys' Fees, Costs, and Service Awards.

Dated: July 10, 2018                     Respectfully submitted,

                                         ___/s/ Anna Haac_____
                                         Anna Haac
                                         **TYCKO & ZAVAREEI LLP**
                                         1828 L Street, N.W., Suite 1000
                                         Washington, D.C. 20036
                                         (202) 973-0900
                                         ahaac@tzlegal.com


                                         **LEVI & KORSINSKY, LLP**

                                         Donald J. Enright (D.C. Bar No. 013551)
                                         1101 30th Street. NW, Suite 115
                                         Washington, DC 20007
                                         (202) 524-4290
                                         denright@zlk.com

                                         Rosemary M. Rivas (*pro hac vice*)
                                         Quentin A. Robert (*pro hac vice*)
                                         44 Montgomery Street, Suite 650
                                         San Francisco, CA 94111
                                         (415) 291-2420
                                         rrivas@zlk.com
                                         qroberts@zlk.com

                                         *Proposed Settlement Class Counsel*

**<u>Certificate of Service</u>**

I, Anna Haac, one of the attorneys for Plaintiffs, hereby certify that the proceeding document was caused to be served electronically on July 10, 2018, pursuant to ECF as to Filing users, and that I shall comply with LR 5.5 as to any party who is not a filing user or represented by a filing user.

/s/ Anna Haac